USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/4/2022

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------- X

PALACE SKATEBOARDS GROUP and GSLT
HOLDINGS LIMITED,

                            Plaintiffs,

                -against-

AIMEEY, ALZTECH, CONG~690, DENNIS AHO,
DGVH~56, ERIC GANDY, FGFH~456, FUBA246,
GITROSTORE, GULF_COAST_BOUND,
HUANGGUANGHAI3221,
HUANGRUIXIAN65812, HUANGZHILONGER,
JIAYIMNEI, KENGKENG, LINDSAYYYA, LOOM,
MUK63211, NEW YEAH, NIKITAMODA, OBD
HOME LIVING MUSEUM, SHENPOHUANG21,
STAR'S OCEAN CLOTHING MALL,
VANGCHENGYUN, WORLD WE, XEE82293,
XIEZHIWEI, XIONGHOU DAMIYA BETTER
AND ZHUSHIHAO62923,

                           Defendants.

-------------------------------------------------------------------- X

1:21-cv-03951-GHW

ORDER

GREGORY H. WOODS, District Judge:

On March 1, 2022, the Court wrote Professor Benjamin L. Liebman, the Director of the

Hong Yen Chang Center for Chinese Legal Studies at Columbia Law School, seeking his assistance

to obtain disinterested legal advice regarding whether a foreign plaintiff may, under relevant

Chinese law, properly serve via email a defendant located in the People's Republic of China. The

Court will share any advice provided to the Court with Plaintiff and will afford Plaintiff time to

respond to that advice.

       SO ORDERED.

Dated:  March 4, 2022
New York, New York

_____
GREGORY H. WOODS
United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
500 PEARL STREET
NEW YORK, NEW YORK 10007



CHAMBERS OF
GREGORY H. WOODS
UNITED STATES DISTRICT JUDGE

March 1, 2022

Mr. Benjamin L. Liebman
c/o The Hong Yen Chang Center for Chinese Legal Studies
619 Jerome Green Hall, Box A-11
New York, NY 10027

Dear Mr. Liebman,

I am writing to request your assistance in obtaining disinterested legal advice with respect to an issue of Chinese law that has come before the Court. The law firm of Epstein Drangel LLP has several cases before the Court in which they represent United States-based intellectual property owners suing alleged infringers located in China. I have at least two such cases pending before me. Because the defendants in the cases before the Court have not appeared, and do not have representation, the Court would benefit from amicus briefing regarding a fundamental issue of Chinese law—whether foreign companies can effectuate service on Chinese entities and individuals by electronic means, such as email or web posting.

There are two cases before the Court for which independent views regarding Chinese law would be very helpful to the Court. The first is *Palace Skateboards v. Aimeey*, et al., 21-cv-3951, which was filed on May 3, 2021. Its facts are fairly typical for this type of action. The plaintiff has brought a copyright infringement action against a large number of Chinese defendants that allegedly sell infringing goods on Alibaba and AliExpress. At the outset of the case, the plaintiff filed an *ex parte* application requesting the entry of a temporary restraining order. Dkt. Nos. 10-12. Among the requests made to the Court was a request that the Court authorize service on the defendants by alternative means pursuant to Federal Rule of Civil Procedure 4(f)(3). Dkt. No. 11 at 18-19. Rule 4(f)(3) requires, among other things, that service in the alternative means not be "prohibited by international agreement." The Court granted the request for service by alternative means based on the briefing presented to it by the plaintiff's counsel. Dkt. No. 4. No defendant appeared in the case after service by alternative means, and the plaintiff is currently seeking the imposition of default judgment in the case.

The second case revealed the issue that has led to this request. On July 6, 2021, another plaintiff, represented by the same counsel as in the first case, filed *Smart Study Co., Ltd. v. HAPPY PARTY-001, et al.*, 21-cv-5860. That case proceeded along the same path as *Palace Skateboard*, with an application for service by alternative means, which was granted by the Court based on the briefing presented to it. Dkt. Nos. 11-14. Unlike in *Palace Skateboards*, two *pro se* defendants appeared to challenge the Court's personal jurisdiction over them. In their motions to dismiss, they raised substantial questions about whether service is permitted under Rule 4(f)(3), because, they argued, service by electronic means in China is prohibited by the Hague Convention. Dkt. Nos. 23-

26; 32, 50.  The Court held oral argument regarding those defendants' motions.  Before the Court ruled on the motions, the plaintiff voluntarily dismissed its claims against the moving defendants, mooting their motions.  Now, the plaintiff in *Smart Study* is also seeking the entry of default judgment against the remaining defendants.

The Court must resolve an issue of Chinese law in order to rule on the applications for default judgment.  The principal question is whether Chinese law permits service of process by electronic means on Chinese residents, whether by email or posting on a website, or other similar means.  Confronted by case law in other jurisdictions holding that the Hague Convention prohibits service of process by a means that is not approved by the signatory state,[1] the plaintiffs now also argue that service is proper under Federal Rule of Civil Procedure 4(f)(2)(A), which permits service "by a method . . . as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction."

According to the plaintiffs, Article 87 of the Civil Procedure Law of the People's Republic of China prescribes service via email for Chinese defendants.  Article 87 states, "[s]ubject to the consent of the person on which a procedural document is to be served, the document may be served by way of . . . electronic mail, or any other means through which the receipt of the document may be acknowledged . . . ."  The plaintiff in the *Palace Skateboard* case asserts that the defendants in that case have consented to service by accepting the terms of service for Alibaba and AliExpress.[2]

However, the Court has become aware that Article 277 of the Civil Procedure Law of the People's Republic of China states that "no foreign authority or individual shall, without permission from the competent authorities of the People's Republic of China, serve process . . . within the territory of the People's Republic of China."  At least one federal court has determined that Article 277 precludes service by email on Chinese defendants in cases brought by foreign plaintiffs.  *See Luxottica Grp. S.p.A. v. Partnerships & Unincorporated Associations Identified on Schedule "A"*, 391 F. Supp. 3d 816, 826 (N.D. Ill. 2019).

Whether or not a Chinese citizen can be served by foreign litigants by electronic means in an manner that is consistent with Chinese law is a critical legal question in the cases pending before me—and likely in other cases as well.  Because no defendants are currently litigating these issues, the Court does not have the benefit of legal analysis of the issue from any party other than the plaintiffs.  In order to grant the requested default judgments, the Court must assure itself that it has personal jurisdiction over the defendants, which requires an analysis of Chinese law.[3]  The Court's ruling in these cases may have persuasive authority in the many other cases of this type filed in this district and nationwide.  So I seek disinterested legal advice about whether Article 277 prohibits service of process by electronic means in these situations.  I also seek such advice regarding whether Article 87

---

[1] *See, e.g.*, *Facebook, Inc. v. 9 Xiu Network (Shenzhen) Tech. Co.*, No. 19-CV-01167-JST, 2020 WL 5036085 (N.D. Cal. Aug. 19, 2020).

[2] Pursuant to Alibaba's terms, merchants agree that "all legal notices or demands to or upon a user shall be effective if either delivered personally, sent by courier, certified mail, by facsimile or email to the last-known correspondence, fax or email address provided by the User."  AliExpress's terms state that "legal notices shall be served on [a merchant] by sending notices to the email address in your latest membership profile . . . ."

[3] The Court has also solicited briefing from the plaintiffs regarding whether default judgment can be entered against these Chinese defendants consistent with Article 15 of the Hague Convention.  Resolution of this issue too may turn in part on the question of whether service by electronic means is effective in a case such as these.

permits service by electronic means by consent, and, if so, what constitutes proper manifestation of consent.  I would appreciate an examination of any other pertinent Chinese legal authority.

Again, this is an area of some importance to the Court in this and other cases.  Sadly, the Court cannot offer payment, but invites any help that you can provide with respect to this narrow issue of Chinese law.  Whether the *amici* who provide the requested disinterested legal advice are scholars associated with your program, independent legal counsel, or governmental or non-profit entities with knowledge of Chinese law, the Court would appreciate the assistance.  As a leading scholar in the area of Chinese law in this district, I ask if you can help the Court obtain independent, disinterested legal advice with respect to this narrow issue from any knowledgeable source.

The full record of each of these cases is available on PACER.  I have also attached the most recent default judgment briefing by the plaintiffs' counsel, the relevant portions of which appear at pages 4-13.  There is no deadline, but it would be helpful if any potential *amici* could identify themselves to the Court by April 7, 2021, so that the Court can establish a schedule for any submissions.  Thank you in advance for your assistance.

Sincerely,

Hon. Gregory H. Woods

Jason M. Drangel (JD 7204)
jdrangel@ipcounselors.com
Ashly E. Sands (AS 7715)
asands@ipcounselors.com
Danielle S. Futterman (DY 4228)
dfutterman@ipcounselors.com
Gabriela N. Nastasi
gnastasi@ipcounselors.com
Karena K. Ioannou
kioannou@ipcounselors.com
EPSTEIN DRANGEL LLP
60 East 42nd Street, Suite 2520
New York, NY 10165
Telephone:     (212) 292-5390
Facsimile:     (212) 292-5391
*Attorneys for Plaintiff*
*Smart Study Co., Ltd.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SMART STUDY CO., LTD., <br><br> *Plaintiff* <br><br> v. <br><br> ACUTEYE-US, APZNOE-US, BEIJINGKANGXINTANGSHANGMAOYOUXIANGONGSI, BLUE VIVI, BONUSWEN, CHANGGESHANGMAOYOUXIANGONGSI, CITIHOMY, CKYPEE, DAFA INTERNATIONAL, DAZZPARTY, FAMING, GAIFEI TRADE CO LTD, GEGEONLY, HAITING$, HAOCHENG-TRADE, HAPPY PARTY-001, HEARTLAND GO, HUIBI-US, JOYSAIL, JYOKER-US1, KANGXINSHENG1, LADYBEETLE, LICHE CUPCAKE STAND, LVYUN, MARY GOOD SHOP, NA-AMZ001, NAGIWART, NUOTING, QINGSHU, QT-US, SALIMHIB-US, SAM CLAYTONDDG, SENSIAMZ BACKDROP, SHENZHENSHIXINDAJIXIEYOUXIANGONGSI, SMASSY US, SMSCHHX, SUJIUMAISUSU, SUNNYLIFYAU, TELIKE, THEGUARD, TONGMUMY, TOPIVOT, TUOYI TOYS, UNE PETITE MOUETTE, VETERANS CLUB a/k/a 老兵俱乐部, WCH- US, WEN MIKE, WONDERFUL | **CIVIL ACTION No. 21-cv-5860 (GHW)** |

MEMORIES,    WOW    GIFT,    XUANNINGSHANGWU,
XUEHUA INC, XUIYUI7I, YAMMO202, YICHENY US,
YLILILY,
YONGCHUNCHENGQINGMAOYIYOUXIANGONGSI,
YOOFLY and ZINGON US,

*Defendants*

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR DEFAULT JUDGMENT AND A PERMANENT INJUNCTION AGAINST DEFAULTING DEFENDANTS**

# TABLE OF CONTENTS

I.     INTRODUCTION ....................................................................................................... 1

II.    PROCEDURAL HISTORY......................................................................................... 1

III.   STATEMENT OF FACTS .......................................................................................... 1

IV.    ARGUMENT .............................................................................................................. 3

   **A.   THE ENTRY OF A DEFAULT JUDGMENT AGAINST DEFAULTING DEFENDANTS IS APPROPRIATE.................................................................................... 3**

     1.   Service of Process was Properly Effected on Defendants ............................ 4

     2.   It is Appropriate to Enter Default Judgment Against Defendants Under Article 15 of the Hague Convention...................................................................... 13

   **B.   DEFAULTING DEFENDANTS ACTED WILLFULLY .......................................... 15**

   **C.   PLAINTIFF HAS ESTABLISHED DEFAULTING DEFENDANTS' LIABILITY 16**

     1.   Defaulting Defendants are Liable for Trademark Infringement and Counterfeiting.. 17

   **D.   PLAINTIFF IS ENTITLED TO A PERMANENT INJUNCTION........................... 18**

   **E.   PLAINTIFF IS ENTITLED TO HEIGHTENED STATUTORY DAMAGES ........ 22**

   **F.   AN INQUEST INTO AN AWARD OF DAMAGES IS UNNECESSARY ............... 28**

   **G.   DEFAULTING DEFENDANTS' INDIVIDUAL LIABILITIES ............................... 28**

     1.   Defaulting Defendant Acuteye-US..................................................................... 28

     2.   Defaulting Defendant APZNOE-US ................................................................... 29

     3.   Defaulting Defendant beijingkangxintangshangmaoyouxiangongsi......................... 29

     4.   Defaulting Defendant blue vivi ............................................................................ 30

     5.   Defaulting Defendant Bonuswen......................................................................... 30

     6.   Defaulting Defendant changgeshangmaoyouxiangongsi ......................................... 31

     7.   Defaulting Defendant Citihomy .......................................................................... 31

     8.   Defaulting Defendant Ckypee .............................................................................. 32

     9.   Defaulting Defendant DAFA International ........................................................... 32

     10.  Defaulting Defendant Dazzparty ......................................................................... 33

     11.  Defaulting Defendant FAming ............................................................................. 33

     12.  Defaulting Defendant GeGeonly .......................................................................... 34

     13.  Defaulting Defendant HAITing$.......................................................................... 34

     14.  Defaulting Defendant Haocheng-Trade................................................................ 35

     15.  Defaulting Defendant HAPPY PARTY-001 ........................................................ 35

     16.  Defaulting Defendant Heartland GO ................................................................... 36

     17.  Defaulting Defendant Huibi-US ........................................................................... 36

     18.  Defaulting Defendant Joysail ............................................................................... 37

i

19.  Defaulting Defendant Jyoker-US1 ................................................................. 37

20.  Defaulting Defendant Kangxinsheng1 ........................................................... 38

21.  Defaulting Defendant LADYBEETLE ............................................................ 38

22.  Defaulting Defendant LICHE Cupcake stand ................................................ 39

23.  Defaulting Defendant lvyun ........................................................................... 39

24.  Defaulting Defendant Mary good shop .......................................................... 40

25.  Defaulting Defendant NA-AMZ001 ............................................................... 40

26.  Defaulting Defendant Nagiwart ..................................................................... 41

27.  Defaulting Defendant nuoting ....................................................................... 41

28.  Defaulting Defendant Qingshu ...................................................................... 42

29.  Defaulting Defendant QT-US ......................................................................... 42

30.  Defaulting Defendant SALIMHIB-US ........................................................... 43

31.  Defaulting Defendant SAM CLAYTONddg ................................................... 43

32.  Defaulting Defendant Sensiamz Backdrop .................................................... 44

33.  Defaulting Defendant shenzhenshixindajixieyouxiangongsi ........................ 44

34.  Defaulting Defendant SMASSY US ............................................................... 45

35.  Defaulting Defendant SMSCHHX ................................................................. 45

36.  Defaulting Defendant sujiumaisusu .............................................................. 46

37.  Defaulting Defendant telike........................................................................... 46

38.  Defaulting Defendant Theguard .................................................................... 47

39.  Defaulting Defendant tongmumy ................................................................... 47

40.  Defaulting Defendant Une petite mouette ..................................................... 48

41.  Defaulting Defendant Veterans Club a/k/a 老兵俱乐部 ............................... 49

42.  Defaulting Defendant wch- us ....................................................................... 49

43.  Defaulting Defendant WEN MIKE ................................................................. 50

44.  Defaulting Defendant WONDERFUL MEMORIES ....................................... 50

45.  Defaulting Defendant WOW GIFT ................................................................. 51

46.  Defaulting Defendant xuanningshangwu ...................................................... 51

47.  Defaulting Defendant XueHua INC ............................................................... 52

48.  Defaulting Defendant Xuiyui7i ...................................................................... 52

49.  Defaulting Defendant YAMMO202................................................................ 53

50.  Defaulting Defendant Yicheny US ................................................................. 53

51.  Defaulting Defendant yongchunchengqingmaoyiyouxiangongsi .................. 54

52.  Defaulting Defendant YooFly ........................................................................ 54

53.   Defaulting Defendant Zingon US ................................................................ 55

**H.   PLAINTIFF IS ENTITLED TO SERVE RESTRAINING NOTICES PURSUANT TO CPLR § 5222 AND TO AN ASSET TURNOVER PURSUANT TO CPLR § 5225 ... 55**

V.  CONCLUSION ......................................................................................................... 59

# TABLE OF AUTHORITIES

**Cases**

. *Luxottica Grp. S.p.A. v. P'ships, et al.*, 18 Civ. 2188, 2019 U.S. Dist. LEXIS 93466 (N.D. Ill. June 4, 2019) ..................................................................................................................... 10

*Advanced Aerofoil Techs., AG v. Todaro*, No. 11-CV-9505, 2012 U.S. Dist. LEXIS 12383 (S.D.N.Y. Jan. 31, 2012) ...................................................................................................... 10

*Allee v. Medrano*, 416 U.S. 802 (1974) ................................................................................... 19

*Allstar Marketing Group, LLC v. _GB Housewear Store, et al.,* No. 17-cv-7596 (SHS) (S.D.N.Y. July 9, 2018) ...................................................................................................................... 28

*All-Star Mktg. Grp., LLC v. Media Brands Co.*, 775 F. Supp. 2d 613 (S.D.N.Y. 2011) ............. 27

*Anova Applied Elecs., Inc. v. Hong King Grp., Ltd.*, 334 F.R.D. 465 (D. Mass. 2020) .............. 10

*Arrowhead Capital Fin., Ltd. v. Seven Arts Entm't, Inc.*, No. 14 Civ. 6512 (KPF), 2017 U.S. Dist. LEXIS 125068, (S.D.N.Y. Aug. 8, 2017) ....................................................................... 56, 58

*Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61 (2d Cir. 1981) ................................................. 17

*AW Licensing, LLC v. Bao*, 15-CV-1373-KBF, 2016 U.S. Dist. LEXIS 101150 (S.D.N.Y. Aug. 2, 2016) ................................................................................................................................ 24

*Blue v. Cablevision Sys., N.Y. City Corp.*, No. 00-3836, 2006 U.S. Dist. LEXIS 96449 (E.D.N.Y. July 5, 2007) ......................................................................................................................... 56

*Brown v. China Integrated Energy, Inc.*, 285 F.R.D. 560 (C.D. Cal. Jul. 17, 2012) ................... 11

*Burda Media, Inc. v. Viertel*, 417 F.3d 292 (2d Cir. 2005) ......................................................... 6

*Chanel, Inc. v. Handbagstore*, No. 20-CV-62121-RUIZ/STRAUSS, 2021 U.S. Dist. LEXIS 122842 (S.D. Fla. June 30, 2021) ......................................................................................... 9

*City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114 (2d Cir. 2011) ....................... 3, 16

*Coach, Inc. v. Horizon Trading USA Inc.*, 908 F. Supp. 2d 426 (S.D.N.Y. 2012) ..................... 18

*Coach, Inc. v. Weng*, 2014 U.S. Dist. LEXIS 79005 (S.D.N.Y. June 7, 2014) ........................... 23

*Commodity Futures Trading Comm'n v. Caniff*, No. 19-cv-02935, 2020 U.S. Dist. LEXIS 33416 (N.D. Ill. Feb. 27, 2020) ..................................................................................................... 11

*Cruz v. TD Bank, N.A.*, 711 F.3d 261 (2d Cir. 2013) ................................................................ 57

*CSX Transp., Inc. v. Emjay Envtl. Recycling, LTD.*, No. 12-CV-1865, 2016 U.S. Dist. LEXIS 23014 (E.D.N.Y. Feb. 25, 2016) ........................................................................................ 58

*Dawson v. Krolikowski*, 530 N.Y.S.2d 931 (Sup. Ct. 1988) ...................................................... 56

*Dev. Specialists, Inc. v. Li (In re Coudert Bros. LLP)*, No. 16-CV-8237 (KMK), 2017 U.S. Dist. LEXIS 71435 (S.D.N.Y. May 9, 2017) ................................................................................... 6

*eBay Inc. v. MercExchange, LLC*, 547 U.S. 388 (2006) ............................................................ 19

*Elsevier, Inc. v. Siew Yee Chew*, 287 F. Supp. 3d 374 (S.D.N.Y. 2018) .................................. 5, 13

*Enron Oil Corp. v. Diakuhara*, 10 F.3d 90 (2d Cir. 1993) ......................................................... 3

*Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*, No. 10-BR-13164, 2020 Bankr. LEXIS 3489 (Bankr. S.D.N.Y. 2020) .................................................... 10

*Faram 1957 S.p.A. v. Faram Holding & Furniture, Inc.,* No. 16-CV-2430 (VSB), 2018 U.S. Dist. LEXIS 44594 (S.D.N.Y. Mar. 19, 2018) ................................................................................ 17

*Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp.*, 689 F. Supp. 2d 585 (S.D.N.Y. 2010) ................................................................................................................................... 15

*Finkel v. Romanowicz*, 577 F.3d 79 (2d Cir. 2009) .................................................................. 17

*Fitzgerald Publ'g Co., Inc. v. Baylor Publ'g Co.*, 807 F.2d 1110 (2d Cir. 1986) ....................... 24

*Genus Lifesciences Inc. v. Tapaysa Eng'g Works Pvt. Ltd.*, 2020 U.S. Dist. LEXIS 251499 (E.D. Pa. Mar. 10, 2021) ................................................................................................................ 10

*Gray v. Sanders*, 372 U.S. 368 (1963) ...................................................................................... 20

*Gucci Am., Inc. v. Curveal Fashion*, No. 09 Civ. 8458 (RJS), 2010 U.S. Dist. LEXIS 5831 (S.D.N.Y. Jan. 20, 2010) ....................................................................................................... 27

*Gucci Am., Inc. v. Tyrrell-Miller*, 678 F. Supp. 2d 117 (S.D.N.Y. 2008) ................................. 18

*Hangzhou Chic Intelligent Tech.*, No. 20 C 4806, 2021 U.S. Dist. LEXIS 64064 ...................... 9

*Hounddog Prods., L.L.C. v. Empire Film Group, Inc.*, 826 F. Supp. 2d 619 (S.D.N.Y. 2011) ... 22

*Ideavillage Prods. Corp. v. 29shyans2012, et al.,* 18-cv-6266 (AT) (S.D.N.Y. Nov. 6, 2018) ... 27

*Ideavillage Prods. Corp. v. 711 Market, et al.,* No. 18-cv-7832-JMF (S.D.N.Y. Dec. 12, 2018) .................................................................................................................................... 27, 58

*Ideavillage Prods. Corp. v. Aarhus*, No. 1:18-cv-02739 (JGK) (SDA), 2019 U.S. Dist. LEXIS 78914 (S.D.N.Y. May 7, 2019) .............................................................................................. 16

*Ideavillage Prods. Corp. v. Bling Boutique Store, et al.,* No. 16-cv-9039 (KMW) (S.D.N.Y. July 24, 2018) ............................................................................................................................ 28

*In re Bibox Grp. Holdings Sec. Litig.*, No. 20cv2807(DLC), 2020 U.S. Dist. LEXIS 142802 (S.D.N.Y. Aug. 10, 2020) ..................................................................................................... 11

*In re GLG Life Tech Corp. Sec. Litig.*, 287 F.R.D. 262 (S.D.N.Y. 2012) .................................... 11

*Interpool Ltd. v. Patterson*, No. 89 Civ. 8501 (LAK), 1995 U.S. Dist. LEXIS 2920 (S.D.N.Y. Mar. 13, 1995) ..................................................................................................................... 57

*Jackson Lab'y v. Nanjing Univ.*, 2018 U.S. Dist. LEXIS 13630 (D. Me. Jan. 29, 2018) ............. 10

*Jemine v. Dennis*, 901 F. Supp. 2d 365 (E.D.N.Y. 2012) ........................................................... 17

*JLM Couture, Inc. v. Aimibridal, et al.*, No. 18-cv-1565 (JMF) (S.D.N.Y. June 7, 2018) .......... 28

*Julien v. Williams*, No. 10-CV-2358, 2010 U.S. Dist. LEXIS 132704 (M.D. Fla. Dec. 15, 2010) 6

*Kepner-Tregoe, Inc. v. Vroom*, 186 F.3d 283 (2d Cir. 1999) ..................................................... 15

*Koehler v. Bank of Bermuda Ltd.*, 12 N.Y.3d 533 (2009) ......................................................... 58

*Koon Chun Hing Kee Soy & Sauce Factory, Ltd. v. Star Mark Mgmt.*, No. 04-cv-2293 (JFB), 2007 U.S. Dist. LEXIS 1404, 2007 WL 74304 (E.D.N.Y. Jan. 8, 2007) .................................. 16

*Louis Vuitton Malletier & Oakley, Inc. v. Veit*, 211 F. Supp. 2d 567 (S.D.N.Y. 2002) .............. 27

*Louis Vuitton Malletier v. Carducci Leather Fashions, Inc.*, 648 F. Supp. 2d 501 (S.D.N.Y. 2009) ............................................................................................................................ 24, 25

*Luxottica Grp. S.p.A. v. P'ships, et al.*, 391 F. Supp. 3d 816 (N.D. Ill. 2019) ............................ 10

*MacLean-Fogg Co. v. Ningbo Fastlink Equip. Co.*, No. 08 CV 2593, 2008 U.S. Dist. LEXIS 97241 (N.D. Ill. Dec. 1, 2008) .............................................................................................. 10

*Mattel, Inc. v. 1994_honeymoon, et al.*, No. 18-cv-10427-KPF (S.D.N.Y. Mar. 27, 2019) ......... 27

*Mattel, Inc. v. 276470, et al.*, No. 18-cv-10440-KPF (S.D.N.Y. Mar. 27, 2019) ........................ 27

*Mattel, Inc. v. 86755, et al.,* No. 18-cv-8825-JSR (S.D.N.Y. Dec. 17, 2018) ...................... 27, 58

*Mattel, Inc. v. Animefunstore, et al.*, 18 Civ. 8824 (LAP) (Dkt. 81) (S.D.N.Y. May 1, 2020) .... 13

*Microsoft Corp. v. Goldah Com Network Tech Co.*, 17-cv-02896-LHK, 2017 U.S. Dist. LEXIS 168537 (N.D. Cal. Oct. 11, 2017) ......................................................................................... 12

*Mint, Inc. v. Iddi Amad*, 2011 U.S. Dist. LEXIS 49813 (S.D.N.Y. May 9, 2011) ....................... 21

*Mitchell v. Lyons Prof'l Servs., Inc.*, 727 F. Supp. 2d 120 (E.D.N.Y. 2010) ............................... 58

*Mitchell v. Theriault*, 516 F. Supp. 2d 450 (M.D. Pa. 2007) ...................................................... 7

*Montblanc Simplo GMBH v. Colibri Corp.*, 692 F. Supp. 2d 245 (E.D.N.Y. 2010) ............. 21, 22

*Moose Toys Pty Ltd., et al. v. 963, et al.,* No. 18-cv-2187-VEC (S.D.N.Y. Nov. 30, 2018).. 27, 58

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) ............................................ 12

*N.A.S. Imp. Corp. v. Chenson Enters.*, 968 F.2d 250 (2d Cir. 1992) ............................................ 16

*Nespresso USA, Inc. v. Afr. Am. Coffee Trading Co. LLC*, No. 15CV5553-LTS, 2016 U.S. Dist.
 LEXIS 71942 (S.D.N.Y. June 2, 2016) ................................................................................. 3

*Nike, Inc. v. Top Brand Co*., 00 Civ. 8179 (KMW) (RLE), 2006 U.S. Dist. LEXIS 76543
 (S.D.N.Y. Feb. 27, 2006) ....................................................................................................... 26

*Nike, Inc. v. Wu*, 349 F. Supp. 3d 310 (S.D.N.Y. 2018) ............................................................... 27

*Northern Mariana Islands v. Millard*, 845 F. Supp. 2d 579 (S.D.N.Y. 2012) ............................ 58

*NY City Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305 (S.D.N.Y. 2010) ..... 22

*Oakley, Inc. v. P'ships & Unincorporated Ass'ns Identified in Schedule "A"*, No. 20-cv-05049,
 2021 U.S. Dist. LEXIS 128234 (N.D. Ill. July 9, 2021) ...................................................... 10

*Off-White LLC v. 2017pingan, et al*., 20-cv-5191 (KPF) Dkt. 40 (S.D.N.Y. May 7, 2021) ........ 56

*Off-White LLC v. 5HK5584*, No. 19-cv-672 (RA) (JLC), 2020 U.S. Dist. LEXIS 58926
 (S.D.N.Y. Apr. 3, 2020) ......................................................................................................... 18

*Off-White LLC v. A445995685, et al.,* No. 18-cv-2099-LGS-KNF (S.D.N.Y. Nov. 16, 2018) ... 27

*Off-White v. ^_^Warm House^_^ STORE, et al.*, No. 17-cv-8872-GBD-GWG (S.D.N.Y. Jan. 17,
 2019) ...................................................................................................................................... 58

*Ontel Prods. Corp. v. Airbrushpainting Makeup Store*, 17-cv-871 (KBF), 2017 Dist. LEXIS
 221489 (S.D.N.Y. June 29, 2017)......................................................................................... 26

*Ouyeinc Ltd. v. Alucy*, No. 20 C 3490, 2021 U.S. Dist. LEXIS 118876 (N.D. Ill. June 25, 2021)
 ................................................................................................................................................ 11

*Pashaian v. Eccelston Props., Ltd.*, 88 F.3d 77 (2d Cir. 1996) ................................................... 57

*Pearson Educ. Inc. v. Doe 1*, No. 18-CV-7380, 2019 U.S. Dist. LEXIS 210349 (S.D.N.Y. Dec. 2,
 2019) ...................................................................................................................................... 13

*Pearson Educ., Inc. v. Vegara,* No. 09 Civ. 6832 (JGK)(KNF), 2010 U.S. Dist. LEXIS 101597
 (S.D.N.Y. Sept. 27, 2010) ..................................................................................................... 21

*Philip Morris USA Inc. v. Veles Ltd.*, No. 06-CV-2988, 2007 U.S. Dist. LEXIS 19780 (S.D.N.Y.
 Mar. 12, 2007) ....................................................................................................................... 13

*Pitbull Prods., Inc. v. Universal Netmedia, Inc.,* No. 07 Civ. 1784 (RMR) (GWG), 2007 U.S.
 Dist. LEXIS 82201 (S.D.N.Y. Nov. 7, 2007) ....................................................................... 26

*Really Good Stuff, LLC v. BAP Inv'rs, L.C.,* 813 Fed. App'x 39 (2d Cir. 2020)........................... 20

*Richemont Int'l S.A. v. Montesol OU*, 2014 U.S. Dist. LEXIS 104247 (S.D.N.Y. May 13, 2014)
 ................................................................................................................................................ 16

*Rio Props. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002) ....................................... 12

*Rodgers v. Anderson*, No. 04 Civ. 1149 (RJH) (AJP), 2005 U.S. Dist. LEXIS 7054 (S.D.N.Y.
 Apr. 26, 2005) ........................................................................................................................ 27

*Rolex Watch U.S.A., Inc. v. Brown*, No. 01 Civ. 9155 (JGK) (AJP), 2002 U.S. Dist. LEXIS
 10054 (S.D.N.Y. June 5, 2002)............................................................................................. 27

*Rovio Entertainment Ltd. and Rovio Animation Oy v. Best Baby and Kid Store, et al.,* No. 17-cv-
 4884 (KPF) (S.D.N.Y. June 28, 2018)................................................................................... 28

*Rubie's Costume Co., Inc. v. Yiwu Hua Hao Toys Co.*, 2019 U.S. Dist. LEXIS 204380 (W.D.
 Wash. Nov. 25, 2019) ........................................................................................................... 10

*S.E.C. v. Colonial Inv. Mgmt. LLC*, No. 07 Civ. 8849 (PKC), 2010 U.S. Dist. LEXIS 108063
 (S.D.N.Y. Oct. 6, 2010) ......................................................................................................... 58

*SEC v. Anticevic*, No. 05 CV 6991 (KMW), 2009 U.S. Dist. LEXIS 11480 (S.D.N.Y. Feb. 8,
 2009) ........................................................................................................................................ 9

*Spin Master Ltd. v. Alan Yuan's Store*, 325 F. Supp. 3d 413 (S.D.N.Y. 2018) ........................... 27

*Steele v. Bell*, 2014 U.S. Dist. LEXIS 44976 (S.D.N.Y. Mar. 3, 2014) ....................................... 19

*Strabala v. Zhang*, 318 F.R.D. 81 (N.D. Ill. 2016) ................................................................... 15

*Sulzer Mixpac AG v. Medenstar Indus. Co.*, 312 F.R.D. 329 (S.D.N.Y. 2015) ........... 9, 10, 11, 13

*Tapestry, Inc., et al. v. baoqingtianff, et al.*, No. 18-cv-7650-PAE (S.D.N.Y. Jan. 8, 2019) . 27, 58

*Tevra Brands LLC v. Bayer Healthcare LLC*, No. 19 Civ. 4312, 2020 U.S. Dist. LEXIS 109919
   (N.D. Cal. June 23, 2020) .......................................................................................................... 11

*The Knit With v. Knitting Fever, Inc.*, Nos. 08-CV-4221, 08-CV-4775, 2010 U.S. Dist. LEXIS
   70412 (E.D. Pa. July 13, 2010) ................................................................................................... 6

*The Neck Hammock, Inc v. Danezen.com*, 2020 U.S. Dist. LEXIS 202808 (D. Utah Oct. 29,
   2020) .......................................................................................................................................... 10

*Tiffany (NJ) Inc. v. eBay, Inc.*, 600 F.3d 93 (2d Cir. 2010) ........................................................ 17

*Tiffany (NJ) Inc. v. Luban*, 282 F. Supp. 2d 123 (S.D.N.Y, 2003) ............................................ 15

*Tiffany (NJ) LLC v. Dong*, 2013 U.S. Dist. LEXIS 114986 (S.D.N.Y. Aug. 9, 2013)................. 56

*Tiffany (NJ) LLC v. Forbse*, No. 11-cv-4976 (NRB), 2015 US Dist. LEXIS 129647 (S.D.N.Y.
   Sep. 22, 2015) ........................................................................................................................... 27

*United States Polo Ass'n v. PRL USA Holdings, Inc.*, 800 F. Supp. 2d 515 (S.D.N.Y. 2011) ..... 20

*Vega v. Hastens Beds, Inc.*, 339 F.R.D. 210 (S.D.N.Y. 2021) ..................................................... 6

*Vineyard House, LLC v. Constellation Brands United States Operations, Inc.*, No. 4:19-cv-
   01424-YGR, 2021 U.S. Dist. LEXIS 15702 (N.D. Cal. Jan. 26, 2021) ................................... 20

*Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694 (1988) ....................................... 10

*Vt. Teddy Bear Co. v. 1-800 BEARGRAM Co.*, 373 F.3d 241 (2d Cir. 2004) ............................. 19

*Wash. State Inv. Bd. v. Odebrecht S.A.*, 17-CV-8118, 2018 U.S. Dist. LEXIS 163356 (S.D.N.Y.
   Sept. 21, 2018) .......................................................................................................................... 10

*Water Splash, Inc. v. Menon*, 137 S. Ct. 1504 (2017) ........................................................... 6, 10

*Wow Virtual Reality, Inc. v. BIENBEST, et al.*, No. 18-cv-3305-VEC (S.D.N.Y. Dec. 5, 2018) 27,
   58

*WowWee Group Limited, et al. v. A249345157, et al.*, No. 17-cv-9358 (VEC) (S.D.N.Y. July 31,
   2018) .......................................................................................................................................... 27

*Zanghi v. Ritella*, 2020 U.S. Dist. LEXIS 20279 (S.D.N.Y. Feb. 5, 2020) ........................... 10, 12

**Statutes**

15 U.S.C. § 1116 ........................................................................................................................... 17

15 U.S.C. § 1117 ..................................................................................................................... 22, 25

17 U.S.C. § 502 ............................................................................................................................. 17

Fed. R. Civ. P. 4(f)(2)(A) ............................................................................................................... 6

Fed. R. Civ. P. 55 ........................................................................................................................... 3

Fed. R. Civ. P. 69 ......................................................................................................................... 41

Fed. R. Evid. 1006 ....................................................................................................................... 24

N.Y. C.P.L.R. § 5201 ............................................................................................................. 43, 44

N.Y. C.P.L.R. § 5222 ............................................................................................................. 41, 42

N.Y. C.P.L.R. § 5225 ............................................................................................................. 42, 43

N.Y. C.P.L.R. §§ 5201-5253 ....................................................................................................... 42

## GLOSSARY

| Term | Definition | Docket Entry Number |
|------|-----------|---------------------|
| **Plaintiff or Smart** | Smart Study Co., Ltd. | N/A |
| **Defendants** | Acuteye-US, APZNOE-US, beijingkangxintangshangmaoyouxiangongsi, blue vivi, Bonuswen, changgeshangmaoyouxiangongsi, Citihomy, Ckypee, DAFA International, Dazzparty, FAming, GaiFei Trade Co Ltd, GeGeonly, HAITing$, Haocheng-Trade, HAPPY PARTY-001, Heartland GO, Huibi-US, Joysail, Jyoker-US1, Kangxinsheng1, LADYBEETLE, LICHE Cupcake stand, lvyun, Mary good shop, NA-AMZ001, Nagiwart, nuoting, Qingshu, QT-US, SALIMHIB-US, SAM CLAYTONddg, Sensiamz Backdrop, shenzhenshixindajixieyouxiangongsi, SMASSY US, SMSCHHX, sujiumaisusu, sunnylifyau, telike, Theguard, tongmumy, Topivot, Tuoyi Toys, Une petite mouette, Veterans Club a/k/a 老兵俱乐部, wch- us, WEN MIKE, WONDERFUL MEMORIES, WOW GIFT, xuanningshangwu, XueHua INC, Xuiyui7i, YAMMO202, Yicheny US, YLILILY, yongchunchengqingmaoyiyouxiangongsi, YooFly and Zingon US | N/A |
| **Defaulting Defendants** | Acuteye-US, APZNOE-US, beijingkangxintangshangmaoyouxiangongsi, blue vivi, Bonuswen, changgeshangmaoyouxiangongsi, Citihomy, Ckypee, DAFA International, Dazzparty, FAming, GeGeonly, HAITing$, Haocheng-Trade, HAPPY PARTY-001, Heartland GO, Huibi-US, Joysail, Jyoker-US1, Kangxinsheng1, LADYBEETLE, LICHE Cupcake stand, lvyun, Mary good shop, NA-AMZ001, Nagiwart, nuoting, Qingshu, QT-US, SALIMHIB-US, SAM CLAYTONddg, Sensiamz Backdrop, shenzhenshixindajixieyouxiangongsi, SMASSY US, SMSCHHX, sujiumaisusu, telike, | N/A |

| | Theguard, tongmumy, Une petite mouette, Veterans Club a/k/a 老兵俱乐部, wch- us, WEN MIKE, WONDERFUL MEMORIES, WOW GIFT, xuanningshangwu, XueHua INC, Xuiyui7i, YAMMO202, Yicheny US, yongchunchengqingmaoyiyouxiangongsi, YooFly and Zingon US | |
|---|---|---|
| **Amazon** | Amazon.com, a Seattle, Washington-based, online marketplace and e-commerce platform owned by Amazon.com, Inc., a Delaware corporation, that allows manufacturers and other third-party merchants, like Defendants, to advertise, distribute, offer for sale, sell and ship their retail products, which, upon information and belief, primarily originate from China, directly to consumers worldwide and specifically to consumers residing in the U.S., including New York | N/A |
| **Sealing Order** | Order to Seal File entered on July 6, 2021 | Dkt. 1 |
| **Complaint** | Plaintiff's Complaint filed on July 8, 2021 | Dkt. 4 |
| **Application** | Plaintiff's *ex Parte* Application for: 1) a temporary restraining order; 2) an order restraining Merchant Storefronts (as defined *infra*) and Defendants' Assets (as defined *infra*) with the Financial Institutions (as defined *infra*); 3) an order to show cause why a preliminary injunction should not issue; 4) an order authorizing bifurcated and alternative service and 5) an order authorizing expedited discovery filed on July 8, 2021 | Dkts. 10-13 |
| **Yang Dec.** | Declaration of Su Jeong Yang in Support of Plaintiff's Application | Dkt. 13 |
| **Futterman Dec.** | Declaration of Danielle S. Futterman in Support of Plaintiff's Application | Dkt. 12 |
| **TRO** | 1) Temporary Restraining Order; 2) Order Restraining Merchant Storefronts and Defendants' Assets with the Financial Institutions; 3) Order to Show Cause Why a Preliminary Injunction Should Not Issue; 4) Order Authorizing Bifurcated and Alternative Service; and 5) Order Authorizing Expedited Discovery entered on July 9, 2021 | Dkt. 14 |

| | | |
|---|---|---|
| **PI Show Cause Hearing** | July 30, 2021 hearing to show cause why a preliminary injunction should not issue | N/A |
| **PI Order** | July 30, 2021 Preliminary Injunction Order | Dkt. 16 |
| **User Account(s)** | Any and all websites and any and all accounts with online marketplace platforms such as Amazon, as well as any and all as yet undiscovered accounts with additional online marketplace platforms held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them | N/A |
| **Merchant Storefronts** | Any and all User Accounts through which Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them operate storefronts to manufacture, import, export, advertise, market, promote, distribute, display, offer for sale, sell and/or otherwise deal in Counterfeit Products, which are held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them | N/A |
| **Baby Shark Content** | One of Smart's most successful creations, which is the Pinkfong "Baby Shark" song and viral music video with characters | N/A |
| **Baby Shark Registrations** | U.S. Trademark Registration Nos.: 5,803,108 for "BABY SHARK" for a variety of goods in Class 28; 5,483,744 for "PINKFONG" for a variety of goods in Classes 3 and 21; 5,327,527 for "PINKFONG" for a variety of goods in Classes 9, 16 and 28; 4,993,122 for "PINKFONG" a variety of goods in Classes 9 and 25; 6,138,374 for **pinkfong** for a variety of goods in Class 41; 6,337,210 for "PINKFONG BABY SHARK" for a variety of goods in Class 21 and 6,021,523 for **pinkfong Baby Shark** for a variety of goods in Class 28 | N/A |
| **Baby Shark Applications** | U.S. Trademark Serial Application Nos.: 79/253,035 for registration of "BABY SHARK" for a variety of goods in Classes 41, 25, 16 and 9; 88/396,786 for registration of "PINKFONG BABY SHARK" for a variety of goods | N/A |

x

| | | |
|---|---|---|
| | in Class 25; 88/529,984 for registration of "PINKFONG" for a variety of goods in Class 2, 3, 9, 14, 16, 18, 20, 21, 24, 25, 26, 27, 28, 29, 30, 32, 41; 88/530,086 for registration of "BABY SHARK" for a variety of goods in Class 2, 3, 9, 14, 16, 18, 20, 21, 24, 25, 26, 27, 28, 29, 30, 32, 41; 88/594,141 for "PINKFONG" for a variety of goods in Class 5; and 88/594,122 for "BABY SHARK" for a variety of goods in Class 5 | |
| **Baby Shark Marks** | The Baby Shark Registrations and Baby Shark Applications | N/A |
| **Baby Shark Works** | U.S. Copyright Registration Nos.: VA 2-130-856, covering Baby Shark; VA 2-130-847, covering Daddy Shark; VA 2-130-854, covering Mommy Shark; VA 2-131-983, covering Pink Fong Mascot; SR 823-609, covering Baby Shark (Sound Recording and Music); PA 2-142-905, covering Baby Shark (Motion Picture) | N/A |
| **Baby Shark Products** | Smart has developed and initiated an extensive worldwide licensing program for a wide variety of consumer products such as toys, sound books, t-shirts, associated with and/or related to the Baby Shark Content | N/A |
| **Counterfeit Products** | Products bearing or used in connection with the Baby Shark Marks and/or Baby Shark Works, and/or products in packaging and/or containing labels and/or hang tags bearing the Baby Shark Marks and/or Baby Shark Works, and/or bearing or used in connection with marks and/or artwork that are confusingly or substantially similar to the Baby Shark Marks and/or Baby Shark Works and/or products that are identical or confusingly or substantially similar to the Baby Shark Products | N/A |
| **Defendants' Assets** | Any and all money, securities or other property or assets of Defendants (whether said assets are located in the U.S. or abroad) | N/A |
| **Defendants' Financial Accounts** | Any and all financial accounts associated with or utilized by any Defendants or any Defendants' User Accounts or Merchant Storefront(s) (whether said account is located in the U.S. or abroad) | N/A |

| | | |
|---|---|---|
| **Financial Institutions** | Any banks, financial institutions, credit card companies and payment processing agencies, such as Amazon.com, Inc., Amazon Payments, Inc. ("Amazon Pay"), PayPal Inc. ("PayPal"), Payoneer Inc. ("Payoneer"), PingPong Global Solutions, Inc. ("PingPong") and other companies or agencies that engage in the processing or transfer of money and/or real or personal property of Defendants | N/A |
| **Third Party Service Providers** | Online marketplace platforms, including, without limitation, those owned and operated, directly or indirectly, by Amazon, such as Amazon.com, as well as any and all as yet undiscovered online marketplace platforms and/or entities through which Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them manufacture, import, export, advertise, market, promote, distribute, offer for sale, sell and/or otherwise deal in Counterfeit Products which are hereinafter identified as a result of any order entered in this action, or otherwise | N/A |
| **Defendants' Frozen Assets** | Defendants' Assets from Defendants' Financial Accounts that were and/or are attached and frozen or restrained pursuant to the TRO and/or PI Order, or which are attached and frozen or restrained pursuant to any future order entered by the Court in this Action | N/A |
| **Amazon Discovery** | The supplemental report identifying Defendants' Infringing ASIN Number, Merchant Customer ID, Net Ordered Units, among other things, provided by counsel for Amazon to Plaintiff's counsel pursuant to the expedited discovery ordered in both the TRO and PI Order | N/A |
| **Plaintiff's Motion for Default Judgment** | Plaintiff's Application for an Order to Show Cause Why Default Judgment and a Permanent Injunction should not be entered Against Defaulting Defendants filed on February 11, 2022 | TBD |
| **Nastasi Aff.** | Affidavit by Gabriela N. Nastasi in Support of Plaintiff's Motion for Default Judgment | TBD |

## I.   <u>INTRODUCTION</u>[1]

In accordance with the Court's Individual Rules, Local Civil Rule 55.2(b) and Federal Rule of Civil Procedure 55(b)(2), Plaintiff respectfully submits that entry of default judgment against Defaulting Defendants is appropriate and seeks the following relief against Defaulting Defendants: 1) the entry of final judgment and permanent injunction by default; 2) individual statutory damages awards pursuant 15 U.S.C. § 1117(c) in the amount of Fifty Thousand U.S. Dollars ($50,000.00) against each Defaulting Defendant (Fifty-Three (53) Defaulting Defendants), plus post-judgment interest calculated pursuant to the statutory rate; and 3) service of asset restraining notices pursuant to CPLR § 5222.[2]

## II.   <u>PROCEDURAL HISTORY</u>

In the interest of brevity, the procedural history is contained in the attorney affidavit of Gabriela N. Nastasi, plus accompanying exhibits.  *See* Nastasi Aff.

## III.   <u>STATEMENT OF FACTS</u>

Smart is a global entertainment company specializing in developing animated and gaming content to deliver high-quality entertainment. Headquartered in Seoul, South Korea, Smart currently has 200+ employees and offices in Los Angeles, Shanghai and Hong Kong. Smart has developed award-winning brands including "Pinkfong", "Monster Super League", "JellyKing" and "Tamago Monsters".  (Complaint, ¶ 7).  Through Smart's preschool brand, Pinkfong, the company produces modern-day songs and stories to provide stimulating and fun learning experiences to children. *Id.* at ¶ 8. One of Smart's most successful creations is the Pinkfong "Baby

---

[1] Where a defined term is referenced herein and not defined herein, the defined term should be understood as it is defined in the Glossary.

[2] Through this Motion for Default Judgment, in addition to permanent injunctive relief, Plaintiff only seeks damages for its First and Second Causes of Action, however, Plaintiff does not waive its remaining causes of action. Plaintiff does not seek monetary relief in connection with the remaining causes of action plead in the Complaint or attorneys' fees.

Shark" song and viral music video with characters, which to date has amassed nearly 8.8 billion

views on YouTube and debuted at No. 32 on the Billboard Hot 100 Chart. *Id.* at ¶ 9. Smart has

developed and initiated an extensive worldwide licensing program for a wide variety of consumer

products such as toys, sound books and t-shirts associated with and/or related to the BABY

SHARK and PINKFONG trademarks and the Baby Shark Content. *Id.* at ¶ 10. While Smart has

gained significant common law trademark and other rights in its BABY SHARK and PINKFONG

trademarks through its extensive use, advertising and promotion, Smart has also protected its

valuable rights by filing for and obtaining federal trademark registrations. (Yang Dec., ¶ 10).

Defaulting Defendants are located in China but conduct business in the U.S., including

within this judicial district, and other countries through their User Accounts and Merchant

Storefronts with and on Amazon. (Complaint, Ex. D).  Plaintiff authorized Epstein Drangel to

investigate and research manufacturers, wholesalers, and/or third-party merchants offering for sale

and/or selling Counterfeit Products on Amazon. (Yang Dec., ¶ 21, Futterman Dec., ¶ 14).  Through

their Merchant Storefronts, without Plaintiff's authorization or consent, Defaulting Defendants

were and/or are currently manufacturing, importing, exporting, advertising, marketing, promoting,

distributing, displaying, offering for sale and/or selling Counterfeit Products. (Futterman Dec., ¶¶

14-15, Ex. A; Yang Dec., ¶¶ 22-24; Complaint, Ex. D).

Plaintiff brought this action against Defendants for claims for trademark infringement of

Plaintiff's federally registered trademarks in violation of § 32 of the Federal Trademark (Lanham)

Act, 15 U.S.C. §§ 1051 *et seq.*; counterfeiting of Plaintiff's federally registered trademarks in

violation of 15 U.S.C. §§ 1114(1)(a)-(b), 1116(d) and 1117(b)-(c); false designation of origin,

passing off and unfair competition in violation of Section 43(a) of the Trademark Act of 1946, as

amended (15 U.S.C. §1125(a)); copyright infringement of Plaintiff's federally registered

2

copyrights in violation of the Federal Copyright Act, 17 U.S.C. § 501(a); and related state and common law claims, arising from the infringement of the Baby Shark Marks and Baby Shark Works, including, without limitation, by manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling unlicensed, counterfeit and infringing versions of Plaintiff's Baby Shark Products by Defendants. (*See* Complaint).

## IV.   ARGUMENT

### A.   THE ENTRY OF A DEFAULT JUDGMENT AGAINST DEFAULTING DEFENDANTS IS APPROPRIATE

Federal Rule of Civil Procedure 55(b) provides for a court-ordered default judgment following the entry of default by the court clerk under Rule 55(a).  In determining whether to grant a motion for default judgment, a court within this district considers three factors: '(1) whether the defendant's default was willful; (2) whether defendant has a meritorious defense to plaintiff's claims; and (3) the level of prejudice the nondefaulting party would suffer as a result of the denial of the motion for default judgment.'" *Nespresso USA, Inc. v. Afr. Am. Coffee Trading Co. LLC*, No. 15CV5553-LTS, 2016 U.S. Dist. LEXIS 71942, *6 (S.D.N.Y. June 2, 2016) (internal citations omitted).  Once the foregoing factors have been established, the court "must determine whether the plaintiff has pleaded facts supported by evidence sufficient to establish the defendant's liability with respect to each cause of action".  *Id.*  "It is an ancient common law axiom that a defendant who defaults thereby admits all well-pleaded factual allegations contained in the complaint." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011).  Ultimately, the entry of a default judgment is entrusted to the sound discretion of the district court. *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993).

Here, Defaulting Defendants have failed to appear, answer or otherwise respond to the

3

Complaint or comply with the expedited discovery ordered in the TRO and PI Order, which indicates that Defaulting Defendants' conduct is willful. (Nastasi Aff., ¶¶ 21-23); *Indymac Bank, F.S.B. v. N'tl Settlement Agency, Inc*. No. 07-cv-6865 (LTS) (GWG), 2007 U.S. Dist. LEXIS 93420, *2 (S.D.N.Y. Dec. 19, 2007).  Given that Defaulting Defendants have failed to appear, they have likewise failed to present any meritorious defenses (were Defaulting Defendants to have any, which they do not). *See id.*  In addition, denying Plaintiff's Motion for Default Judgment would be highly prejudicial to Plaintiff since Plaintiff would otherwise be left without any recourse. Moreover, Plaintiff has adduced more than sufficient allegations, supported by evidence, to establish all of its claims in connection with Plaintiff's Application, and as fully briefed in Plaintiff's Application and as the Court already implicitly acknowledged, the Court has personal jurisdiction over Defendants.  *See* TRO and PI Order. Therefore, Plaintiff respectfully submits that the Court should enter default judgment against Defaulting Defendants, and Plaintiff's request for damages, as set forth herein, is reasonable and supported by evidence.

### 1.  Service of Process was Properly Effected on Defendants

Both China and the United States are signatories to the Hague Convention, however, where, as is the case with eleven (11) of the Defaulting Defendants here, such Defendants display incomplete, false and/or no physical addresses whatsoever on their Merchant Storefronts to shield their true identities, the Hague Convention does not apply. *See, Advanced Access Content Sys. Licensing Adm'r, LLC v. Shen*, No. 14 Civ. 1112 (VSB), 2018 U.S. Dist. LEXIS 169603, at *7 (S.D.N.Y. Sep. 30, 2018) (*quoting* Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, art. I).  Upon review of Defendants' Merchant Storefronts herein, Epstein Drangel discovered that out of the fifty-three (53) Defendants remaining in this action, eleven (11) of the Defaulting Defendants: Acuteye-US, Dazzparty,

Joysail, NA-AMZ001, nuoting, Sensiamz Backdrop, SMSCHHX, tongmumy, WEN MIKE, WOW GIFT and XueHua INC displayed partial, incomplete and/or false address. (Nastasi Aff., ¶ 34). Accordingly, for these eleven Defaulting Defendants, the Hague Convention does not apply, and for the reasons set forth herein, these Defaulting Defendants were properly served by email. *See, id.*; *see also Elsevier, Inc. v. Siew Yee Chew*, 287 F. Supp. 3d 374, 379 (S.D.N.Y. 2018) ("the lack of an address by itself suggests that the Hague Convention does not even apply inasmuch as Article 1 of the Hague Convention specifies that it 'shall not apply where the address of the person to be served with the document is not known.'").

With respect to the remaining forty-two (42) Defaulting Defendants, even if the Hague Convention does apply, for the reasons set forth herein, Plaintiff respectfully submits that the alternative service granted in the TRO and PI Order was appropriate as the Hague Convention allows for such Defendants to be served via the alternative means requested herein, namely, registered electronic mail with confirmation of delivery by Rmail, and website publication, either pursuant to Fed. R. Civ. P. 4(f)(2)(A) or Fed. R. Civ. P. 4(f)(3).

"Article 2 of the Hague mandates that each contracting country 'designate a Central Authority which [ ] undertake[s] to receive requests for service' from other countries party to the agreement," *Vega v. Hastens Beds, Inc.*, 339 F.R.D. 210 (S.D.N.Y. 2021) (*quoting* Hague Service Convention, 20 U.S.T. 361, Art. 2.)). "Submitting a request to a central authority is not, however, the only method of service approved by the Convention. For example, Article 8 permits service through diplomatic and consular agents; Article 11 provides that any two states can agree to methods of service not otherwise specified in the Convention; and ***Article 19 clarifies that the Convention does not preempt any internal laws of its signatories that permit service from abroad via methods not otherwise allowed by the Convention***." *Water Splash, Inc. v. Menon*, 137 S. Ct.

1504, 1508 (2017) (emphasis added); *see also, Vega v. Hastens Beds, Inc.*, 339 F.R.D. 210, 216 (S.D.N.Y. 2021). (*citing Burda Media, Inc. v. Viertel*, 417 F.3d 292, 300 (2d Cir. 2005) (citing Hague Service Convention, Arts. 5, 6, 8, 9 & 10)) ("The Hague Service Convention provides alternate methods of service, in addition to the Central Authority—*e.g.*, "service through consular channels", "service by mail if the receiving [foreign] state does not object" and "service pursuant to the internal laws of the [foreign] state.")

Pursuant Fed. R. Civ. P. 4(f)(2)(A), service may occur at a place not within any judicial district of the United States "if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice . . . as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction." Fed. R. Civ. P. 4(f)(2)(A). "While this precise issue has not been explicitly ruled on by any other court in the Second Circuit, courts have appeared to implicitly accept that Rule 4(f)(2)(A) allows for service through any method…permitted by the recipient country." *Dev. Specialists, Inc. v. Li (In re Coudert Bros. LLP)*, No. 16-CV-8237 (KMK), 2017 U.S. Dist. LEXIS 71435, at *34-35 (S.D.N.Y. May 9, 2017); *see also Modern Computer Corp. v. Ma*, 862 F. Supp. 938, 946 (1994) (allowing service via mail under Rule 4(f)(2)(A) where the plaintiff submitted an affidavit claiming that service via mail complied with the law of the recipient country). Courts outside the Second Circuit (and the Ninth Circuit) have also implicitly acknowledged that service via mail may be valid under Rule 4(f)(2)(A). *See Julien v. Williams*, No. 10-CV-2358, 2010 U.S. Dist. LEXIS 132704, at *3 (M.D. Fla. Dec. 15, 2010) (holding that "in order to determine if service by mail was proper in this case under Rule 4(f)(2)(A), this [c]ourt must look to the law of [the recipient country]"); *The Knit With v. Knitting Fever, Inc.*, Nos. 08-CV-4221, 08-CV-4775, 2010 U.S. Dist. LEXIS 70412 at *9 (E.D. Pa. July 13, 2010) (looking to the law of the recipient country to determine whether service

6

via mail was valid under Rule 4(f)(2)(A)); *Mitchell v. Theriault*, 516 F. Supp. 2d 450, 456-57 (M.D. Pa. 2007) (concluding that service on an individual could be effected via mail pursuant to Rule 4(f)(2)(A), but holding that service on a corporation via mail was ineffective because of certain restrictions in the law of the recipient country).

Pursuant to Article 87 of Civil Procedure Law of the People's Republic of China ("PRC Article 87"), "[s]ubject to the consent of the person on which a procedural document is to be served, the document may be served by way of facsimile, **electronic mail** or any other means through which the receipt of the document may be acknowledged, with the exception of judgments, rulings and mediation statements…" (emphasis added). *See Hangzhou Chic Intelligent Tech. Co. v. P'ships & Unincorporated Ass'n Identified on Schedule A*, No. 20 C 4806, 2021 U.S. Dist. LEXIS 64064, at *11 (N.D. Ill. Apr. 1, 2021). Further, Article 31 of the Online Litigation Rules of the People's Court, adopted at the 1838th meeting of the judicial committee of the Supreme People's Court on May 18, 2021 and effective as of August 1, 2021, is instructive in light of its specific provisions relating to service via electronic means, including Article 31, which confirms when service via email is received, and Article 32 which allows for the Court to serve through SMS, instant messaging tools, prompts on the litigation platform.[3] (Nastasi Aff., ¶ 38, Ex. G). Accordingly, Chinese law specifically authorizes service by e-mail (as well as through other electronic means), particularly where, as here, Defendants both expressly and impliedly consented to service by email. First, pursuant to Article 29(D) of the Rules of Online Litigation of the People's Court "[t]he addressee accepts the completed electronic service by replying to receipt, participating in litigation, etc., and does not explicitly disagree with the electronic service." Here,

---

[3] *See also,* How to Understand the Rules of Electronic Service in Online Litigation, *Written by The Supreme People's Court Judge, P.R. China*. (Nastasi Aff., Ex. G).

many Defendants, either directly or through their authorized agents or representatives, including Acuteye-US, APZNOE-US, blue vivi, Citihomy, Ckypee, DAFA International, Dazzparty, Haocheng-Trade, HAPPY PARTY-001, Huibi-US, Joysail, Jyoker-US1, LADYBEETLE, LICHE Cupcake stand, NA-AMZ001, QT-US, SALIMHIB-US, SAM CLAYTONddg, Sensiamz Backdrop, shenzhenshixindajixieyouxiangongsi, SMASSY US, SMSCHHX, telike, tongmumy, wch- us, xuanningshangwu, YooFly and Zingon US consented to service by email by replying to Epstein Drangel's email containing the pleadings and TRO, and further did not explicitly disagree to electronic service. (Nastasi Aff., ¶ 36).   Moreover, Defaulting Defendants consented to electronic service by agreeing to certain terms and conditions necessary to create their User Accounts on Amazon.   Namely, based on a review of Amazon's Service Business Solutions Agreement, by creating their User Accounts and Merchant Storefronts on Amazon, each Defendant herein expressly agreed to receive communications by e-mail.[4]   Here, after Plaintiff served the pleadings and TRO on Defendants, Amazon additionally provided all Defendants with notice of the lawsuit and with Plaintiff's counsel's contact information. (Nastasi Aff., ¶ 37).

Moreover, U.S. Courts have also found that since China allows its own courts to "order service of Chinese process by email on defendants outside China, it cannot credibly object to U.S.

---

[4] Pursuant to paragraph 18 of Amazon's Services Business Solutions Agreement:

27. Miscellaneous

> Amazon will provide notice to you under this Agreement by posting changes to Seller Central or to the applicable Amazon Services site to which the changes relate (such as the Developer Site accessible through your account), by sending you an email notification, or by similar means. You must send all notices and other communications relating to Amazon to our Selling Partner Support team via Seller Central, email, the Contact Us form, or similar means. We may also communicate with you electronically and in other media, and you consent to such communications. You may change your e-mail addresses and certain other information in Seller Central, as applicable. You will ensure that all of your information is up to date and accurate at all times.

*Amazon Services Business Solutions Agreement,* AMAZON.COM, https://sellercentral.amazon.com/gp/help/external/1791?language=en_US (last visited Feb. 9, 2022).

courts ordering the same on defendants located in China". *See, e.g.*, *Hangzhou Chic Intelligent Tech.*, No. 20 C 4806, 2021 U.S. Dist. LEXIS 64064, at *11-*12 (holding "China has not 'objected' to email service, and the Court's order of email service pursuant to Rule 4(f)(3) was appropriate" as "Chinese law permits its courts to order service by email on a party outside of China, in part because email permits the person to be served to 'acknowledge' receipt…If China permits its courts to order service of Chinese process by email on defendants outside China, it cannot credibly object to U.S. courts ordering the same on defendants in China.") (internal citations omitted); *see also*, *Chanel, Inc. v. Handbagstore*, No. 20-CV-62121-RUIZ/STRAUSS, 2021 U.S. Dist. LEXIS 122842, at *25-30 (S.D. Fla. June 30, 2021).

Accordingly, because the most natural reading of Rule 4(f)(2)(A), on its face and in context, is that service may be affected by any means prescribed by the law of the recipient country, and because the law of China permits service via e-mail and other electronic means, Plaintiff submits that the alternative methods of service authorized by the TRO and PI Order, i.e. via registered electronic mail with confirmation of delivery by Rmail, and website publication, were appropriate under the Hague Convention and Fed. R. Civ. P. 4(f)(2)(A).

Alternatively, Fed. R. Civ. P. 4(f)(3) enables a court to grant an alternative method of service so long as it: "(1) is not prohibited by international agreement; and (2) comports with constitutional notions of due process." *SEC v. Anticevic*, No. 05 CV 6991 (KMW), 2009 U.S. Dist. LEXIS 11480, at *7 (S.D.N.Y. Feb. 8, 2009). Notably, "[s]ervice under subsection [4(f)] (3) is neither a last resort nor extraordinary relief. It is merely one means among several which enables service of process on an international defendant." *Sulzer Mixpac AG v. Medenstar Indus. Co.*, 312 F.R.D. 329, 330 (S.D.N.Y. 2015); *see also Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*, No. 10-BR-13164, 2020 Bankr. LEXIS 3489, at *11 (Bankr. S.D.N.Y.

2020) ("Courts have repeatedly recognized that there is no hierarchy among the subsections in Rule 4(f).") (quoting *Wash. State Inv. Bd. v. Odebrecht S.A.*, 17-CV-8118, 2018 U.S. Dist. LEXIS 163356, at *3 (S.D.N.Y. Sept. 21, 2018)); *Merrimack Mut. Ins. Co.*, 2020 U.S. Dist. LEXIS 182962, at *1 ("[T]here is no hierarchy among the subsections in Rule 4(f).") (alteration in original) (quoting *Advanced Aerofoil Techs., AG v. Todaro*, No. 11-CV-9505, 2012 U.S. Dist. LEXIS 12383, at *1 (S.D.N.Y. Jan. 31, 2012)).

As a preliminary matter, the alternative service authorized by the TRO and PI Order is not prohibited by any international agreement. Despite China's objection to service by postal channels under Article 10, this Court, along with many others, have held that such objection does not include service by email and further, that service by email is not prohibited by any international agreement. *Sulzer*, 312 F.R.D. at 332; *Anova Applied Elecs., Inc. v. Hong King Grp., Ltd.*, 334 F.R.D. 465, 471 (D. Mass. 2020); *The Neck Hammock, Inc v. Danezen.com*, 2020 U.S. Dist. LEXIS 202808, at *4 (D. Utah Oct. 29, 2020); *see also Zanghi v. Ritella*, 2020 U.S. Dist. LEXIS 20279, at *5 (S.D.N.Y. Feb. 5, 2020) (citing cases); *Jackson Lab'y v. Nanjing Univ.*, 2018 U.S. Dist. LEXIS 13630, at *4 (D. Me. Jan. 29, 2018) (citing cases); *Rubie's Costume Co., Inc. v. Yiwu Hua Hao Toys Co.*, 2019 U.S. Dist. LEXIS 204380, at *3 (W.D. Wash. Nov. 25, 2019); *Genus Lifesciences Inc. v. Tapaysa Eng'g Works Pvt. Ltd.*, 2020 U.S. Dist. LEXIS 251499, at *3 (E.D. Pa. Mar. 10, 2021).[5] In fact, as discussed *supra*, service by electronic means has been *specifically authorized*

---

[5] In *Luxottica Grp. S.p.A. v. P'ships, et al.*, 391 F. Supp. 3d 816 (N.D. Ill. 2019) the court disagreed with this Court's holding in *Sulzer*, finding that China's objection to service via postal channels is an objection to service by email, relying on *Water* Splash, 197 L. Ed. 2d 826. However, on a motion for reconsideration, the *Luxottica* court conceded that the Supreme Court language did not "conclusively settle the precise questions" because neither *Water Splash* nor the Supreme Court's *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694 (1988) decision involved Rule 4(f)(3) or e-mail service. *Luxottica Grp. S.p.A. v. P'ships, et al.*, 18 Civ. 2188, 2019 U.S. Dist. LEXIS 93466, at *3 (N.D. Ill. June 4, 2019); *see also*, *Oakley, Inc. v. P'ships & Unincorporated Ass'ns Identified in Schedule "A"*, No. 20-cv-05049, 2021 U.S. Dist. LEXIS 128234, at *11 (N.D. Ill. July 9, 2021) ("Service by email is not specifically provided for in the Convention, but neither is it forbidden."); *MacLean-Fogg Co. v. Ningbo Fastlink Equip. Co.*, No. 08 CV 2593, 2008 U.S. Dist. LEXIS 97241 at *2 (N.D. Ill. Dec. 1, 2008) ("The Hague Convention does not prohibit

by Article 87 of Civil Procedure Law of the People's Republic of China and the Online Litigation Rules of the People's Court, and has also been consented to by all Defendants through their agreements with Amazon.

As discussed below and in Plaintiff's Application, alternative service is further appropriate where, as is the case in the instant action, Plaintiff demonstrated exigent circumstances justifying the urgent injunctive relief sought by Plaintiff in its Application. Ultimately, alternative service was properly granted in this action as service by the Hague Convention would not be the means most reasonably calculated to timely apprise Defendants of the TRO and this lawsuit, since, as this Court has noted, "the length of time required for service under the Hague Convention, approximately six to eight months…may unnecessarily delay [a] case." *In re GLG Life Tech Corp. Sec. Litig.*, 287 F.R.D. 262, 266 (S.D.N.Y. 2012) (internal citations omitted). "Courts have frequently cited delays in service under the Hague Convention as supporting an order of alternative service under Rule 4(f)(3). *Id.* (citing *Brown v. China Integrated Energy, Inc.*, 285 F.R.D. 560 (C.D. Cal. Jul. 17, 2012) (ordering alternative service where service under the Hague Convention would take four to six months); *see also Tevra Brands LLC v. Bayer Healthcare LLC*, No. 19 Civ. 4312, 2020 U.S. Dist. LEXIS 109919, at *5 (N.D. Cal. June 23, 2020) ("delays to service via the Hague Convention may arise due to COVID-19 pandemic [thus] permitting renewal of alternative service motion."). The Advisory Committee Notes to the 1993 Amendments to Rule 4(f) state "that in cases of 'urgency,' Rule 4(f)(3) may allow the district court to order a 'special method of

---

service by e-mail or facsimile."); *Sulzer*, 312 F.R.D. at 331 (same); *Ouyeinc Ltd. v. Alucy*, No. 20 C 3490, 2021 U.S. Dist. LEXIS 118876, at *3 (N.D. Ill. June 25, 2021) (same); *Commodity Futures Trading Comm'n v. Caniff*, No. 19-cv-02935, 2020 U.S. Dist. LEXIS 33416 at *6 (N.D. Ill. Feb. 27, 2020) ("The Convention does not affirmatively authorize, nor does it prohibit, service by email"); *In re Bibox Grp. Holdings Sec. Litig.*, No. 20cv2807(DLC), 2020 U.S. Dist. LEXIS 142802, at *5 (S.D.N.Y. Aug. 10, 2020) ("Service by email or social media are not among those listed in Article 10. Courts have understood objections to the alternative channels of service in Article 10 to be limited to the methods specifically enumerated therein.")

service,' even if other methods of service remain incomplete or unattempted." *Rio Props. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002) (quoting Advisory Committee Notes to the 1993 Amendments to Rule 4(f)). In *Hangzhou Chic Intelligent Tech*, No. 20 C 4806, 2021 U.S. Dist. LEXIS 64064, at *5, the court noted "[t]ime is of the essence with an injunction in place" and thus ordered service by email to provide the defendants with notice as quickly as possible. The court further noted that "[t]he injunction should not linger while the parties and the Court wait for Hague Convention process when an instantaneous, reliable, and traceable means of providing notice is available in the form of email." *Id.* at *8-*9.  Similarly, in *Microsoft Corp. v. Goldah.Com Network Tech Co.*, the Court noted that the situation described in Microsoft's motion for expedited discovery, temporary restraining order, and authorization for electronic service of process was "urgent enough to warrant service under Rule 4(f)(3)." 17-cv-02896-LHK, 2017 U.S. Dist. LEXIS 168537, *11-*12 (N.D. Cal. Oct. 11, 2017). Namely because Microsoft, like Plaintiff herein, stated that it had reason to believe the defendants would "funnel proceeds of their fraud through PayPal to foreign bank accounts held in China…[and] as soon as Defendants learn about the existence of the lawsuit, they will repatriate all of their assets currently held in the United States to China to prevent them from being made available to satisfy an award for Microsoft in this case." *Id.*

Service on Defendants by electronic means is allowed for by PRC Article 87 and consented to by all Defendants, thus, service by electronic mail comports with due process as it is "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 309 (1950); *see also Zanghi*, 2020 U.S. Dist. LEXIS 20279 at *6 (finding that judicial approval of service via email is generally supported by facts indicating that the person to be served would likely receive the documents); *Pearson Educ. Inc. v. Doe 1*, No. 18-CV-7380,

2019 U.S. Dist. LEXIS 210349 at *3 (S.D.N.Y. Dec. 2, 2019) ("Email service has also repeatedly been found by courts to meet the requirements of due process." (citing *Elsevier*, 287 F. Supp. 3d at 377)). This Court recently held the bar is clearly met where, as here, the Defendants engaged in online business and regularly communicated with customers through email. *Mattel, Inc. v. Animefunstore, et al.*, 18 Civ. 8824 (LAP) (Dkt. 81) (S.D.N.Y. May 1, 2020); *see also Sulzer*, 312 F.R.D. at 332 (noting that service through email was appropriate where the "email address in question is listed prominently on [defendant's internet homepage…[,] [the defendant] presumably relies at least partially on contact through [its email] to conduct overseas business, and it is reasonable to expect [defendant] to learn of the suit against it through this email address."); *see also Philip Morris USA Inc. v. Veles Ltd.*, No. 06-CV-2988, 2007 U.S. Dist. LEXIS 19780 at *3 (S.D.N.Y. Mar. 12, 2007) (finding that service via email was proper where the plaintiff "showed that [the] defendants onduct[ed] business extensively, if not exclusively, through their [i]nternet websites and correspond[ed] regularly with customers via email"). Accordingly, Plaintiff submits that service by e-mail was the most effective means to ensure Defendants were reasonably apprised of this action, as it is more reliable than the unverified physical addresses, if any, posted on Defendants' Merchant Storefronts. Therefore, Plaintiff respectfully submits that service, by the alternative methods authorized by the TRO, was properly effected on Defendants in this action.

### 2. It is Appropriate to Enter Default Judgment Against Defendants Under Article 15 of the Hague Convention

Article 15 of the Hague Convention states the following, in relevant part:

> Where a writ of summons or an equivalent document had to be transmitted abroad for the purpose of service, under the provisions of the present Convention, and the defendant has not appeared, judgment shall not be given until it is established that —
>
> a) the document was served by a method prescribed by the internal law of the State addressed for the service of documents in domestic actions upon persons who are within its territory…

and that…the service or the delivery was effected in sufficient time to enable the defendant to defend.

…

Notwithstanding the provisions of the preceding paragraphs the judge may order, in case of urgency, any provisional or protective measures.

Plaintiff respectfully submits that the alternative service granted by the TRO and PI Order herein was appropriate pursuant to Article 15, such that this Court may enter default judgment against Defaulting Defendants herein as, for the reasons set forth immediately above, service by electronic mail is a method of service prescribed for by China and consented to by each Defaulting Defendant herein. Moreover, the electronic mail containing the Summons, Complaint, TRO and all papers filed in support of Plaintiff's Application was unquestionably timely delivered to all Defaulting Defendants as evidenced by the Rmail receipts. (Nastasi Aff. ¶ 35, Ex. F).

Even if the Court were to find that service by electronic mail was not a method of service prescribed for by the internal law of China, which is directly belied by the argument set forth in Paragraph IV(A)(1) *supra*, Plaintiff respectfully submits that this Court was authorized to grant Plaintiff's request for alternative service in Plaintiff's Application pursuant to Fed. R. Civ. P. 4(f)(3) as Plaintiff's request for the TRO and PI Order was urgent for the reasons demonstrated in Plaintiff's Application. Accordingly, the last sentence of Article 15 is applicable, allowing the Court to order "provisional or protective measures" in case of urgency. Here, even assuming all Defaulting Defendants displayed true and accurate addresses, which they did not, alternative service was particularly appropriate as Plaintiff demonstrated exigent circumstances justifying the urgent injunctive relief sought by Plaintiff making a quick and effective means of service necessary

14

to prevent further irreparable harm to Plaintiff.[6]  *See e.g., Strabala v. Zhang*, 318 F.R.D. 81, 114 (N.D. Ill. 2016) ("Court-directed service pursuant to Rule 4(f)(3) is appropriate when, for example, 'there is a need for speed that cannot be met by following the Hague Convention methods. . . .' ") (quoting 4B FED. PRAC. & PROC. CIV. § 1134 (4th ed.))).

Accordingly, Plaintiff respectfully submits that alternative service was necessary in this Action, and thus it is appropriate to enter default judgment against Defaulting Defendants pursuant to Article 15 of the Hague Convention.

**B.    DEFAULTING DEFENDANTS ACTED WILLFULLY**

Since Defaulting Defendants failed to appear in this action, no further analysis is required into willfulness because, and axiomatically, Defaulting Defendants' infringement is deemed willful "[b]y virtue of the default[.]" *Tiffany (NJ) Inc. v. Luban*, 282 F. Supp. 2d 123, 124 (S.D.N.Y. 2003).   Nevertheless, Plaintiff respectfully submits that Defaulting Defendants unequivocally engaged in willful counterfeiting for the reasons set forth below.

The standard for willfulness is whether the defendant had knowledge that his or her conduct represented infringement or recklessly disregarded the possibility. *Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp.*, 689 F. Supp. 2d 585, 599-600 (S.D.N.Y. 2010) (citing *Kepner-Tregoe, Inc. v. Vroom*, 186 F.3d 283, 288 (2d Cir. 1999); *see Koon Chun Hing Kee Soy &*

---

[6] The advisory committee notes to Rule 4 state:

> Paragraph (3) authorizes the court to approve other methods of service not prohibited by international agreements. The Hague Convention, for example, authorizes special forms of service in cases of urgency if convention methods will not permit service within the time required by the circumstances. Other circumstances that might justify the use of additional methods include the failure of the foreign country's Central Authority to effect service within the six-month period provided by the Convention . . . . In such cases, the court may direct a special method of service not explicitly authorized by international agreement if not prohibited by the agreement. Inasmuch as our Constitution requires that reasonable notice be given, an earnest effort should be made to devise a method of communication that is consistent with due process and minimizes offense to foreign law.

Fed. R. Civ. P. 4, Advisory Committee Notes, 1993 amendments.

*Sauce Factory, Ltd. v. Star Mark Mgmt.*, No. 04-cv-2293 (JFB), 2007 U.S. Dist. LEXIS 1404, 2007 WL 74304, at *11 (E.D.N.Y. Jan. 8, 2007) (applying the willfulness standard in *Kepner-Tregoe* to claims brought under the Lanham Act).  Such knowledge may be actual or constructive and may be inferred from defendant's conduct rather than proven directly. *See Ideavillage Prods. Corp. v. Aarhus*, No. 1:18-cv-02739 (JGK) (SDA), 2019 U.S. Dist. LEXIS 78914, at *13 (S.D.N.Y. May 7, 2019) (*citing N.A.S. Imp. Corp. v. Chenson Enters.*, 968 F.2d 250, 252 (2d Cir. 1992) (holding that for "the purpose of awarding enhanced statutory damages," the knowledge component of willfulness "need not be proven directly but may be inferred from the defendant's conduct.").  In the instant action, Defaulting Defendants have used identical copies of the Baby Shark Marks and/or Baby Shark Works in connection with Defendants' Merchant Storefronts and/or the marketing, promotion, and offering for sale of Defendants' Counterfeit Products; therefore, the deliberate nature of Defaulting Defendants' actions is unquestionable. (Yang Dec., ¶¶ 21-23); s*ee also Richemont Int'l S.A. v. Montesol OU*, 2014 U.S. Dist. LEXIS 104247 (S.D.N.Y. May 13, 2014) (finding that because the marks used by defendants were virtually identical, the conclusion that the defendants' actions were intentional was "inescapable", and that such a conclusion was further supported by the fact that the defendants attempted to sell their products on websites designed to mimic that of the plaintiff).  Thus, the uncontradicted evidence demonstrates that Defaulting Defendants unequivocally engaged in willful counterfeiting activities. *See* Complaint, Ex. D.

**C.**  **PLAINTIFF HAS ESTABLISHED DEFAULTING DEFENDANTS' LIABILITY**

Where, as here, a defendant defaults, all well-pleaded factual allegations of the complaint, except those relating to damages, are accepted as true and all reasonable inferences are drawn in favor of the plaintiff. *See, e.g., City of New York v. Mickalis*, 645 F.3d at 137  ("It is an 'ancient

common law axiom' that a defendant who defaults thereby admits all 'well pleaded' factual allegations contained in the complaint.") (quoting *Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004)).  That said, a court "must still satisfy itself that the plaintiff has established a sound legal basis upon which liability may be imposed." *Jemine v. Dennis*, 901 F. Supp. 2d 365, 373 (E.D.N.Y. 2012) (citing *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)); *accord Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) ("[A district court] is also required to determine whether [plaintiff's] allegations establish [defendant's] liability as a matter of law[.]").

### 1. Defaulting Defendants are Liable for Trademark Infringement and Counterfeiting

In order to establish a likelihood of success on trademark counterfeiting and infringement claims, a plaintiff must show: (1) that its marks are valid and entitled to protection, and (2) that defendants' use of Plaintiff's marks is likely to cause confusion.  *See Tiffany (NJ) Inc. v. eBay, Inc.*, 600 F.3d 93 (2d Cir. 2010).[7]

With respect to the first element, Plaintiff has pleaded and demonstrated through a declaration from Smart Study's General Counsel that Plaintiff is the owner of all rights, title and interest to the Baby Shark Marks that the Defendants infringed (Yang Dec., ¶¶ 10-12, Ex. B); *see Faram 1957 S.p.A. v. Faram Holding & Furniture, Inc.,* No. 16-CV-2430 (VSB), 2018 U.S. Dist. LEXIS 44594, *25 (S.D.N.Y. Mar. 19, 2018) (noting that a certificate of registration serves as prima facie evidence that a registered mark is protectible, and evidence that a mark has been deemed incontestable serves as "conclusive evidence of exclusive ownership.").

---

[7] Plaintiff only seeks damages against Defaulting Defendants for its First and Second Causes of Action, namely, Trademark Counterfeiting and Infringement.  Plaintiff does not seek monetary relief in connection with the remaining causes of action plead in the Complaint.

With respect to the second element, "the standard for consumer confusion is easily satisfied in the case of counterfeits because counterfeits, by their very nature, cause confusion." *Off-White LLC v. 5HK5584*, No. 19-cv-672 (RA) (JLC), 2020 U.S. Dist. LEXIS 58926, at *14 (S.D.N.Y. Apr. 3, 2020) (quoting *Coach, Inc. v. Horizon Trading USA Inc.*, 908 F. Supp. 2d 426, 433 (S.D.N.Y. 2012) (internal quotation marks omitted). Here, Defaulting Defendants have used the Baby Shark Marks and/or used spurious designations that are identical with, or substantially indistinguishable from, the Baby Shark Marks, on or in connection with Defendants' Merchant Storefronts and the advertisement, marketing, promotion, offering for sale and/or sale of Defendants' Counterfeit Products and therefore, there can be no question that Defendants' actions are likely to cause consumer confusion. *See Gucci Am., Inc. v. Tyrrell-Miller*, 678 F. Supp. 2d 117 (S.D.N.Y. 2008) (finding sufficient facts were pleaded to demonstrate a likelihood of confusion when the defendant was using the plaintiff's marks, in the same stylized fashion on or in connection with goods). Thus, it is abundantly clear that there is a sufficient legal basis for Defendants' liability for trademark infringement and counterfeiting.

## D.   PLAINTIFF IS ENTITLED TO A PERMANENT INJUNCTION

Plaintiff respectfully requests that the Court permanently enjoin Defaulting Defendants from any further counterfeiting and/or infringement of Plaintiff's Baby Shark Marks and Baby Shark Works for the reasons detailed below, coupled with the Court's earlier findings on the same issues in its entrance of the TRO and PI Order.

A district court has authority under the Lanham Act to grant injunctive relief to prevent further violations of Plaintiff's trademarks. 15 U.S.C. § 1116. Here, since Defaulting Defendants' defaults constitute admissions of liability and Plaintiff successfully established its claims for trademark infringement and counterfeiting, Plaintiff respectfully submits that a permanent

injection against Defaulting Defendants should be entered.[8] *See, e.g., Vt. Teddy Bear Co. v. 1-800 BEARGRAM Co.*, 373 F.3d 241, 246 (2d Cir. 2004) ("a default is an admission of all well-pleaded allegations").

Specifically, a permanent injunction may be granted where a plaintiff demonstrates that it has succeeded on the merits and: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). In intellectual property actions, permanent injunctions are normally granted when there is "a threat of continuing violations." *Steele v. Bell*, 11-cv-9343 (RA) (RLE), 2014 U.S. Dist. LEXIS 44976, at *22 (S.D.N.Y. Mar. 3, 2014). Here, as pleaded in the Complaint and supported by the uncontroverted evidence, Defaulting Defendants infringed Plaintiff's Baby Shark Marks and Baby Shark Works by, *inter alia*, willfully and knowingly advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling Counterfeit Products, thereby causing irreparable injury to Plaintiff. (Complaint, Ex. D). While Amazon's compliance with the TRO and PI Order – insofar as it has frozen the identified User Accounts and Merchant Storefronts owned by Defaulting Defendants – has prevented further sales of Counterfeit Products by Defaulting Defendants on Amazon during the pendency of this action, there remains a serious possibility that Defaulting Defendants will continue to infringe Plaintiff's intellectual property rights should such restraints be lifted. *Allee v. Medrano*, 416 U.S. 802, 810-11 (1974) ("It is settled that an action for an injunction does not

---

[8] As detailed at length in the Application and briefly above, Plaintiff has demonstrated success on its uncontroverted claims for trademark counterfeiting and infringement against Defaulting Defendants. *See* Application; *see also* TRO and PI Order.

become moot merely because the conduct complained of has terminated, if there is a possibility of recurrence, since otherwise the defendants 'would be free to return to '[their] old ways.''") (citing *Gray v. Sanders*, 372 U.S. 368, 376 (1963)) (internal quotation marks omitted).

On December 27, 2020, the Trademark Modernization Act of 2020 (codified as part of the Consolidated Appropriations Act, 2021, Pub. L. 116-260) was signed into law, which amended the text of 15 U.S.C. § 1116(a) to codify a rebuttable presumption of irreparable harm.[9]  Plaintiff respectfully submits that it is entitled to the presumption of irreparable harm.  Nonetheless, regardless, courts have issued permanent injunctions when intellectual property rights holders have shown a potential loss of goodwill and control over their trademark(s).  *See, e.g., United States Polo Ass'n v. PRL USA Holdings, Inc.*, 800 F. Supp. 2d 515 (S.D.N.Y. 2011) (granting request for permanent injunction, finding irreparable harm where likelihood of confusion as to source and likelihood of injury to reputation and goodwill were shown); *see also Really Good Stuff, LLC v. BAP Inv'rs, L.C.,* 813 Fed. App'x 39, 44 (2d Cir. 2020) ("[t]he loss of reputation and goodwill constitutes irreparable harm").  Here, not only has Plaintiff suffered lost profits as a result of Defendants' competing, substandard Counterfeit Products, but Defendants' actions have caused

---

[9] The Act reads, in relevant part, as follows:

> The several courts vested with jurisdiction of civil actions arising under this chapter shall have power to grant injunctions…to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under subsection (a), (c), or (d) of section 1125 of this title. ***A plaintiff seeking any such injunction shall be entitled to a rebuttable presumption of irreparable harm upon a finding of a violation identified in this subsection in the case of a motion for a permanent injunction or upon a finding of likelihood of success on the merits for a violation identified in this subsection in the case of a motion for a preliminary injunction or temporary restraining order***.

See *Vineyard House, LLC v. Constellation Brands United States Operations, Inc.*, No. 4:19-cv-01424-YGR, 2021 U.S. Dist. LEXIS 15702, at *36-37 n.16 (N.D. Cal. Jan. 26, 2021).

unquantifiable irreparable harm to the goodwill and reputation associated with Plaintiff, its Baby Shark Marks, Baby Shark Works and Baby Shark Products. (Yang Dec., ¶¶ 27-28).  Further, because of Defaulting Defendants' failures to appear in this action, Plaintiff was unable to obtain complete and accurate information regarding the actual profits derived from their sales of Counterfeit Products, making Plaintiff's actual damages effectively impossible to measure. (Nastasi Aff., ¶¶ 21-23; 31-33).  *See, e.g., Mint, Inc. v. Iddi Amad*, 2011 U.S. Dist. LEXIS 49813 at *10 (S.D.N.Y. May 9, 2011) (finding irreparable harm where "determining the amount of damages from [defendant's] infringing conduct [is] especially difficult, if not impossible").

Given such injury to Plaintiff's goodwill and reputation, as well as the absence in the record of any assurance against Defaulting Defendants' continued violation of the Baby Shark Marks and Baby Shark Works, monetary damages alone are inadequate to compensate Plaintiff for the damage they have incurred and will continue to incur if an injunction is not entered.  A showing that there is no adequate remedy at law "is satisfied where the record contains no assurance against defendant's continued violation" of a plaintiff's rights. *Montblanc Simplo GMBH v. Colibri Corp.*, 692 F. Supp. 2d 245, 259 (E.D.N.Y. 2010).  When a default judgment is entered, "[a] court may infer from a defendant's default that it is willing to or may continue its infringement." *Pearson Educ., Inc. v. Vegara,* No. 09-cv-6832 (JGK)(KNF), 2010 U.S. Dist. LEXIS 101597, at *12 (S.D.N.Y. Sept. 27, 2010) (internal citations omitted), adopted by, Order at Dkt. 21 (S.D.N.Y. May 11, 2011).  As discussed above, Defaulting Defendants' failure to participate in this action emphasizes that they have no intention of ceasing their wrongful conduct, namely, their continued infringement and counterfeiting of the Baby Shark Marks and Baby Shark Works.  Since Plaintiff demonstrated a credible threat of future infringement and cannot be compensated properly with monetary relief alone, it respectfully submits that the requested injunction is necessary to fully

redress the irreparable injury that they have suffered due to Defaulting Defendants' illegal and infringing actions. *Hounddog Prods., L.L.C. v. Empire Film Group, Inc.*, 826 F. Supp. 2d 619, 633 (S.D.N.Y. 2011) ("Given the significant threat of future infringement, Plaintiff cannot be compensated with monetary relief alone.").

Further, the balance of hardships unquestionably and overwhelmingly favors Plaintiff since it has suffered and will continue to suffer irreparable harm to its business, profits, goodwill and reputation as a result of Defendants' willful and knowing use of the Baby Shark Marks and Baby Shark Works, or marks and/or artwork that are confusingly and/or substantially similar thereto, and their sales of Counterfeit Products. (Yang Dec., ¶¶ 27-28). Additionally, the public interest is clearly served by a permanent injunction, as "the public has an interest in not being deceived – in being assured that the mark it associates with a product is not attached to goods of unknown origin and quality." *N.Y.C. Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 344 (S.D.N.Y. 2010) (granting motion to enjoin defendant from further trademark violations); *see also Montblanc*, 692 F. Supp. 2d at 259. Here, the public has an interest in being able to rely on the high quality of the Baby Shark Products. (Yang Dec., ¶¶ 25).

## E. PLAINTIFF IS ENTITLED TO HEIGHTENED STATUTORY DAMAGES

The Lanham Act allows a plaintiff to elect either statutory damages or actual damages for willful infringement. 15 U.S.C. § 1117(c); 17 U.S.C. § 504(c). The Lanham Act provides that, at any time before final judgment is rendered, a trademark owner may elect to recover an award of statutory damages, rather than actual damages, for the use of a counterfeit mark in connection with goods or services in the amount of: (1) "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just" or (2) if the use of the counterfeit mark is found to be willful, up to "$2,000,000 per counterfeit

mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c).[10]   Here, without waiving its claims under the Copyright Act, Plaintiff respectfully elects to seek statutory damages solely under the Lanham Act.

Congress enacted the statutory damages remedy in trademark counterfeiting cases because evidence of a counterfeiter's profits is almost impossible to ascertain since "records are frequently nonexistent, inadequate, or deceptively kept." *Gucci Am., Inc.*, 315 F Supp. 2d at 520.  *See also Coach, Inc. v. Weng*, 2014 U.S. Dist. LEXIS 79005, at *41 (S.D.N.Y. June 7, 2014) ("Section 1117(c) of the Lanham Act was created to give victims of trademark infringement and unfair competition an avenue for recovering damages when a defendant hides, alters, or destroys business records.").  Given Defaulting Defendants' propensities to conceal their identities, disappear and destroy or hide any evidence or records of their counterfeiting and infringing actions, and that to date, no Defaulting Defendants have appeared, answered or otherwise responded to the Complaint, Plaintiff cannot ascertain Defaulting Defendants' actual profits. (Futterman Dec., ¶¶ 11-14, 23-24; Nastasi Aff., ¶¶ 21-23, 31).  Simply put, this case presents the exact circumstances that Congress envisioned in its enactment of Section 1117(c).

In making a determination of appropriate statutory damages awards, courts consider the following factors under Section 504(c) of the Copyright Act, which have also been used as guidance for determining an appropriate statutory damages award under Section 1117(c) of the Lanham Act: "(1) the expenses saved and the profits reaped; (2) the revenues lost by the plaintiff; (3) the value of the copyright [or trademark]; (4) the deterrent effect on others besides the

---

[10] Whereas, Section 504(c) of the Copyright Act allows a copyright owner to elect statutory damages in the amount of "not less than $750 or more than $30,000 as the court considers just" with respect to any one work.  Alternatively, where a court finds willful infringement, "the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000.00."  *See* 17 U.S.C. § 504(c)(l)-(2).

defendant; (5) whether the defendant's conduct was innocent or willful; (6) whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the defendant." *Gucci Am., Inc.*, 315 F. Supp. 2d at 520 (quoting *Fitzgerald Publ'g Co., Inc. v. Baylor Publ'g Co.*, 807 F.2d 1110, 1117 (2d Cir. 1986)) (internal quotation marks omitted); *Louis Vuitton Malletier v. Carducci Leather Fashions, Inc*., 648 F. Supp. 2d 501, 504 (S.D.N.Y. 2009) ("In the absence of any guidelines for determining the appropriate award in a case involving willful trademark violations, courts often have looked for guidance to the better developed case law under the Copyright Act, 17 U.S.C. § 504(c), which permits an award of statutory damages for willful copyright infringement.").

With respect to the first, second and sixth factors, Defaulting Defendants' propensities to secrete evidence pertaining to sales and profits – along with their failure to appear, answer or otherwise respond to the Complaint or comply with the expedited discovery ordered in the TRO and PI Order – have made it impossible to determine Defaulting Defendants' profits, quantify any expenses that Defaulting Defendants may have saved by infringing Plaintiff's Baby Shark Marks and Baby Shark Works or assess any revenues lost by Plaintiff as a result of Defaulting Defendants' infringing and counterfeiting activities. (Futterman Dec., ¶¶ 10-12, 17; Nastasi Aff., ¶¶ 21-23; 26-31). Thus, these three factors support a higher statutory damage award for Plaintiff. *See AW Licensing, LLC v. Bao*, 15-CV-1373-KBF, 2016 U.S. Dist. LEXIS 101150, at *7 (S.D.N.Y. Aug. 2, 2016) ("[C]ourts have supported an inference of a broad scope of operations in cases dealing specifically with websites that ship and sell to a wide geographic range," like Defendants' User Accounts and Merchant Storefronts in this Action).

The third factor – the value of Plaintiff's Baby Shark Marks and Baby Shark Works – also weighs in favor of increased statutory damages awards for Plaintiff against Defaulting Defendants.

24

Here, Plaintiff established that the Baby Shark Products achieved worldwide recognition and success as a result of Plaintiff's efforts in building up and developing consumer recognition, awareness and goodwill in its Baby Shark Products, Baby Shark Marks and Baby Shark Works. (Yang Dec., ¶¶ 11-14).  By virtue of the foregoing, Plaintiff amassed enormous value in the Baby Shark Marks and Baby Shark Works, and the Baby Shark Marks and Baby Shark Works identify Plaintiff as the exclusive source of the Baby Shark Products to which the Baby Shark Marks and Baby Shark Works are applied. Therefore, the remaining factors also support significant statutory damages awards against Defaulting Defendants.  Particularly where, like here, Defaulting Defendants acted willfully, "a statutory award should incorporate not only a compensatory, but also a punitive component to discourage further wrongdoing by the defendants and others." *Louis Vuitton Malletier*, 648 F. Supp. 2d at 504.

In light of Defaulting Defendants' knowing and intentional offering for sale and/or sale of Counterfeit Products, Plaintiff seeks statutory damages awards against each and every Defaulting Defendant.   Plaintiff seeks an award of $50,000.00 in statutory damages against each and every Defaulting Defendant (a total of Fifty-Three (53) Defaulting Defendants) pursuant to 15 U.S.C. § 1117(c).   Since Defaulting Defendants have defaulted, and therefore have not provided any evidence of their purchases or sales of Counterfeit Products, the amount of Defaulting Defendants' profits is unknown. (Nastasi Aff., ¶¶ 22-31).  Therefore, Plaintiff is deprived of the ability to prove a specific amount of actual damages and instead has been left with no choice but to seek an award of statutory damages.  Plaintiff's respectful requests for statutory damages are based upon: 1) the Amazon Discovery, which shows the number of sales of Counterfeit Products made by each Defaulting Defendant on Amazon, and 2) an analysis of each Defaulting Defendants' wrongful use of the Baby Shark Marks and Baby Shark Works, as encapsulated in Exhibit D to the

Complaint. (Nastasi Aff., ¶¶ 23-33, Ex. E).[11]  Given that the Lanham Act provides for statutory damages of up to "$2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just" 15 U.S.C. § 1117(c), an award of $50,000.00 for each Defaulting Defendants' willful violations of the Lanham Act is appropriate here.

Generally, "[t]he lack of information about any of the defendants' sales and profits, and the suspect nature of any information that was provided, make statutory damages particularly appropriate for this case." *Nike, Inc. v. Top Brand Co*., 00 Civ. 8179 (KMW) (RLE), 2006 U.S. Dist. LEXIS 76543, at *6 (S.D.N.Y. Feb. 27, 2006).  Since "the amount of defendants' likely profits from their infringement, the possibility of deterrence, and the need for redress of wrongful conduct are appropriate factors to consider," Plaintiff respectfully submits that Defaulting Defendants' willful violations of the Lanham Act make its requests for damages appropriate. *Nike, Inc*., 2006 U.S. Dist. LEXIS 76543 at *6-7.  "Moreover, this Court has 'wide discretion' in 'setting the amount of statutory damages.'" *Ontel Prods. Corp. v. Airbrushpainting Makeup Store a/k/a Airbrushespainting et al*., 17-cv-871 (KBF), 2017 Dist. LEXIS 221489, at *3 (S.D.N.Y. June 29, 2017) citing *Fitzgerald Publ'g Co., Inc.*, 807 F.2d at 1116 (internal quotation marks omitted).

In this district, even where there was no concrete information about the defendants' actual sales figures and profits, Courts have not hesitated to award higher statutory damages in favor of plaintiffs.  *See, e.g., Pitbull Prods., Inc. v. Universal Netmedia, Inc.,* No. 07 Civ. 1784 (RMR) (GWG), 2007 U.S. Dist. LEXIS 82201, at *10–*11(S.D.N.Y. Nov. 7, 2007) (awarding plaintiff $250,000.00 per mark for two marks where defendant's conduct was willful and defendant's default "left the Court with no information as to any of the factors relating to the defendants'

---

[11] Plaintiff respectfully submits that Fed. R. Evid. 1006 authorizes the use of a summary sheet such as Exhibit E to the Nastasi Aff. to establish damages in civil actions such as the instant Action.  (*See also* Futterman Dec., Ex. A; Complaint, Ex. D).

circumstances," and noting that "Courts have awarded similar damages in other cases in which there was little information as to the defendants' infringement"); *Rodgers v. Anderson*, No. 04 Civ. 1149 (RJH) (AJP), 2005 U.S. Dist. LEXIS 7054, at *8 (S.D.N.Y. Apr. 26, 2005) (awarding $250,000.00 and noting that the amount "is consistent with (indeed, lower than) awards in similar cases," and citing cases); *see also All-Star Mktg. Grp., LLC v. Media Brands Co.*, 775 F. Supp. 2d 613, 624-25 (S.D.N.Y. 2011) (collecting cases awarding between $25,000.00 and $250,000.00 per mark). Awards of $1,000,000.00 and higher have been granted to plaintiffs in similar matters before this Court. *See, e.g., Louis Vuitton Malletier & Oakley, Inc. v. Veit*, 211 F. Supp. 2d 567, 584 (S.D.N.Y. 2002) (awarding $1,000,000 in statutory damages for defendant's infringement of six Louis Vuitton marks, where the record contained no evidence of defendants' sales, nor the number of hits the website received); *Rolex Watch U.S.A., Inc. v. Brown*, No. 01 Civ. 9155 (JGK) (AJP), 2002 U.S. Dist. LEXIS 10054, at *8-9 (S.D.N.Y. June 5, 2002) (where the Defendant sold 10,000 counterfeit watches, the Court found $1,000,000 in statutory damages to be appropriate and sufficient).[12]  Further, Plaintiff respectfully submits that the statutory damages requested are the minimum recoverable damages in this case.[13]

---

[12] *See also, e.g., Mattel, Inc. v. 1994_honeymoon, et al.*, No. 18-cv-10427-KPF, Dkt. 59 (S.D.N.Y. Mar. 27, 2019); *Mattel, Inc. v. 276470, et al.*, No. 18-cv-10440-KPF, Dkt. 62 (S.D.N.Y. Mar. 27, 2019); *Off-White LLC v. A445995685, et al.*, No. 18-cv-2099-LGS-KNF, Dkt. 129 (S.D.N.Y. Nov. 16, 2018).

[13] *See, e.g., Nike, Inc. v. Wu,* 349 F. Supp. 3d 310 (S.D.N.Y. 2018); *Tiffany (NJ) LLC v. Forbse*, No. 11-cv-4976 (NRB), 2015 US Dist. LEXIS 129647, at *10-11 (S.D.N.Y. Sep. 22, 2015); *Gucci Am., Inc. v. Curveal Fashion*, No. 09 Civ. 8458 (RJS), 2010 U.S. Dist. LEXIS 5831, at *15 (S.D.N.Y. Jan. 20, 2010); *see also Spin Master Ltd. v. Alan Yuan's Store*, 325 F. Supp. 3d 413, 427-428  (S.D.N.Y. 2018); *Mattel, Inc. v. 1994_honeymoon, et al.*, No. 18-cv-10427-KPF, Dkt. 59 (S.D.N.Y. Mar. 27, 2019); *Mattel, Inc. v. Aaron's Fashion Store, et al.*, No. 18-cv-10437-KPF, Dkt. 79 (S.D.N.Y. Mar. 27, 2019); *Mattel, Inc. v. 276470, et al.*, No. 18-cv-10440-KPF, Dkt. 62 (S.D.N.Y. Mar. 27, 2019); *Tapestry, Inc., et al. v. baoqingtianff, et al.*, No. 18-cv-7650-PAE, Dkt. 34 (S.D.N.Y. Jan. 8, 2019); *Mattel, Inc. v. 86755, et al.*, No. 18-cv-8825-JSR, Dkt. 47 (S.D.N.Y. Dec. 17, 2018); *Ideavillage Prods. Corp. v. 711 Market, et al.*, No. 18-cv-7832-JMF, Dkt. 61 (S.D.N.Y. Dec. 12, 2018); *Wow Virtual Reality, Inc. v. BIENBEST, et al.*, No. 18-cv-3305-VEC, Dkts. 210-289, 302 (S.D.N.Y. Dec. 5, 2018); *Moose Toys Pty Ltd., et al. v. 963, et al.*, No. 18-cv-2187-VEC, Dkts. 160-251, 257 (S.D.N.Y. Nov. 30, 2018); *Off-White LLC v. A445995685, et al.*, No. 18-cv-2099-LGS-KNF, Dkt. 129 (S.D.N.Y. Nov. 16, 2018); *Ideavillage Prods. Corp. v. 29shyans2012, et al.*, 18-cv-6266 (AT), Dkt. No. 49 (S.D.N.Y. Nov. 6, 2018); *WowWee Group Limited, et al. v. A249345157, et al.*, No. 17-cv-9358 (VEC), Dkts. 46-179 (S.D.N.Y. July 31, 2018); *Ideavillage Prods. Corp. v. Bling Boutique Store, et al.*, No. 16-cv-9039 (KMW),

27

## F.  AN INQUEST INTO AN AWARD OF DAMAGES IS UNNECESSARY

Plaintiff respectfully submits that its request for an award of statutory damages does not require the Court to conduct an evidentiary hearing.  Courts have awarded damages post-default without an evidentiary hearing based upon affidavits submitted by the plaintiffs.[14]

## G.  DEFAULTING DEFENDANTS' INDIVIDUAL LIABILITIES

### 1.  Defaulting Defendant Acuteye-US

As plead in the Complaint and supported by the uncontroverted evidence annexed to the Complaint as Exhibit D, Defaulting Defendant Acuteye-US had, at minimum, one (1) infringing use of Plaintiff's Baby Shark Marks and one (1) infringing use of the Baby Shark Works and willfully and knowingly advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold Counterfeit Products, that are confusingly similar to one of the Baby Shark Products, through its Merchant Storefront, which is likely to cause confusion.  (Complaint, Ex. D, p. 3). According to the Amazon Discovery, Acuteye-US sold one thousand one hundred ninety (1,190)

---

Dkt. 92 (S.D.N.Y. July 24, 2018); *Allstar Marketing Group, LLC v. _GB Housewear Store, et al.,* No. 17-cv-7596 (SHS), Dkt. 92 (S.D.N.Y. July 9, 2018); *Rovio Entertainment Ltd. and Rovio Animation Oy v. Best Baby and Kid Store, et al.,* No. 17-cv-4884 (KPF), Dkt. 38 (S.D.N.Y. June 28, 2018); *JLM Couture, Inc. v. Aimibridal, et al.,* No. 18-cv-1565 (JMF), Dkt. 49 (S.D.N.Y. June 7, 2018); *Belstaff Grp. SA v. Doe,* No. 15-cv-2242 (PKC) (MHD), 2015 U.S. Dist. LEXIS 178124, at *10 (S.D.N.Y. June 18, 2015) and *Tory Burch LLC v. Yong Sheng Int'l Trade Co.*, No. 10 Civ. 9336 (DAB), 2011 U.S. Dist. LEXIS 158882, at *8 (S.D.N.Y. May 13, 2011).

[14] *See, e.g., Ideavillage Products Corp. v. 666668, et al.*, No. 18-cv-6850-CM, Dkt. #65 (S.D.N.Y. Jan. 9, 2020); *Ideavillage Products Corp. v. 1yuyan1, et al.*, No. 18-cv-10000-NRB, Dkt. #72 (S.D.N.Y. Dec. 9, 2019); *WOW Virtual Reality, Inc. v. mineral_sg, et al.,* No. 19-cv-5478-CM, Dkt. #61 (S.D.N.Y. Oct. 30, 2019); *WOW Virtual Reality, Inc. v. 1737515714, et al.,* No. 19-cv-5476-CM, Dkt. #53 (S.D.N.Y. Oct. 30, 2019); *Golden Goose Deluxe Brand d/b/a Golden Goose SpA v. Aierbushe, et al.,* No. 19-cv-2518-VEC, Dkts. 38-114 (S.D.N.Y. Oct. 17, 2019); *Spin Master Ltd. and Spin Master, Inc. v. 21CCN, et al.,* No. 18-cv-11086-RA, Dkt. #67 (S.D.N.Y. Sept. 6, 2019); Intenze Products, Inc. v. 1586, et al., Case No. 18-cv-4611-NRB, Dkt. #102 (S.D.N.Y. Aug. 22, 2019); *Moose Toys Pty LTD, et al., v. 5.29864, et al.*, No. 18-cv-8479-GBD, Dkt. #75 (S.D.N.Y. Aug. 15, 2019); *Allstar Marketing Group, LLC v. 24x7, et al.*, No. 18-cv-9043-JSR, Dkt. #59 (S.D.N.Y. Aug. 1, 2019); *William Mark Corporation v. 1104520362, et al.*, No. 18-cv-6715-PAC, Dkt. #64 (S.D.N.Y. Jul. 27, 2019); WOW Virtual Reality, Inc. v. 740452063 et al., Case No. 18-cv-3618-JFK, Dkt. #90 (S.D.N.Y. May 23, 2019); *Off-White LLC v. amazon001, et al.*, No. 19-cv-2067-JMF, Dkt. #34 (S.D.N.Y. May 17, 2019); Ideavillage Products Corp. v. ABC789456, et al., Case No. 18-cv-2962-NRB, Dkt. #53 (S.D.N.Y. May 1, 2019); *Mattel, Inc. v. 276470, et al.*, No. 18-cv-10440-KPF, Dkt. #62 (S.D.N.Y. Mar. 27, 2019); *Mattel, Inc. v. Aaron's Fashion Store, et al.*, No. 18-cv-10437-KPF, Dkt. #62 (S.D.N.Y. Mar. 27, 2019); *Mattel, Inc. v. 1994_honeymoon, et al.*, No. 18-cv-10427-KPF, Dkt. #59(S.D.N.Y. Mar. 27, 2019); Allstar Marketing Group, LLC v. 158, et al. Case No 18-cv-4101-GHW, Dkt. #64 (S.D.N.Y. Mar. 12, 2019).

Counterfeit Products on Amazon, however, as Plaintiff does not have complete information regarding Acuteye-US's potential sales on other platforms, profits or costs, Plaintiff elects statutory damages and respectfully request damages in the amount of $50,000.00, which is within the range of awards granted by courts in this district in similar circumstances.

### 2. Defaulting Defendant APZNOE-US

As plead in the Complaint and supported by the uncontroverted evidence annexed to the Complaint as Exhibit D, Defaulting Defendant APZNOE-US had, at minimum, one (1) infringing use of Plaintiff's Baby Shark Marks and two (2) infringing uses of the Baby Shark Works and willfully and knowingly advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold Counterfeit Products, that are confusingly similar to one of the Baby Shark Products, through its Merchant Storefront, which is likely to cause confusion.  (Complaint, Ex. D, p. 10). According to the Amazon Discovery, APZNOE-US sold four thousand three hundred forty-three (4,343) Counterfeit Products on Amazon, however, as Plaintiff does not have complete information regarding APZNOE-US's potential sales on other platforms, profits or costs, Plaintiff elects statutory damages and respectfully request damages in the amount of $50,000.00, which is within the range of awards granted by courts in this district in similar circumstances.

### 3. Defaulting Defendant beijingkangxintangshangmaoyouxiangongsi

As plead in the Complaint and supported by the uncontroverted evidence annexed to the Complaint as Exhibit D, Defaulting Defendant beijingkangxintangshangmaoyouxiangongsi had, at minimum, one (1) infringing use of Plaintiff's Baby Shark Marks and two (2) infringing uses of the Baby Shark Works and willfully and knowingly advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold Counterfeit Products, that are confusingly similar to one of the Baby Shark Products, through its Merchant Storefront, which is likely to cause confusion. (Complaint, Ex. D, p. 17-18).      According     to     the     Amazon     Discovery,

29

beijingkangxintangshangmaoyouxiangongsi sold fifty-nine (59) Counterfeit Products on Amazon, however, as Plaintiff does not have complete information regarding beijingkangxintangshangmaoyouxiangongsi's potential sales on other platforms, profits or costs, Plaintiff elects statutory damages and respectfully request damages in the amount of $50,000.00, which is within the range of awards granted by courts in this district in similar circumstances.

### 4. Defaulting Defendant blue vivi

As plead in the Complaint and supported by the uncontroverted evidence annexed to the Complaint as Exhibit D, Defaulting Defendant blue vivi had, at minimum, four (4) infringing uses of Plaintiff's Baby Shark Marks and one (4) infringing uses of the Baby Shark Works and willfully and knowingly advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold Counterfeit Products, that are confusingly similar to one of the Baby Shark Products, through its Merchant Storefront, which is likely to cause confusion. (Complaint, Ex. D, p. 25-26). According to the Amazon Discovery, blue vivi sold seven hundred seventy (770) Counterfeit Products on Amazon, however, as Plaintiff does not have complete information regarding blue vivi's potential sales on other platforms, profits or costs, Plaintiff elects statutory damages and respectfully request damages in the amount of $50,000.00, which is within the range of awards granted by courts in this district in similar circumstances.

### 5. Defaulting Defendant Bonuswen

As plead in the Complaint and supported by the uncontroverted evidence annexed to the Complaint as Exhibit D, Defaulting Defendant Bonuswen had, at minimum, eleven (11) infringing uses of Plaintiff's Baby Shark Marks and two (2) infringing uses of the Baby Shark Works and willfully and knowingly advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold Counterfeit Products, that are confusingly similar to one of the Baby Shark Products, through its Merchant Storefront, which is likely to cause confusion. (Complaint, Ex. D, p. 33).

According to the Amazon Discovery, Bonuswen sold two hundred nine (209) Counterfeit Products on Amazon, however, as Plaintiff does not have complete information regarding Bonuswen's potential sales on other platforms, profits or costs, Plaintiff elects statutory damages and respectfully request damages in the amount of $50,000.00, which is within the range of awards granted by courts in this district in similar circumstances.

### 6. Defaulting Defendant changgeshangmaoyouxiangongsi

As plead in the Complaint and supported by the uncontroverted evidence annexed to the Complaint as Exhibit D, Defaulting Defendant changgeshangmaoyouxiangongsi had, at minimum, seven (7) infringing uses of Plaintiff's Baby Shark Marks and two (2) infringing uses of the Baby Shark Works and willfully and knowingly advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold Counterfeit Products, that are confusingly similar to one of the Baby Shark Products, through its Merchant Storefront, which is likely to cause confusion. (Complaint, Ex. D, p. 40). According to the Amazon Discovery, changgeshangmaoyouxiangongsi sold one thousand three hundred twenty-Five (1,325) Counterfeit Products on Amazon, however, as Plaintiff does not have complete information regarding changgeshangmaoyouxiangongsi's potential sales on other platforms, profits or costs, Plaintiff elects statutory damages and respectfully request damages in the amount of $50,000.00, which is within the range of awards granted by courts in this district in similar circumstances.

### 7. Defaulting Defendant Citihomy

As plead in the Complaint and supported by the uncontroverted evidence annexed to the Complaint as Exhibit D, Defaulting Defendant Citihomy had, at minimum, three (3) infringing uses of Plaintiff's Baby Shark Marks and two (2) infringing uses of the Baby Shark Works and willfully and knowingly advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold Counterfeit Products, that are confusingly similar to one of the Baby Shark Products,

through its Merchant Storefront, which is likely to cause confusion. (Complaint, Ex. D, p. 47). According to the Amazon Discovery, Citihomy sold seven hundred ninety-eight (798) Counterfeit Products on Amazon, however, as Plaintiff does not have complete information regarding Citihomy's potential sales on other platforms, profits or costs, Plaintiff elects statutory damages and respectfully request damages in the amount of $50,000.00, which is within the range of awards granted by courts in this district in similar circumstances.

### 8.   Defaulting Defendant Ckypee

As plead in the Complaint and supported by the uncontroverted evidence annexed to the Complaint as Exhibit D, Defaulting Defendant Ckypee had, at minimum, one (1) infringing use of Plaintiff's Baby Shark Marks and two (2) infringing uses of the Baby Shark Works and willfully and knowingly advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold Counterfeit Products, that are confusingly similar to one of the Baby Shark Products, through its Merchant Storefront, which is likely to cause confusion. (Complaint, Ex. D, p. 54). According to the Amazon Discovery, Ckypee sold one hundred thirty-six (136) Counterfeit Products on Amazon, however, as Plaintiff does not have complete information regarding Ckypee's potential sales on other platforms, profits or costs, Plaintiff elects statutory damages and respectfully request damages in the amount of $50,000.00, which is within the range of awards granted by courts in this district in similar circumstances.

### 9.   Defaulting Defendant DAFA International

As plead in the Complaint and supported by the uncontroverted evidence annexed to the Complaint as Exhibit D, Defaulting Defendant DAFA International had, at minimum, one (1) infringing use of Plaintiff's Baby Shark Marks and two (2) infringing uses of the Baby Shark Works and willfully and knowingly advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold Counterfeit Products, that are confusingly similar to one of the Baby

32

Shark Products, through its Merchant Storefront, which is likely to cause confusion.  (Complaint, Ex. D, p. 63).  According to the Amazon Discovery, DAFA International sold one hundred two (102) Counterfeit Products on Amazon, however, as Plaintiff does not have complete information regarding DAFA International's potential sales on other platforms, profits or costs, Plaintiff elects statutory damages and respectfully request damages in the amount of $50,000.00, which is within the range of awards granted by courts in this district in similar circumstances.

### 10. Defaulting Defendant Dazzparty

As plead in the Complaint and supported by the uncontroverted evidence annexed to the Complaint as Exhibit D, Defaulting Defendant Dazzparty had, at minimum, two (2) infringing uses of Plaintiff's Baby Shark Marks and two (2) infringing uses of the Baby Shark Works and willfully and knowingly advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold Counterfeit Products, that are confusingly similar to one of the Baby Shark Products, through its Merchant Storefront, which is likely to cause confusion.  (Complaint, Ex. D, p. 71). According to the Amazon Discovery, Dazzparty sold one hundred sixty (160) Counterfeit Products on Amazon, however, as Plaintiff does not have complete information regarding Dazzparty's potential sales on other platforms, profits or costs, Plaintiff elects statutory damages and respectfully request damages in the amount of $50,000.00, which is within the range of awards granted by courts in this district in similar circumstances.

### 11. Defaulting Defendant FAming

As plead in the Complaint and supported by the uncontroverted evidence annexed to the Complaint as Exhibit D, Defaulting Defendant FAming had, at minimum, eight (8) infringing uses of Plaintiff's Baby Shark Marks and two (2) infringing uses of the Baby Shark Works and willfully and knowingly advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold Counterfeit Products, that are confusingly similar to one of the Baby Shark Products, through its

Merchant Storefront, which is likely to cause confusion.  (Complaint, Ex. D, p. 78-79).  According to the Amazon Discovery, FAming sold one (1) Counterfeit Product on Amazon, however, as Plaintiff does not have complete information regarding FAming's potential sales on other platforms, profits or costs, Plaintiff elects statutory damages and respectfully request damages in the amount of $50,000.00, which is within the range of awards granted by courts in this district in similar circumstances.

### 12. Defaulting Defendant GeGeonly

As plead in the Complaint and supported by the uncontroverted evidence annexed to the Complaint as Exhibit D, Defaulting Defendant GeGeonly had, at minimum, six (6) infringing uses of Plaintiff's Baby Shark Marks and seven (7) infringing uses of the Baby Shark Works and willfully and knowingly advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold Counterfeit Products, that are confusingly similar to one of the Baby Shark Products, through its Merchant Storefront, which is likely to cause confusion.  (Complaint, Ex. D, p. 95-100).  According to the Amazon Discovery, GeGeonly sold fifty-two (52) Counterfeit Products on Amazon, however, as Plaintiff does not have complete information regarding GeGeonly's potential sales on other platforms, profits or costs, Plaintiff elects statutory damages and respectfully request damages in the amount of $50,000.00, which is within the range of awards granted by courts in this district in similar circumstances.

### 13. Defaulting Defendant HAITing$

As plead in the Complaint and supported by the uncontroverted evidence annexed to the Complaint as Exhibit D, Defaulting Defendant HAITing$ had, at minimum, seven (7) infringing uses of Plaintiff's Baby Shark Marks and three (3) infringing uses of the Baby Shark Works and willfully and knowingly advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold Counterfeit Products, that are confusingly similar to one of the Baby Shark Products,

through its Merchant Storefront, which is likely to cause confusion.  (Complaint, Ex. D, p. 107-108).  According to the Amazon Discovery, HAITing$ sold six (6) Counterfeit Products on Amazon, however, as Plaintiff does not have complete information regarding HAITing$'s potential sales on other platforms, profits or costs, Plaintiff elects statutory damages and respectfully request damages in the amount of $50,000.00, which is within the range of awards granted by courts in this district in similar circumstances.

### 14. Defaulting Defendant Haocheng-Trade

As plead in the Complaint and supported by the uncontroverted evidence annexed to the Complaint as Exhibit D, Defaulting Defendant Haocheng-Trade had, at minimum, six (6) infringing use of Plaintiff's Baby Shark Marks and two (2) infringing use of the Baby Shark Works and willfully and knowingly advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold Counterfeit Products, that are confusingly similar to one of the Baby Shark Products, through its Merchant Storefront, which is likely to cause confusion.  (Complaint, Ex. D, p. 118).  According to the Amazon Discovery, Haocheng-Trade sold one hundred seventy (170) Counterfeit Products on Amazon, however, as Plaintiff does not have complete information regarding Haocheng-Trade's potential sales on other platforms, profits or costs, Plaintiff elects statutory damages and respectfully request damages in the amount of $50,000.00, which is within the range of awards granted by courts in this district in similar circumstances.

### 15. Defaulting Defendant HAPPY PARTY-001

As plead in the Complaint and supported by the uncontroverted evidence annexed to the Complaint as Exhibit D, Defaulting Defendant HAPPY PARTY-001 had, at minimum, one (1) infringing use of Plaintiff's Baby Shark Marks and two (2) infringing uses of the Baby Shark Works and willfully and knowingly advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold Counterfeit Products, that are confusingly similar to one of the Baby

Shark Products, through its Merchant Storefront, which is likely to cause confusion. (Complaint, Ex. D, p. 125). According to the Amazon Discovery, HAPPY PARTY-001 sold sixteen (16) Counterfeit Products on Amazon, however, as Plaintiff does not have complete information regarding HAPPY PARTY-001's potential sales on other platforms, profits or costs, Plaintiff elects statutory damages and respectfully request damages in the amount of $50,000.00, which is within the range of awards granted by courts in this district in similar circumstances.

### 16. Defaulting Defendant Heartland GO

As plead in the Complaint and supported by the uncontroverted evidence annexed to the Complaint as Exhibit D, Defaulting Defendant Heartland GO had, at minimum, four (4) infringing uses of Plaintiff's Baby Shark Marks and one (1) infringing use of the Baby Shark Works and willfully and knowingly advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold Counterfeit Products, that are confusingly similar to one of the Baby Shark Products, through its Merchant Storefront, which is likely to cause confusion. (Complaint, Ex. D, p. 132). According to the Amazon Discovery, Heartland GO sold two thousand three hundred thirteen (2,313) Counterfeit Products on Amazon, however, as Plaintiff does not have complete information regarding Heartland GO's potential sales on other platforms, profits or costs, Plaintiff elects statutory damages and respectfully request damages in the amount of $50,000.00, which is within the range of awards granted by courts in this district in similar circumstances.

### 17. Defaulting Defendant Huibi-US

As plead in the Complaint and supported by the uncontroverted evidence annexed to the Complaint as Exhibit D, Defaulting Defendant Huibi-US had, at minimum, four (4) infringing uses of Plaintiff's Baby Shark Marks and two (2) infringing uses of the Baby Shark Works and willfully and knowingly advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold Counterfeit Products, that are confusingly similar to one of the Baby Shark Products, through its

Merchant Storefront, which is likely to cause confusion.  (Complaint, Ex. D, p. 139).  According to the Amazon Discovery, Huibi-US sold sixty (60) Counterfeit Products on Amazon, however, as Plaintiff does not have complete information regarding Huibi-US's potential sales on other platforms, profits or costs, Plaintiff elects statutory damages and respectfully request damages in the amount of $50,000.00, which is within the range of awards granted by courts in this district in similar circumstances.

### 18. Defaulting Defendant Joysail

As plead in the Complaint and supported by the uncontroverted evidence annexed to the Complaint as Exhibit D, Defaulting Defendant Joysail had, at minimum, eight (8) infringing uses of Plaintiff's Baby Shark Marks and three (3) infringing uses of the Baby Shark Works and willfully and knowingly advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold Counterfeit Products, that are confusingly similar to one of the Baby Shark Products, through its Merchant Storefront, which is likely to cause confusion.  (Complaint, Ex. D, p. 146-147).  According to the Amazon Discovery, Joysail sold one thousand eight hundred twenty-one (1,821) Counterfeit Products on Amazon, however, as Plaintiff does not have complete information regarding Joysail's potential sales on other platforms, profits or costs, Plaintiff elects statutory damages and respectfully request damages in the amount of $50,000.00, which is within the range of awards granted by courts in this district in similar circumstances.

### 19. Defaulting Defendant Jyoker-US1

As plead in the Complaint and supported by the uncontroverted evidence annexed to the Complaint as Exhibit D, Defaulting Defendant Jyoker-US1 had, at minimum, nine (9) infringing uses of Plaintiff's Baby Shark Marks and two (2) infringing uses of the Baby Shark Works and willfully and knowingly advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold Counterfeit Products, that are confusingly similar to one of the Baby Shark Products,

through its Merchant Storefront, which is likely to cause confusion.  (Complaint, Ex. D, p. 154). According to the Amazon Discovery, Jyoker-US1 sold thirty-six (36) Counterfeit Products on Amazon, however, as Plaintiff does not have complete information regarding Jyoker-US1's potential sales on other platforms, profits or costs, Plaintiff elects statutory damages and respectfully request damages in the amount of $50,000.00, which is within the range of awards granted by courts in this district in similar circumstances.

### 20. Defaulting Defendant Kangxinsheng1

As plead in the Complaint and supported by the uncontroverted evidence annexed to the Complaint as Exhibit D, Defaulting Defendant Kangxinsheng1 had, at minimum, one (1) infringing use of Plaintiff's Baby Shark Marks and two (1) infringing uses of the Baby Shark Works and willfully and knowingly advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold Counterfeit Products, that are confusingly similar to one of the Baby Shark Products, through its Merchant Storefront, which is likely to cause confusion.  (Complaint, Ex. D, p. 161).  According to the Amazon Discovery, Kangxinsheng1 sold two thousand six hundred thirty-nine (2,639) Counterfeit Products on Amazon, however, as Plaintiff does not have complete information regarding Kangxinsheng1's potential sales on other platforms, profits or costs, Plaintiff elects statutory damages and respectfully request damages in the amount of $50,000.00, which is within the range of awards granted by courts in this district in similar circumstances.

### 21. Defaulting Defendant LADYBEETLE

As plead in the Complaint and supported by the uncontroverted evidence annexed to the Complaint as Exhibit D, Defaulting Defendant LADYBEETLE had, at minimum, eleven (11) infringing uses of Plaintiff's Baby Shark Marks and four (4) infringing uses of the Baby Shark Works and willfully and knowingly advertised, marketed, promoted, distributed, displayed,

offered for sale and/or sold Counterfeit Products, that are confusingly similar to one of the Baby Shark Products, through its Merchant Storefront, which is likely to cause confusion.  (Complaint, Ex. D, p. 168-169).  According to the Amazon Discovery, LADYBEETLE sold four hundred thirteen (413) Counterfeit Products on Amazon, however, as Plaintiff does not have complete information regarding LADYBEETLE's potential sales on other platforms, profits or costs, Plaintiff elects statutory damages and respectfully request damages in the amount of $50,000.00, which is within the range of awards granted by courts in this district in similar circumstances.

### 22. Defaulting Defendant LICHE Cupcake stand

As plead in the Complaint and supported by the uncontroverted evidence annexed to the Complaint as Exhibit D, Defaulting Defendant LICHE Cupcake stand had, at minimum, one (1) infringing use of Plaintiff's Baby Shark Marks and two (2) infringing uses of the Baby Shark Works and willfully and knowingly advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold Counterfeit Products, that are confusingly similar to one of the Baby Shark Products, through its Merchant Storefront, which is likely to cause confusion.  (Complaint, Ex. D, p. 176).  According to the Amazon Discovery, LICHE Cupcake stand sold fifty-two (52) Counterfeit Products on Amazon, however, as Plaintiff does not have complete information regarding LICHE Cupcake stand's potential sales on other platforms, profits or costs, Plaintiff elects statutory damages and respectfully request damages in the amount of $50,000.00, which is within the range of awards granted by courts in this district in similar circumstances.

### 23. Defaulting Defendant lvyun

As plead in the Complaint and supported by the uncontroverted evidence annexed to the Complaint as Exhibit D, Defaulting Defendant lvyun had, at minimum, eight (8) infringing uses of Plaintiff's Baby Shark Marks and six (6) infringing uses of the Baby Shark Works and willfully and knowingly advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold

Counterfeit Products, that are confusingly similar to one of the Baby Shark Products, through its Merchant Storefront, which is likely to cause confusion.   (Complaint, Ex. D, p. 183-188). According to the Amazon Discovery, lvyun sold ten (10) Counterfeit Products on Amazon, however, as Plaintiff does not have complete information regarding lvyun's potential sales on other platforms, profits or costs, Plaintiff elects statutory damages and respectfully request damages in the amount of $50,000.00, which is within the range of awards granted by courts in this district in similar circumstances.

### 24. Defaulting Defendant Mary good shop

As plead in the Complaint and supported by the uncontroverted evidence annexed to the Complaint as Exhibit D, Defaulting Defendant Mary good shop had, at minimum, fourteen (14) infringing uses of Plaintiff's Baby Shark Marks and one (1) infringing use of the Baby Shark Works and willfully and knowingly advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold Counterfeit Products, that are confusingly similar to one of the Baby Shark Products, through its Merchant Storefront, which is likely to cause confusion.  (Complaint, Ex. D, p. 197).  According to the Amazon Discovery, Mary good shop sold fifty-nine (59) Counterfeit Products on Amazon, however, as Plaintiff does not have complete information regarding Mary good shop's potential sales on other platforms, profits or costs, Plaintiff elects statutory damages and respectfully request damages in the amount of $50,000.00, which is within the range of awards granted by courts in this district in similar circumstances.

### 25. Defaulting Defendant NA-AMZ001

As plead in the Complaint and supported by the uncontroverted evidence annexed to the Complaint as Exhibit D, Defaulting Defendant NA-AMZ001 had, at minimum, two (2) infringing uses of Plaintiff's Baby Shark Marks and four (4) infringing uses of the Baby Shark Works and willfully and knowingly advertised, marketed, promoted, distributed, displayed, offered for sale

and/or sold Counterfeit Products, that are confusingly similar to one of the Baby Shark Products, through its Merchant Storefront, which is likely to cause confusion.  (Complaint, Ex. D, p. 204-205).  According to the Amazon Discovery, NA-AMZ001 sold one thousand seven hundred four (1,704) Counterfeit Products on Amazon, however, as Plaintiff does not have complete information regarding NA-AMZ001's potential sales on other platforms, profits or costs, Plaintiff elects statutory damages and respectfully request damages in the amount of $50,000.00, which is within the range of awards granted by courts in this district in similar circumstances.

### 26. Defaulting Defendant Nagiwart

As plead in the Complaint and supported by the uncontroverted evidence annexed to the Complaint as Exhibit D, Defaulting Defendant Nagiwart had, at minimum, three (3) infringing uses of Plaintiff's Baby Shark Marks and two (2) infringing uses of the Baby Shark Works and willfully and knowingly advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold Counterfeit Products, that are confusingly similar to one of the Baby Shark Products, through its Merchant Storefront, which is likely to cause confusion.  (Complaint, Ex. D, p. 212). According to the Amazon Discovery, Nagiwart sold nine hundred twenty-nine (929) Counterfeit Products on Amazon, however, as Plaintiff does not have complete information regarding Nagiwart's potential sales on other platforms, profits or costs, Plaintiff elects statutory damages and respectfully request damages in the amount of $50,000.00, which is within the range of awards granted by courts in this district in similar circumstances.

### 27. Defaulting Defendant nuoting

As plead in the Complaint and supported by the uncontroverted evidence annexed to the Complaint as Exhibit D, Defaulting Defendant nuoting had, at minimum, eight (8) infringing uses of Plaintiff's Baby Shark Marks and three (3) infringing uses of the Baby Shark Works and willfully and knowingly advertised, marketed, promoted, distributed, displayed, offered for sale

and/or sold Counterfeit Products, that are confusingly similar to one of the Baby Shark Products, through its Merchant Storefront, which is likely to cause confusion.  (Complaint, Ex. D, p. 219-220).  According to the Amazon Discovery, nuoting sold four (4) Counterfeit Products on Amazon, however, as Plaintiff does not have complete information regarding nuoting's potential sales on other platforms, profits or costs, Plaintiff elects statutory damages and respectfully request damages in the amount of $50,000.00, which is within the range of awards granted by courts in this district in similar circumstances.

### 28. Defaulting Defendant Qingshu

As plead in the Complaint and supported by the uncontroverted evidence annexed to the Complaint as Exhibit D, Defaulting Defendant Qingshu had, at minimum, one (1) infringing use of Plaintiff's Baby Shark Marks and two (2) infringing uses of the Baby Shark Works and willfully and knowingly advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold Counterfeit Products, that are confusingly similar to one of the Baby Shark Products, through its Merchant Storefront, which is likely to cause confusion.  (Complaint, Ex. D, p. 227).  According to the Amazon Discovery, Qingshu sold one thousand ninety-eight (1,098) Counterfeit Products on Amazon, however, as Plaintiff does not have complete information regarding Qingshu's potential sales on other platforms, profits or costs, Plaintiff elects statutory damages and respectfully request damages in the amount of $50,000.00, which is within the range of awards granted by courts in this district in similar circumstances.

### 29. Defaulting Defendant QT-US

As plead in the Complaint and supported by the uncontroverted evidence annexed to the Complaint as Exhibit D, Defaulting Defendant QT-US had, at minimum, fifteen (15) infringing uses of Plaintiff's Baby Shark Marks and five (5) infringing uses of the Baby Shark Works and willfully and knowingly advertised, marketed, promoted, distributed, displayed, offered for sale

and/or sold Counterfeit Products, that are confusingly similar to one of the Baby Shark Products, through its Merchant Storefront, which is likely to cause confusion. (Complaint, Ex. D, p. 234-236). According to the Amazon Discovery, QT-US sold seventy (70) Counterfeit Products on Amazon, however, as Plaintiff does not have complete information regarding QT-US's potential sales on other platforms, profits or costs, Plaintiff elects statutory damages and respectfully request damages in the amount of $50,000.00, which is within the range of awards granted by courts in this district in similar circumstances.

### 30. Defaulting Defendant SALIMHIB-US

As plead in the Complaint and supported by the uncontroverted evidence annexed to the Complaint as Exhibit D, Defaulting Defendant SALIMHIB-US had, at minimum, seventeen (17) infringing uses of Plaintiff's Baby Shark Marks and eight (8) infringing uses of the Baby Shark Works and willfully and knowingly advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold Counterfeit Products, that are confusingly similar to one of the Baby Shark Products, through its Merchant Storefront, which is likely to cause confusion. (Complaint, Ex. D, p. 243-246). According to the Amazon Discovery, SALIMHIB-US sold forty-three (43) Counterfeit Products on Amazon, however, as Plaintiff does not have complete information regarding SALIMHIB-US's potential sales on other platforms, profits or costs, Plaintiff elects statutory damages and respectfully request damages in the amount of $50,000.00, which is within the range of awards granted by courts in this district in similar circumstances.

### 31. Defaulting Defendant SAM CLAYTONddg

As plead in the Complaint and supported by the uncontroverted evidence annexed to the Complaint as Exhibit D, Defaulting Defendant SAM CLAYTONddg had, at minimum, two (2) infringing uses of Plaintiff's Baby Shark Marks and two (2) infringing uses of the Baby Shark Works and willfully and knowingly advertised, marketed, promoted, distributed, displayed,

offered for sale and/or sold Counterfeit Products, that are confusingly similar to one of the Baby Shark Products, through its Merchant Storefront, which is likely to cause confusion.  (Complaint, Ex. D, p. 253).  According to the Amazon Discovery, SAM CLAYTONddg sold one hundred thirty-two (132) Counterfeit Products on Amazon, however, as Plaintiff does not have complete information regarding SAM CLAYTONddg's potential sales on other platforms, profits or costs, Plaintiff elects statutory damages and respectfully request damages in the amount of $50,000.00, which is within the range of awards granted by courts in this district in similar circumstances.

### 32. Defaulting Defendant Sensiamz Backdrop

As plead in the Complaint and supported by the uncontroverted evidence annexed to the Complaint as Exhibit D, Defaulting Defendant Sensiamz Backdrop had, at minimum, one (1) infringing use of Plaintiff's Baby Shark Marks and two (2) infringing uses of the Baby Shark Works and willfully and knowingly advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold Counterfeit Products, that are confusingly similar to one of the Baby Shark Products, through its Merchant Storefront, which is likely to cause confusion.  (Complaint, Ex. D, p. 260).  According to the Amazon Discovery, Sensiamz Backdrop sold sixty-one (61) Counterfeit Products on Amazon, however, as Plaintiff does not have complete information regarding Sensiamz Backdrop's potential sales on other platforms, profits or costs, Plaintiff elects statutory damages and respectfully request damages in the amount of $50,000.00, which is within the range of awards granted by courts in this district in similar circumstances.

### 33. Defaulting Defendant shenzhenshixindajixieyouxiangongsi

As plead in the Complaint and supported by the uncontroverted evidence annexed to the Complaint as Exhibit D, Defaulting Defendant shenzhenshixindajixieyouxiangongsi had, at minimum, five (5) infringing uses of Plaintiff's Baby Shark Marks and Two (2) infringing uses of the Baby Shark Works and willfully and knowingly advertised, marketed, promoted, distributed,

displayed, offered for sale and/or sold Counterfeit Products, that are confusingly similar to one of the Baby Shark Products, through its Merchant Storefront, which is likely to cause confusion. (Complaint, Ex. D, p. 269). According to the Amazon Discovery, shenzhenshixindajixieyouxiangongsi sold ninety-three (93) Counterfeit Products on Amazon, however, as Plaintiff does not have complete information regarding shenzhenshixindajixieyouxiangongsi's potential sales on other platforms, profits or costs, Plaintiff elects statutory damages and respectfully request damages in the amount of $50,000.00, which is within the range of awards granted by courts in this district in similar circumstances.

### 34. Defaulting Defendant SMASSY US

As plead in the Complaint and supported by the uncontroverted evidence annexed to the Complaint as Exhibit D, Defaulting Defendant SMASSY US had, at minimum, three (3) infringing uses of Plaintiff's Baby Shark Marks and two (2) infringing uses of the Baby Shark Works and willfully and knowingly advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold Counterfeit Products, that are confusingly similar to one of the Baby Shark Products, through its Merchant Storefront, which is likely to cause confusion. (Complaint, Ex. D, p. 277-278). According to the Amazon Discovery, SMASSY US sold eleven (11) Counterfeit Products on Amazon, however, as Plaintiff does not have complete information regarding SMASSY US's potential sales on other platforms, profits or costs, Plaintiff elects statutory damages and respectfully request damages in the amount of $50,000.00, which is within the range of awards granted by courts in this district in similar circumstances.

### 35. Defaulting Defendant SMSCHHX

As plead in the Complaint and supported by the uncontroverted evidence annexed to the Complaint as Exhibit D, Defaulting Defendant SMSCHHX had, at minimum, two (2) infringing uses of Plaintiff's Baby Shark Marks and one (1) infringing use of the Baby Shark Works and

willfully and knowingly advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold Counterfeit Products, that are confusingly similar to one of the Baby Shark Products, through its Merchant Storefront, which is likely to cause confusion.  (Complaint, Ex. D, p. 285). According to the Amazon Discovery, SMSCHHX sold three thousand four hundred three (3,403) Counterfeit Products on Amazon, however, as Plaintiff does not have complete information regarding SMSCHHX's potential sales on other platforms, profits or costs, Plaintiff elects statutory damages and respectfully request damages in the amount of $50,000.00, which is within the range of awards granted by courts in this district in similar circumstances.

### 36. Defaulting Defendant sujiumaisusu

As plead in the Complaint and supported by the uncontroverted evidence annexed to the Complaint as Exhibit D, Defaulting Defendant sujiumaisusu had, at minimum, six (6) infringing uses of Plaintiff's Baby Shark Marks and two (2) infringing uses of the Baby Shark Works and willfully and knowingly advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold Counterfeit Products, that are confusingly similar to one of the Baby Shark Products, through its Merchant Storefront, which is likely to cause confusion.  (Complaint, Ex. D, p. 292). According to the Amazon Discovery, sujiumaisusu sold zero (0) Counterfeit Products on Amazon, however, as Plaintiff does not have complete information regarding sujiumaisusu's potential sales on other platforms, profits or costs, Plaintiff elects statutory damages and respectfully request damages in the amount of $50,000.00, which is within the range of awards granted by courts in this district in similar circumstances.

### 37. Defaulting Defendant telike

As plead in the Complaint and supported by the uncontroverted evidence annexed to the Complaint as Exhibit D, Defaulting Defendant telike had, at minimum, eight (8) infringing uses of Plaintiff's Baby Shark Marks and two (2) infringing uses of the Baby Shark Works and willfully

and knowingly advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold Counterfeit Products, that are confusingly similar to one of the Baby Shark Products, through its Merchant Storefront, which is likely to cause confusion.   (Complaint, Ex. D, p. 306-307). According to the Amazon Discovery, telike sold four hundred twenty-eight (428) Counterfeit Products on Amazon, however, as Plaintiff does not have complete information regarding telike's potential sales on other platforms, profits or costs, Plaintiff elects statutory damages and respectfully request damages in the amount of $50,000.00, which is within the range of awards granted by courts in this district in similar circumstances.

### 38. Defaulting Defendant Theguard

As plead in the Complaint and supported by the uncontroverted evidence annexed to the Complaint as Exhibit D, Defaulting Defendant Theguard had, at minimum, eight (8) infringing uses of Plaintiff's Baby Shark Marks and three (3) infringing uses of the Baby Shark Works and willfully and knowingly advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold Counterfeit Products, that are confusingly similar to one of the Baby Shark Products, through its Merchant Storefront, which is likely to cause confusion.   (Complaint, Ex. D, p. 314-316).   According to the Amazon Discovery, Theguard sold five (5) Counterfeit Products on Amazon, however, as Plaintiff does not have complete information regarding Theguard's potential sales on other platforms, profits or costs, Plaintiff elects statutory damages and respectfully request damages in the amount of $50,000.00, which is within the range of awards granted by courts in this district in similar circumstances.

### 39. Defaulting Defendant tongmumy

As plead in the Complaint and supported by the uncontroverted evidence annexed to the Complaint as Exhibit D, Defaulting Defendant tongmumy had, at minimum, five (5) infringing uses of Plaintiff's Baby Shark Marks and five (5) infringing uses of the Baby Shark Works and

willfully and knowingly advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold Counterfeit Products, that are confusingly similar to one of the Baby Shark Products, through its Merchant Storefront, which is likely to cause confusion.  (Complaint, Ex. D, p. 323-327).  According to the Amazon Discovery, tongmumy sold three hundred seventy-five (375) Counterfeit Products on Amazon, however, as Plaintiff does not have complete information regarding tongmumy's potential sales on other platforms, profits or costs, Plaintiff elects statutory damages and respectfully request damages in the amount of $50,000.00, which is within the range of awards granted by courts in this district in similar circumstances.

**40. Defaulting Defendant Une petite mouette**

As plead in the Complaint and supported by the uncontroverted evidence annexed to the Complaint as Exhibit D, Defaulting Defendant Une petite mouette had, at minimum, six (6) infringing uses of Plaintiff's Baby Shark Marks and one (1) infringing use of the Baby Shark Works and willfully and knowingly advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold Counterfeit Products, that are confusingly similar to one of the Baby Shark Products, through its Merchant Storefront, which is likely to cause confusion.  (Complaint, Ex. D, p. 350).  According to the Amazon Discovery, Une petite mouette sold three (3) Counterfeit Products on Amazon, however, as Plaintiff does not have complete information regarding Une petite mouette's potential sales on other platforms, profits or costs, Plaintiff elects statutory damages and respectfully request damages in the amount of $50,000.00, which is within the range of awards granted by courts in this district in similar circumstances.

### 41. Defaulting Defendant Veterans Club a/k/a 老兵俱乐部[15]

As plead in the Complaint and supported by the uncontroverted evidence annexed to the Complaint as Exhibit D, Defaulting Defendant Veterans Club a/k/a 老兵俱乐部 had, at minimum, six (6) infringing uses of Plaintiff's Baby Shark Marks and one (1) infringing use of the Baby Shark Works and willfully and knowingly advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold Counterfeit Products, that are confusingly similar to one of the Baby Shark Products, through its Merchant Storefront, which is likely to cause confusion.  (Complaint, Ex. D, p. 453).  According to the Amazon Discovery, Veterans Club a/k/a 老兵俱乐部 sold four hundred thirty-seven (437) Counterfeit Products on Amazon, however, as Plaintiff does not have complete information regarding Veterans Club a/k/a 老兵俱乐部's potential sales on other platforms, profits or costs, Plaintiff elects statutory damages and respectfully request damages in the amount of $50,000.00, which is within the range of awards granted by courts in this district in similar circumstances.

### 42. Defaulting Defendant wch- us

As plead in the Complaint and supported by the uncontroverted evidence annexed to the Complaint as Exhibit D, Defaulting Defendant wch- us had, at minimum, two (2) infringing uses of Plaintiff's Baby Shark Marks and one (1) infringing use of the Baby Shark Works and willfully and knowingly advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold Counterfeit Products, that are confusingly similar to one of the Baby Shark Products, through its Merchant Storefront, which is likely to cause confusion.  (Complaint, Ex. D, p. 357).  According to the Amazon Discovery, wch- us sold one hundred seven (107) Counterfeit Products on Amazon,

---

[15] Defendant's name was originally solely in Chinese characters, Plaintiff translated Defendant's name as requested by the Court.

however, as Plaintiff does not have complete information regarding wch- us's potential sales on other platforms, profits or costs, Plaintiff elects statutory damages and respectfully request damages in the amount of $50,000.00, which is within the range of awards granted by courts in this district in similar circumstances.

### 43. Defaulting Defendant WEN MIKE

As plead in the Complaint and supported by the uncontroverted evidence annexed to the Complaint as Exhibit D, Defaulting Defendant WEN MIKE had, at minimum, four (4) infringing uses of Plaintiff's Baby Shark Marks and one (1) infringing use of the Baby Shark Works and willfully and knowingly advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold Counterfeit Products, that are confusingly similar to one of the Baby Shark Products, through its Merchant Storefront, which is likely to cause confusion.  (Complaint, Ex. D, p. 364). According to the Amazon Discovery, WEN MIKE sold three hundred fifty-one (351) Counterfeit Products on Amazon, however, as Plaintiff does not have complete information regarding WEN MIKE's potential sales on other platforms, profits or costs, Plaintiff elects statutory damages and respectfully request damages in the amount of $50,000.00, which is within the range of awards granted by courts in this district in similar circumstances.

### 44. Defaulting Defendant WONDERFUL MEMORIES

As plead in the Complaint and supported by the uncontroverted evidence annexed to the Complaint as Exhibit D, Defaulting Defendant WONDERFUL MEMORIES had, at minimum, one (1) infringing use of Plaintiff's Baby Shark Marks and two (2) infringing uses of the Baby Shark Works and willfully and knowingly advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold Counterfeit Products, that are confusingly similar to one of the Baby Shark Products, through its Merchant Storefront, which is likely to cause confusion.  (Complaint, Ex. D, p. 371).  According to the Amazon Discovery, WONDERFUL MEMORIES sold two

50

thousand two hundred thirty-two (2,232) Counterfeit Products on Amazon, however, as Plaintiff does not have complete information regarding WONDERFUL MEMORIES's potential sales on other platforms, profits or costs, Plaintiff elects statutory damages and respectfully request damages in the amount of $50,000.00, which is within the range of awards granted by courts in this district in similar circumstances.

### 45. Defaulting Defendant WOW GIFT

As plead in the Complaint and supported by the uncontroverted evidence annexed to the Complaint as Exhibit D, Defaulting Defendant WOW GIFT had, at minimum, two (2) infringing uses of Plaintiff's Baby Shark Marks and two (2) infringing uses of the Baby Shark Works and willfully and knowingly advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold Counterfeit Products, that are confusingly similar to one of the Baby Shark Products, through its Merchant Storefront, which is likely to cause confusion.  (Complaint, Ex. D, p. 378). According to the Amazon Discovery, WOW GIFT sold one hundred seventy (170) Counterfeit Products on Amazon, however, as Plaintiff does not have complete information regarding WOW GIFT's potential sales on other platforms, profits or costs, Plaintiff elects statutory damages and respectfully request damages in the amount of $50,000.00, which is within the range of awards granted by courts in this district in similar circumstances.

### 46. Defaulting Defendant xuanningshangwu

As plead in the Complaint and supported by the uncontroverted evidence annexed to the Complaint as Exhibit D, Defaulting Defendant xuanningshangwu had, at minimum, Tthree (3) infringing uses of Plaintiff's Baby Shark Marks and two (2) infringing uses of the Baby Shark Works and willfully and knowingly advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold Counterfeit Products, that are confusingly similar to one of the Baby Shark Products, through its Merchant Storefront, which is likely to cause confusion.  (Complaint,

Ex. D, p. 385).  According to the Amazon Discovery, xuanningshangwu sold one hundred three (103) Counterfeit Products on Amazon, however, as Plaintiff does not have complete information regarding xuanningshangwu's potential sales on other platforms, profits or costs, Plaintiff elects statutory damages and respectfully request damages in the amount of $50,000.00, which is within the range of awards granted by courts in this district in similar circumstances.

### 47. Defaulting Defendant XueHua INC

As plead in the Complaint and supported by the uncontroverted evidence annexed to the Complaint as Exhibit D, Defaulting Defendant XueHua INC had, at minimum, seven (7) infringing uses of Plaintiff's Baby Shark Marks and four (4) infringing uses of the Baby Shark Works and willfully and knowingly advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold Counterfeit Products, that are confusingly similar to one of the Baby Shark Products, through its Merchant Storefront, which is likely to cause confusion.  (Complaint, Ex. D, p. 394-396).  According to the Amazon Discovery, XueHua INC sold two hundred twenty-eight (228) Counterfeit Products on Amazon, however, as Plaintiff does not have complete information regarding XueHua INC's potential sales on other platforms, profits or costs, Plaintiff elects statutory damages and respectfully request damages in the amount of $50,000.00, which is within the range of awards granted by courts in this district in similar circumstances.

### 48. Defaulting Defendant Xuiyui7i

As plead in the Complaint and supported by the uncontroverted evidence annexed to the Complaint as Exhibit D, Defaulting Defendant Xuiyui7i had, at minimum, nine (9) infringing uses of Plaintiff's Baby Shark Marks and three (3) infringing uses of the Baby Shark Works and willfully and knowingly advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold Counterfeit Products, that are confusingly similar to one of the Baby Shark Products, through its Merchant Storefront, which is likely to cause confusion.  (Complaint, Ex. D, p. 403-

404).   According to the Amazon Discovery, Xuiyui7i sold zero (0) Counterfeit Products on Amazon, however, as Plaintiff does not have complete information regarding Xuiyui7i's potential sales on other platforms, profits or costs, Plaintiff elects statutory damages and respectfully request damages in the amount of $50,000.00, which is within the range of awards granted by courts in this district in similar circumstances.

### 49. Defaulting Defendant YAMMO202

As plead in the Complaint and supported by the uncontroverted evidence annexed to the Complaint as Exhibit D, Defaulting Defendant YAMMO202 had, at minimum, five (5) infringing uses of Plaintiff's Baby Shark Marks and one (1) infringing use of the Baby Shark Works and willfully and knowingly advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold Counterfeit Products, that are confusingly similar to one of the Baby Shark Products, through its Merchant Storefront, which is likely to cause confusion.  (Complaint, Ex. D, p. 411). According to the Amazon Discovery, YAMMO202 sold one hundred ninety-seven (197) Counterfeit Products on Amazon, however, as Plaintiff does not have complete information regarding YAMMO202's potential sales on other platforms, profits or costs, Plaintiff elects statutory damages and respectfully request damages in the amount of $50,000.00, which is within the range of awards granted by courts in this district in similar circumstances.

### 50. Defaulting Defendant Yicheny US

As plead in the Complaint and supported by the uncontroverted evidence annexed to the Complaint as Exhibit D, Defaulting Defendant Yicheny US had, at minimum, fifteen (15) infringing uses of Plaintiff's Baby Shark Marks and one (1) infringing use of the Baby Shark Works and willfully and knowingly advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold Counterfeit Products, that are confusingly similar to one of the Baby Shark Products, through its Merchant Storefront, which is likely to cause confusion.  (Complaint,

Ex. D, p. 418).  According to the Amazon Discovery, Yicheny US sold forty-eight (48) Counterfeit Products on Amazon, however, as Plaintiff does not have complete information regarding Yicheny US's potential sales on other platforms, profits or costs, Plaintiff elects statutory damages and respectfully request damages in the amount of $50,000.00, which is within the range of awards granted by courts in this district in similar circumstances.

### 51. Defaulting Defendant yongchunchengqingmaoyiyouxiangongsi

As plead in the Complaint and supported by the uncontroverted evidence annexed to the Complaint as Exhibit D, Defaulting Defendant yongchunchengqingmaoyiyouxiangongsi had, at minimum, three (3) infringing uses of Plaintiff's Baby Shark Marks and one (1) infringing use of the Baby Shark Works and willfully and knowingly advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold Counterfeit Products, that are confusingly similar to one of the Baby Shark Products, through its Merchant Storefront, which is likely to cause confusion. (Complaint, Ex. D, p. 432). According to the Amazon Discovery, yongchunchengqingmaoyiyouxiangongsi sold thirty-nine (39) Counterfeit Products on Amazon, however, as Plaintiff does not have complete information regarding yongchunchengqingmaoyiyouxiangongsi's potential sales on other platforms, profits or costs, Plaintiff elects statutory damages and respectfully request damages in the amount of $50,000.00, which is within the range of awards granted by courts in this district in similar circumstances.

### 52. Defaulting Defendant YooFly

As plead in the Complaint and supported by the uncontroverted evidence annexed to the Complaint as Exhibit D, Defaulting Defendant YooFly had, at minimum, five (5) infringing uses of Plaintiff's Baby Shark Marks and two (2) infringing uses of the Baby Shark Works and willfully and knowingly advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold Counterfeit Products, that are confusingly similar to one of the Baby Shark Products, through its

54

Merchant Storefront, which is likely to cause confusion.  (Complaint, Ex. D, p. 439).  According to the Amazon Discovery, YooFly sold two hundred fifty-seven (257) Counterfeit Products on Amazon, however, as Plaintiff does not have complete information regarding YooFly's potential sales on other platforms, profits or costs, Plaintiff elects statutory damages and respectfully request damages in the amount of $50,000.00, which is within the range of awards granted by courts in this district in similar circumstances.

### 53. Defaulting Defendant Zingon US

As plead in the Complaint and supported by the uncontroverted evidence annexed to the Complaint as Exhibit D, Defaulting Defendant Zingon US had, at minimum, nine (9) infringing uses of Plaintiff's Baby Shark Marks and one (1) infringing use of the Baby Shark Works and willfully and knowingly advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold Counterfeit Products, that are confusingly similar to one of the Baby Shark Products, through its Merchant Storefront, which is likely to cause confusion.  (Complaint, Ex. D, p. 446). According to the Amazon Discovery, Zingon US sold nine (9) Counterfeit Products on Amazon, however, as Plaintiff does not have complete information regarding Zingon US's potential sales on other platforms, profits or costs, Plaintiff elects statutory damages and respectfully request damages in the amount of $50,000.00, which is within the range of awards granted by courts in this district in similar circumstances.

## H.   PLAINTIFF IS ENTITLED TO SERVE RESTRAINING NOTICES PURSUANT TO CPLR § 5222 AND TO AN ASSET TURNOVER PURSUANT TO CPLR § 5225

Plaintiff respectfully requests that the Court allow Plaintiff to serve restraining notices pursuant to CPLR § 5222 as instructed by this Court in cases including *Allstar Marketing Group, LLC v. 158*, No. 19-cv-4101 (GHW), 2019 U.S. Dist. LEXIS 141913 (S.D.N.Y. Aug. 20, 2019) and *WowWee Grp. Ltd. v. Meirly*, No. 18-cv-706 (AJN), 2019 U.S. Dist. LEXIS 51905 (S.D.N.Y.

Mar. 27, 2019).[16]  Recently, in *Off-White LLC v. 2017pingan, et al.*, and two related actions,[17] after requesting supplemental briefing on the issue, Judge Failla allowed the plaintiff to serve restraining notices on third-party service provider PayPal pursuant to C.P.L.R. § 5222. 20-cv-5191 (KPF), Dkt. 40 (S.D.N.Y. May 7, 2021).[18]

Plaintiff's requested post-judgment relief can be granted through N.Y. C.P.L.R. § 5222, as incorporated by Fed. R. Civ. P. 69.[19]  Pursuant to Rule 69(a), "post-judgment efforts to execute on a money judgment [must] comply with the procedural law of the forum state — unless a federal statute dictates to the contrary. The Lanham Act contains no such instruction. Accordingly, the applicable statute is N.Y. C.P.L.R. § 5225. *Tiffany (NJ) LLC v. Dong*, 2013 U.S. Dist. LEXIS 114986, at *28 (S.D.N.Y. Aug. 9, 2013).

> Where property is in possession of a judgment debtor, Section 5225 permits a court,[u]pon motion of the judgment creditor, upon notice to the judgment debtor, [and] where it is shown that the judgment debtor is in possession or custody of money or other personal property in which he has an interest, ... [to] order that the judgment debtor pay the money, or so much of it as is sufficient to satisfy the judgment, to the judgment creditor and, if the amount to be so paid is insufficient to satisfy the judgment, to deliver any other personal property, or so much of it as is of sufficient value to satisfy the judgment, to a designated sheriff.

*Arrowhead Capital Fin., Ltd. v. Seven Arts Entm't, Inc.*, No. 14 Civ. 6512 (KPF), 2017 U.S. Dist. LEXIS 125068, at *7-8 (S.D.N.Y. Aug. 8, 2017); N.Y. C.P.L.R. § 5225(a).

---

[16] *See*, *Dawson v. Krolikowski*, 530 N.Y.S.2d 931, 935 (Sup. Ct. 1988) ("[O]nce a money judgment is entered, restraining notices may be served pursuant to CPLR 5222 in order to prevent the transfer of property." (quotation marks omitted)).

[17] The related actions are *Off-White LLC v. 24 Hours Delivery Store et al*, 20-cv-5194 (KPF) and *Off-White LLC v. A9660, et al.*, 20-cv-5196 (KPF).  For ease of reference, Plaintiff will refer to the first filed case (20-cv-5191) only, however, Judge Failla issued the same decision for all three related cases.

[18] Judge Failla reserved decision on the plaintiff's request for a post-judgment asset turnover until after the restraining notices were served.  *Id.*

[19] *See e.g. Blue v. Cablevision Sys., N.Y. City Corp.*, No. 00-3836, 2006 U.S. Dist. LEXIS 96449, at *2 n.1 (E.D.N.Y. July 5, 2007).

Pursuant to N.Y. C.P.L.R. §§ 5201-5253, once a defendant is found liable and a money judgment is rendered against a defendant, a New York District Court has the power to restrain the defendant's assets. *Cruz v. TD Bank, N.A.*, 711 F.3d 261, 264 (2d Cir. 2013); *see also Interpool Ltd. v. Patterson*, No. 89 Civ. 8501 (LAK), 1995 U.S. Dist. LEXIS 2920, at *1 (S.D.N.Y. Mar. 13, 1995) (ordering restraint pursuant to C.P.L.R. § 5222, finding that "[a] New York judgment creditor is entitled to a restraining notice on the debtor as a matter of right"). Further, the Second Circuit has affirmed the district court's authority to order a post-judgment injunction on a claim for money damages where the judgment debtor sought to evade payment to the judgment creditor. *See Pashaian v. Eccelston Props., Ltd.*, 88 F.3d 77, 86-87 (2d Cir. 1996).

Accordingly, C.P.L.R. § 5222, which permits issuance of a restraining notice against the judgment debtor that, with certain exceptions not relevant here, prohibits disposition or transfer of property "until the judgment … is satisfied," allows the post-judgment asset restraint requested by Plaintiff. *See* C.P.L.R. § 5222(b). And where property is not in the possession of a judgment debtor, Section 5225 authorizes a court to compel a nonparty to surrender a judgment debtor's property:

> [u]pon a special proceeding commenced by the judgment creditor, against a person in possession or custody of money or other personal property in which the judgment debtor has an interest, or against a person who is a transferee of money or other personal property from the judgment debtor, where it is shown that the judgment debtor is entitled to the possession of such property or that the judgment creditor's rights to the property are superior to those of the transferee . . . .

N.Y. C.P.L.R. § 5225.

Although the state rule suggests that a special proceeding must be commenced, the Federal Rules of Civil Procedure make no mention of special proceedings. Federal courts in New York have deemed the CPLR special proceeding requirement satisfied when a plaintiff proceeds by complaint or motion against the third party holding a judgment debtor's assets. *See id.*; *see also,*

57

*e.g., Northern Mariana Islands v. Millard*, 845 F. Supp. 2d 579, 581 (S.D.N.Y. 2012) (citing

*Mitchell v. Lyons Prof'l Servs., Inc.*, 727 F. Supp. 2d 120, 122-23 (E.D.N.Y. 2010) ("Nearly every

court in this Circuit to consider the issue has held that parties can bring a motion under [Rule]

69(a), rather than instituting a special proceeding under the New York State law.")) (additional

citation omitted); *CSX Transp., Inc. v. Emjay Envtl. Recycling, LTD.*, No. 12-CV-1865, 2016 U.S.

Dist. LEXIS 23014, at *3 (E.D.N.Y. Feb. 25, 2016) (noting that the argument that a turnover order

must be brought by plenary action "is easily disregarded"); *S.E.C. v. Colonial Inv. Mgmt. LLC*,

No. 07 Civ. 8849 (PKC), 2010 U.S. Dist. LEXIS 108063, at *2 (S.D.N.Y. Oct. 6, 2010).

Section 5201 describes the assets that are subject to enforcement under New York law, and

are therefore available to judgment creditors' seeking to collect under § 5225. *Arrowhead Capital*

*Fin., Ltd.*, 2017 U.S. Dist. LEXIS 125068, at *8-9; *see also* N.Y. C.P.L.R. § 5201.  According to

this provision, "[a] money judgment may be enforced against any property which could be

assigned or transferred, whether it consists of a present or future right or interest and whether or

not it is vested, unless it is exempt from application to the satisfaction of the judgment." *Id.* at 8*;*

*see also* C.P.L.R. § 5201(b). Such property need not be located in New York; "a New York court

with personal jurisdiction over a defendant may order him to turn over out-of-state property" if the

defendant "is a judgment debtor or a garnishee." *Id.* at 8 (citing *Koehler v. Bank of Bermuda Ltd.*,

12 N.Y.3d 533, 541 (2009)).  Finally, no third parties have raised any issue regarding Plaintiff's

request either in this case or when previously ordered by judges in this district in similar cases.[20]

In the event this Court grants Plaintiff's motion, and after the Court enters its final judgment,

---

[20] *See, e.g., Off-White v. ^_^Warm House^_^ STORE, et al.*, No. 17-cv-8872-GBD-GWG, Dkt. 85 (S.D.N.Y. Jan. 17, 2019); *Tapestry, Inc., et al. v. baoqingtianff, et al.*, No. 18-cv-7650-PAE, Dkt. 34 (S.D.N.Y. Jan. 8, 2019); *Mattel, Inc. v. 86755, et al.*, No. 18-cv-8825-JSR, Dkt. 47 (S.D.N.Y. Dec. 17, 2018); *Ideavillage Prods. Corp. v. 711 Market, et al.*, No. 18-cv-7832-JMF, Dkt. 61 (S.D.N.Y. Dec. 12, 2018); *Wow Virtual Reality, Inc. v. BIENBEST, et al.*, No. 18-cv-3305-VEC, Dkts. 210-289, 302 (S.D.N.Y. Dec. 5, 2018); *Moose Toys Pty Ltd., et al. v. 963, et al.*, No. 18-cv-2187-VEC, Dkts. 160-251, 257 (S.D.N.Y. Nov. 30, 2018).

Plaintiff will promptly serve restraining notices, pursuant to CPLR § 5222, on Defendants,[21] Third Party Service Providers and Financial Institutions, and upon restraint, would move for an asset turnover pursuant to CPLR § 5225.[22]

## V.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant Plaintiff's Motion for Default Judgment in its entirety.

Dated: February 11, 2022                         Respectfully submitted,

                                                 EPSTEIN DRANGEL LLP

                                   BY:       /s/ Gabriela N. Nastasi
                                             Gabriela N. Nastasi
                                             gnastasi@ipcounselors.com
                                             Jason M. Drangel (JD 7204)
                                             jdrangel@ipcounselors.com
                                             Ashly E. Sands (AS 7715)
                                             asands@ipcounselors.com
                                             Danielle S. Futterman (DY 4228)
                                             dfutterman@ipcounselors.com
                                             Karena K. Ioannou
                                             kioannou@ipcounselors.com
                                             60 East 42nd Street, Suite 2520
                                             New York, NY 10165
                                             Telephone:    (212) 292-5390
                                             Facsimile: (212) 292-5391

---

[21] Pursuant to Fed. R. Civ. P. 62(a) "no execution may issue on a judgment, nor may proceedings be taken to enforce it, until 30 days have passed after its entry, unless the court orders otherwise."  Accordingly, Plaintiff requests that the automatic 30-day stay be dissolved to prevent Defendants from potentially hiding their assets during this time.  *See Allstar*, 2019 U.S. Dist. LEXIS 141913 at *11 FN 6 ("if a plaintiff is concerned that defendants might attempt to conceal assets during the pendency of the automatic stay, it should include a dissolution of that stay as part of the relief requested in its proposed judgment.").

[22] CPLR § 5225 "authorizes the commencement of a special proceeding or motion practice against the person in possession of that property that may ultimately result in the transfer of the property after finding personal jurisdiction over the garnishee and a hearing." *Id.*  Although the state rule suggests that a special proceeding must be commenced, the Federal Rules of Civil Procedure make no mention of special proceedings and Federal courts in New York have deemed the special proceeding requirement satisfied when a plaintiff proceeds by complaint or motion against the third party holding a judgment debtor's assets. *See id.*; *see also, e.g., Northern Mariana Islands v. Millard*, 845 F. Supp. 2d 579, 581 (S.D.N.Y. 2012).

*Attorneys for Plaintiff*
*Smart Study Co., Ltd.*

60