Jason M. Drangel (JD 7204)
jdrangel@ipcounselors.com
Ashly E. Sands (AS 7715)
asands@ipcounselors.com
Danielle S. Futterman (DY 4228)
dfutterman@ipcounselors.com
Gabriela N. Nastasi
gnastasi@ipcounselors.com
EPSTEIN DRANGEL LLP
60 East 42nd Street, Suite 1250
New York, NY 10165
Telephone: (212) 292-5390
Facsimile:  (212) 292-5391
*Attorneys for Plaintiffs*
*Palace Skateboards Group and*
*GSLT Holdings Limited*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PALACE SKATEBOARDS GROUP and GSLT HOLDINGS LIMITED,<br><br>*Plaintiff*<br><br>v.<br><br>AIMEEY, ALZTECH, CONG~690, DENNIS AHO, DGVH~56, ERIC GANDY, FGFH~456, FUBA246, GITROSTORE, GULF_COAST_BOUND, HUANGGUANGHAI3221, HUANGRUIXIAN65812, HUANGZHILONGER, JIAYIMNEI, KENGKENG, LINDSAYYYA, LOOM, MUK63211, NEW YEAH, NIKITAMODA, OBD HOME LIVING MUSEUM, SHENPOHUANG21, STAR'S OCEAN CLOTHING MALL, VANGCHENGYUN, WORLD WE, XEE82293, XIEZHIWEI, XIONGHOU DAMIYA BETTER and ZHUSHIHAO62923,<br><br>*Defendants* | **Civil Action No. 21-cv-3951 (GHW)**<br><br>**Declaration of Richard K. Wagner** |

1

I, Richard K. Wagner, hereby declare as follows:

1. I am Of Counsel to Allen & Overy in Hong Kong and make this declaration pursuant to Rule 44.1 of the Federal Rules of Civil Procedure and in reply to several items analyzed by the amici in their brief of June 7, 2022.

2. I have reviewed the Court's letter to Professor Liebman of March 1, 2022, the amici brief of June 7, 2022, and various papers submitted by Plaintiffs in this action outlining their service arguments.

3. I submit this declaration for purposes of analyzing Chinese law as such may relate to the Court's specific questions and an examination of other pertinent Chinese legal authority.

4. In my opinion, Chinese law takes an open view towards effecting service of process in cases before its courts of general jurisdiction. Further, international parties may be served by email without consent. Chinese law does not require the use of the Hague Service Convention[1] in foreign-related cases before its courts of general jurisdiction.

## I. SUMMARY OF QUALIFICATIONS

5. I received my Juris Doctor (J.D.) degree from the George Washington University School of Law in 2002 and an LL.M. in Chinese law from the School of Oriental & African Studies, University of London in 2008. I am licensed to practice law in Wisconsin and Illinois. I am registered as a foreign lawyer with the Law Society of Hong Kong. I was formerly registered as a foreign lawyer with the Ministry of Justice of the People's Republic of China ("China" or "PRC").

---

[1] *Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters*, T.I.A.S. No. 6638, 20 U.S.T. 361 (1965) ("Hague Service Convention").

6. I have had a China-facing law practice since the beginning of my legal career in 2002 in Hong Kong as an associate attorney with the China Practice Group of Baker & McKenzie. I have had extensive experience with international service issues in both Chinese and U.S. courts and have written a fair amount on Chinese civil procedure, most recently on Article 284 (formerly Article 277) of the PRC Civil Procedure Law in China-related cases in the U.S. courts, the provision discussed by amici in their brief on pages 3-5.[2] I have served as an Article 277/284 expert in previous cases and regularly advise on issues related to Article 277/284 in China-related U.S. cases.[3]

7. I am reasonably fluent with Chinese-language documents and began my introduction to the PRC's politico-legal order as a Mandarin Chinese linguist with the U.S. armed forces. My CV is attached at Ex. 1.

## II. QUESTIONS PRESENTED AND SUMMARY OF OPINION

### *Questions Presented*

8. Plaintiffs have raised certain factual constraints to Hague service in anti-counterfeiting actions – e.g., the need for expedited notice in connection with a motion for a temporary restraining order or service on Chinese defendants without viable physical business addresses where they actually do business – and have requested Court permission for alternative service under Federal Rules of Civil Procedure 4(f)(2)(A) and Rule 4 (f)(3).

9. The Court has asked: 1) "[w]hether foreign companies can effectuate service on Chinese entities and individuals by electronic means, such as email or web posting," and, phrased

---

[2] Richard K. Wagner, "Proving Chinese law in the Courts of the United States: Surveying and Critiquing the Article 277 Cases," *Amicus Curiae*, Series 2, Vol. 2, No. 2, 188-215, Winter 2021, Ex. 2 (abbreviated herein as "Wagner, Critiquing the Article 277 Cases").
[3] Article 284 is identical to the former Article 277.

slightly differently, 2) *"[w]hether Chinese law permits service of process by electronic means on Chinese residents, whether by email or posting on a website, or other similar means."*[4] The Court has inquired as to whether Article 87 (now Article 90 with the modest changes to the provision in 2021) of the PRC Civil Procedure Law[5] "permits service by electronic means by consent, and, if so, what constitutes proper manifestation of consent."

10. The Court has also invited an examination of other pertinent Chinese legal authority, the focus of this opinion.[6]

*Summary of Opinion*

11. Generally speaking, under Chinese law, courts have wide discretion in prescribing methods for effecting service of process, including through electronic means. The Hague Service Convention does not provide the exclusive means available to Chinese courts of general jurisdiction for effecting service under Chinese law in foreign-related cases. While court personnel perform the service function in China, I do not believe having the U.S. Court direct the parties to perform service from the United States instead of court personnel is dispositive on the question of legality under Chinese law. Both of the alternative methods of service employed by the Plaintiffs under Rule 4(f)(2)(A) and Rule 4(f)(3) were done

---

[4] Court Letter of March 1, 2022, pp. 1-2, Dkt. 38.
[5] *Civil Procedure Law of the People's Republic of China*, promulgated by the National People's Congress on April 9, 1991, Order No. 44 of the President of the People's Republic of China; revised for the first time on October 28, 2007, Order No. 75 of the President of the People's Republic of China; revised for the second time on August 31, 2012, Order No. 59 of the President of the People's Republic of China; revised for the third time on June 27, 2017, Order No. 71 of the President of the People's Republic of China; revised for the fourth time on December 24, 2021 and effective from January 1, 2022, Order No. 106 of the President of the People's Republic of China (herein, "PRC Civil Procedure Law").
[6] Court Letter of March 1, 2022, p. 3, Dkt. 38.

with a U.S. Court's permission, and, as such, were done under the auspices of the U.S. Court.[7]

12. In my opinion, Chinese laws and regulations are silent on the Court's first question as to "whether foreign companies can effectuate service on Chinese entities and individuals by electronic means, such as email or web posting."[8]  I do not believe Article 284 is applicable to this question, as discussed in more detail in Section VI.

13. As to the Court's second question – "whether Chinese law permits service of process by electronic means on Chinese residents, whether by email or posting on a website, or other similar means." –the trend in China's courts is towards facilitating service of process by efficient means, including by electronic means.  Under current law, for email service on a resident domestic defendant in a case before a Chinese court, consent would be required, but what constitutes consent is not expressly defined in Chinese laws and regulations.

14. As to other pertinent legal authority in China, I would like to direct the Court's attention to those provisions of Chinese law which concern service of process in foreign-related or international cases[9] before Chinese courts of general jurisdiction.  In those cases, ***consent is not required***.  Pursuant to Article 274 of the PRC Civil Procedure Law, Chinese courts may serve by email without complying with the Hague Service Convention mechanism, with or without consent.  In my opinion, if a Chinese court was faced with a situation similar to that presented by the Plaintiffs here, they would have no hesitation in effecting service by means of email with return receipt under Article 274(7).

---

[7] As an alternative, to more completely align with Chinese process, the U.S. Court could order the emailed service or uploaded electronic platform service be dispatched/handled by the clerk of the court, which would be similar to the situation with mailed service under Rule 4(f)(2)(C)(ii).
[8] Court Letter of March 1, 2022, pp. 2 and 1, Dkt. 38.
[9] In Chinese legal parlance, the term used for an international case is "foreign-related" (涉外).

15. In addition to Article 274, under the doctrine of "deemed service" (视为送达, in Chinese), a Chinese court may find that service has been achieved even if a foreign defendant does not return a service receipt or fails to defend the action in court, if it can be inferred from the circumstances that the defendant has become aware of the litigation.

### III. SOURCES OF CHINESE LAW AND CHINA'S CIVIL PROCEDURE LAW

16. In terms of legal taxonomy, the PRC legal system is a civil law jurisdiction, predominantly code based. The PRC Legislation Law identifies laws (法律, in Chinese), promulgated by the National People's Congress, regulations (行政法规, in Chinese), promulgated by China's State Council, local regulations (地方性法规, in Chinese), issued by provincial People's Congresses and ministry rules (部门规章, in Chinese), issued by government ministries, as the primary sources of law in China.[10]

17. Judicial interpretations (司法解释, in Chinese) issued by China's Supreme People's Court are binding on the PRC courts,[11] but, in the Chinese legal system, case decisions do not, with very limited exceptions, provide primary law source authority in China.[12] For example, none of the consent cases cited by amici in their brief regarding Article 87/90 would be binding on the courts of general jurisdiction in China.[13]

---

[10] *See Legislation Law of the People's Republic of China*, promulgated by the National People's Congress on March 15, 2000, Order No.31 of the President of the People's Republic of China; last amended on and effective from March 15, 2015, Order No.20 of the President of the People's Republic of China. Ex. 3.

[11] *See, e.g.*, *Provisions of the Supreme People's Court on the Work Concerning Judicial Interpretation,* promulgated by the Supreme People's Court on March. 9, 2007, *Fa Fa* [2007] No. 12; amended on June 9, 2021 and effective from June 16, 2021, *Fa Fa* [2021] No.20, Article. 5. Ex.4.

[12] One example are so-called Guiding Cases (指导性案例, in Chinese). There are presently only 178 Guiding Cases in China.

[13] Strictly speaking, *Chongqing Alibaba Microfinance Co., Ltd. v. Chen Zhuangqun*, Case (2017) Zhe 8601 Min Chu No. 943 (cited by amici on pages 9-10) is a "model case" issued by China's Supreme Court (典型案例, in Chinese), but under current rules is not technically binding on the courts.

18. Case collections and compendiums in China are not complete and there is no unified, authoritative, case collection database in China. While China's Supreme Court maintains a case database that may be searched online, the database is limited to only those cases that have been selected for inclusion.[14] China is not a "case law" jurisdiction. It can be quite difficult to uncover cases that address certain Chinese legal provisions. For example, I know of only two cases that have discussed Article 284, neither of which were in a service of process context and both of which took a narrow reading of the provision.[15]

19. China's courts of general jurisdiction are organized into a number of divisions. Generally speaking, civil cases are handled by the civil division of the court and the applicable rules of procedure for these cases are set out in the PRC Civil Procedure Law, as supplemented by judicial interpretations issued by China's Supreme People's Court in Beijing. The current law on civil procedure in China is the PRC Civil Procedure Law of 1991. It was first promulgated on April 9, 1991, and has been amended four times, most recently in 2021, effective from January 1, 2022.[16]

## IV. SERVICE OF PROCESS UNDER CHINESE LAW -- CHINESE CIVIL PROCEDURE ALLOWS FOR VARIOUS ALTERNATIVES TO TREATY SERVICE IN INTERNATIONAL CASES

20. The Court has invited discussion of other pertinent Chinese legal authority to the service questions presented here. With due consideration to the discussion by amici at pages 5-11 of their brief, in my opinion, I believe the most relevant provision of Chinese law on the

---

[14] *See generally, Provisions of the Supreme People's Court on the Publication of Judgment Documents by the People's Courts on the Internet*, promulgated by the Supreme People's Court on November 21, 2013, *Fa Shi* [2013] No. 26; amended on August 29, 2016 and effective from October 1, 2016, *Fa Shi* [2016] No. 19. Ex. 5.
[15] *See* discussion at ¶ 36, and fn 25.
[16] English translations to Chinese normative documents are provided for reference herein, but the original language of these documents is Chinese, and the translations available can sometimes miss the nuances of the original Chinese versions. References are to commercial translations of these documents, unless otherwise noted.

question of electronic service presented by the special situation here is contained in Article 274 (formerly Article 267) of the PRC Civil Procedure Law, discussed on page 11 of amici's brief. In my opinion, Article 90 (formerly Article 87) is most applicable to situations where the general service rules govern, not to foreign-related/international cases such as that presented by the fact pattern here.

21. Unlike the Federal Rules of Civil Procedure ("FRCP"), the service of process rules in China are contained within two different sections of the Chinese rulebook. Rule 4 of the FRCP addresses service both within a judicial district of the U.S. (e.g., Rule 4(e)) and outside the U.S. in a foreign country (e.g., Rule 4(f)). By contrast, in China, the general rules for service of process are found within Articles 85-95 and those service rules for international cases where the foreign party does not have a residence or domicile in the PRC (also known as "foreign-related" cases) are found in Articles 274-275 of the PRC Civil Procedure Law.

22. In Chinese civil litigation, Article 274 contains those service methods that are applicable and permissible when there is an international case, and there is an occasion to serve documents internationally. As such, the orientation of Article 274 is relevant to that presented by the fact pattern here—namely, none of the defendants that have been named by the Plaintiffs are domiciled in the U.S. Put another way, Article 274 of the PRC Civil Procedure Law deals with situations in China similar to those addressed by Rule 4(f) of the Federal Rules of Civil Procedure.

23. Like Rule 4(f) of the FRCP, the Chinese rule contained in Article 274 grants the court broad discretion in addressing service on a foreign party.

24. Article 274 enumerates a number of different avenues that the Chinese court may pursue to effect service. Article 274 provides, in translation:

*Service of litigation documents by People's Courts on litigants without a domicile in the People's Republic of China **may adopt** the following methods:*

*(1) Service pursuant to the methods stipulated in an international treaty between the country of the party being served and the People's Republic of China or an international treaty for which the country of the party being served and the People's Republic of China are both participants;*

*(2) Service through diplomatic channels;*

*(3) Where the party being served is of Chinese nationality, the People's Court may entrust the embassy or consulate of the People's Republic of China based in the country where the party being served resides to serve on behalf;*

*(4) Serving the documents on the agent ad litem entrusted by the party being served who has the right to receive service of documents on its behalf;*

*(5) Serving the documents on the representative organisation established in the People's Republic of China by the party being served or the branch or business agent of the party being served which has the right to receive service of documents;*

*(6) Where the laws of the country where the party being served resides permit service of documents by mail, the documents may be served by mail; upon expiry of a three- month period from the date of mailing and the acknowledgement of service is not being returned, but the documents may be deemed served based on the circumstances, the documents shall be deemed served on the date of expiry of the period;*

*(7) **Service via a method for which receipt by the party being served can be confirmed such as facsimile, email, etc**. and*

*(8) Where the documents cannot be served via the aforesaid methods, the documents shall be served by way of a public announcement and shall be deemed served upon expiry of a three-month period from the date of public announcement.*

(emphasis added).

25. Article 274 states the court "may adopt" one of several methods to effect service. Among the methods allowed is service by email with return receipt.[17] No consent is required to effect service under Article 274(7). As such, the email service approach articulated in Article 274(7) is different from the email service provided under Article 90 where consent is required.[18]

26. There is no required order in which the court must attempt to effect service under Article 274. Amongst the various methods identified under Article 274, and with the exception of service by publication, which is viewed as a last resort, all other methods of service provided by Article 274 are permitted in any order in the court's discretion.[19]

27. In my experience, and in ordinary cases, if there is an applicable treaty, and the Chinese court has been provided with a valid business address, the court will typically first attempt service of process by an applicable treaty even though it is not required to do so under the PRC Civil Procedure Law and extant judicial interpretations. Official commentary suggests the court may adopt several methods at once and judicial interpretations provide that in such circumstances, the date upon which the service receipt is obtained shall govern

---

[17] I understand and am instructed that email with return receipt has been employed by the Plaintiffs in this case with the Court's permission.

[18] While Article 90 of the PRC Civil Procedure Law requires consent, the PRC Civil Procedure Law itself is silent as to how this consent is to be made manifest. Each Article 90 situation is somewhat fact specific as amici's discussion on pages 5-10 suggests. **But prior consent for effecting email service under Article 274(7) is not required as amici acknowledge** on page 11 of their brief and in the *Xiaomi* case cited by amici in footnote 15.

[19] Article 6 and Article 11 of the *Certain Provisions of the Supreme People's Court on Issues Concerning Service of Judicial Documents in Civil or Commercial Cases Involving Foreign Elements*, promulgated by Supreme People's Court on August 10, 2006, *Fa Shi* [2006] No. 5; revised in 2020 and effective from January 1, 2021, *Fa Shi* [2020] No. 20. Article 6 provides, in translation: "[i]n the event that the people's court serves a judicial document on a party having no domicile in the territory of the People's Republic of China, if the country of the party has concluded any judicial assistance agreement with the People's Republic of China, the judicial document **may** be served in accordance with the provisions of the judicial assistance agreement; if the country of the party is a member state of the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, the judicial document **may** be served by the means specified therein [Emphasis added.]." Article 11 provides that "[e]xcept for the way of public notice, a people's court may serve the judicial documents on the person to be served in several ways simultaneously, while the date of receipt shall be determined by the way that first achieves the service". Ex. 6.

in those cases.[20] All that being said, in my opinion, if a Chinese court was not presented with a viable ordinary business address for a defendant in a foreign country or if there were special circumstances (such as the need for expedited notice), they would not pursue service via the Hague Service Convention.[21] In other words, I believe that if a Chinese court were faced with a situation similar to that raised by the Plaintiffs in this case, the Chinese court might very well utilize email as provided under Article 274(7).

## V. THE DOCTRINE OF DEEMED SERVICE PROVIDES CHINESE COURTS ADDITIONAL FLEXIBILITY IN INTERNATIONAL CASES

28. Litigation doctrines developed in the civil litigation context, such as the doctrine of deemed service also allow for flexibility when the courts are faced with special circumstances.

29. Under Article 13 of the *Certain Provisions of the Supreme People's Court on Issues Concerning Service of Judicial Documents in Civil or Commercial Cases Involving Foreign Elements*, *Fa Shi* [2020] No. 20, a Chinese court may find that a party has been served even if no service receipt has been provided by the defendant in an international case if the circumstances suggest that the defendant is aware of the litigation.[22] Ex. 6. This is illustrative of the doctrine of "deemed service" (视为送达, in Chinese).

30. Article 13 provides in translation:

*Where the person to be served fails to perform the procedure for signing the receipt of the judicial documents served by a people's court, the service shall still be deemed as having been achieved under any of the following circumstances:*

---

[20] Article 11 of the *Certain Provisions of the Supreme People's Court on Issues Concerning Service of Judicial Documents in Civil or Commercial Cases Involving Foreign Elements*, *Fa Shi* [2020] No. 20. Ex. 6.
[21] In international intellectual property cases involving preliminary injunctions (行为保全, in Chinese), the Chinese courts also serve process through Article 274, which allows the court flexibility to effect service under circumstances appropriate for the case, including email service with return receipt under Article 274(7).
[22] Promulgated by Supreme People's Court on August 10, 2006, revised in 2020 and effective from January 1, 2021.

*(1) The person to be served has mentioned to the people's court the content of the judicial documents which have been served in writing;*

*(2) The person to be served has made performance pursuant to the content of the judicial documents which have been served; or*

*(3) Other circumstances in which the service can be deemed as having been achieved.*

31. Under Article 13, if a defendant in an international case before a Chinese court raised a service objection, the Chinese court could find that the defendant had been served – deeming the service as having been achieved. This doctrine developed in Chinese courts to caution defendants against making overly technical procedural challenges.

## VI. ARTICLE 284 IS NOT APPLICABLE IN THESE CIRCUMSTANCES

32. Amici's reliance on Article 284 of the PRC Civil Procedure Law on pages 3-5 of their brief to support their conclusions is misplaced in my view. In my opinion, Article 284 does not address the situation presented by the fact pattern here.

33. Article 284 provides in my English translation:

*Any request for judicial assistance shall be made through channels prescribed by [relevant] international treaties concluded or acceded to by the People's Republic of China; or in the absence of such a treaty, any request for judicial assistance shall be made through diplomatic channels.*

*A foreign embassy or consulate in the People's Republic of China may serve process on and investigate and collect evidence from its citizens but shall not violate the laws of the People's Republic of China and shall not take compulsory measures.*

*Except for the circumstances in the preceding paragraph, **no foreign authority or individual shall**, without permission from the competent authorities of the People's Republic of China, **serve process** or investigate and collect evidence **within the territory of the People's Republic of China** (在中华人民共和国领域内, in Chinese).*

(emphasis added). *Cf*. Wolters Kluwer Translation of PRC Civil Procedure Law, Article 284, Ex. 7.

34. The language used in Article 284 has remained the same since it was promulgated in 1991 as Article 263.[23] Put another way, while the PRC Civil Procedure Law has been revised four times since 1991 (including provisions for electronic service in 2012), the text of Article 284 has not changed since it was first promulgated. At that time, we did not ordinarily rely on email or internet platforms for business communications. Consequently, I do not believe the drafters of the text of Article 284 contemplated electronic service or service by means of posting on a website.

35. Moreover, Article 284's prohibition in Article 284(3) uses the phrase "within the territory of the PRC" where the service is performed by a foreigner. As such, while Article 284 would arguably prohibit a foreign process server from serving process within the territory of the PRC, by its plain terms it arguably does not prohibit a PRC defendant from 1) waiving service, 2) being served from an offshore electronic platform, or 3) being served via email from overseas in my opinion.

36. Finally, since it was first promulgated in 1991 as Article 263, the provision has been contained in those sections of the PRC Civil Procedure Law concerning judicial assistance. There is no express penalty for violating Article 284 itself.[24] Moreover, unlike many other areas of civil procedure, including those concerning the law of evidence and service of process, there are no judicial interpretations that interpret the text. Additionally, I know of only two Chinese cases which have cited the provision, neither of which are particularly relevant to the situation here.[25]

---

[23] *See generally* Wagner, Critiquing the Article 277 Cases, Ex. 2.
[24] *See* Wagner, Critiquing the Article 277 Cases and the discussion at pages 206-207 regarding the need for a "plus" factor in the cross-border evidence collection context.
[25] *Xuzhou Sentife Fragrance Technology Co., Ltd. and American Velex Products Company v. Beijing Qizhihaotian Technology Co., Ltd, Hangzhou Alibaba Advertising Co., Ltd. and Zhejiang Taobao Network Co., Ltd.* ((2019)

37. In conclusion, in my opinion, Article 284 does not specifically address or prohibit the electronic mail or electronic platform service contemplated by the factual situation here.

---

Zhejiang 01 Min Zhong No. 10636) and *Dongguan Yixin Disk Co., Ltd v. Zhejiang Jinma Industrial Co., Ltd.* ((2018) Yue Min Zhong No. 726), provided upon request.  In the first case, a Chinese law firm was entrusted by an overseas company to collect evidence in the PRC.  The court refused to exclude the evidence as having violated Article 277.  In the second case, it was a Chinese entity which assigned its employee (a Japanese citizen) to apply for notarization within the PRC.  The court ruled that Article 277 should not apply to this situation.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June 24, 2022 in Hong Kong SAR.

_____
Richard K. Wagner