# EXHIBIT 2

188          *Amicus Curiae*, Series 2, Vol 2, No 2, 188-215

# PROVING CHINESE LAW IN THE COURTS OF THE UNITED STATES: SURVEYING AND CRITIQUING THE ARTICLE 277 CASES

RICHARD K WAGNER[1]

East Asian Legal Studies Center,

University of Wisconsin Law School

**Abstract**

The volume of disputes heard by United States (US) courts containing a China element continues to be robust even against a backdrop of political rhetoric concerning an economic 'de-coupling' of the US and China. These cross-border disputes often involve Chinese parties and special issues, some of which concern Chinese business culture, but many of which involve interpreting questions of Chinese law. How is proving Chinese law accomplished in these cases and how have US courts performed in interpreting Chinese law? This article first discusses the approach to proving Chinese law in US courts. While expert testimony is often submitted and can be valuable to a US court, the applicable US rule offers no standards by which these opinions are to be judged. And, in the China context, without specific guidance, it can be challenging for a judge, unaccustomed with China or the Chinese legal system to determine which version of the law to believe. Moreover, under the applicable rule, the US court can simply ignore competing Chinese law opinions and conduct its own Chinese law legal research, presumably using English language sources. This can lead to interesting interpretations of Chinese law to say the least. The article anchors its discussion in an examination of those recent cases which have interpreted Article 277 of the Civil Procedure Law of the People's Republic of China. This is the legal provision of Chinese law that can be implicated in certain situations involving cross-border discovery, and there are now numerous Article 277 cases among the reported US decisions. The article analyses Article 277 by placing it within the larger context of Chinese civil procedure and argues that the language used in the provision has a special meaning

---
[1]    American lawyer in private practice. Visiting Scholar, East Asian Legal Studies Center, University of Wisconsin Law School, August to 31 December 2020. Special thanks to Professor Ohnesorge and the staff of the East Asian Legal Studies Center.

within Chinese evidence law that has been obscured in those US case decisions interpreting it, leading to erroneous results. The article concludes by offering judges and practitioners some suggestions for interpreting Chinese law in future US cases.

**Keywords:** Chinese law; US courts; Article 277; deposition; cross-border discovery; Hague Evidence Convention; Chinese civil procedure.

# [A] INTRODUCTION

As a docket watcher, I can attest to the fact that almost every day a case is filed in the United States (hereafter US) that contains a China element. These cross-border disputes often involve Chinese parties and special issues, some of which concern Chinese business culture and the Chinese language, but many of which involve interpreting questions of Chinese law. How is proving Chinese law accomplished in these cases? How have US judges approached Chinese law questions? Is there any guidance that can be offered to make the process less painful for courts and practitioners? This article addresses these questions by examining Chinese law in the courts of the US, surveying and critiquing those cases which have interpreted Article 277 of the Civil Procedure Law of the People's Republic of China (hereafter PRC). This is the legal provision in China that can be implicated in certain situations involving cross-border evidence collection and US discovery. There are numerous US cases now available in the online databases that have interpreted this provision, and we can learn from them in crafting what might be a better approach to addressing complex and often quite technical questions of Chinese law.

I first discuss the orientation to questions of proving Chinese law in US courts. This is followed by an introduction to Article 277 and the context of certain Chinese legal terms that are used in the provision. I then survey and analyse reported Article 277 cases. I close by offering some suggestions as to how US judges might approach future cases in which Chinese law is implicated.

# [B] PROVING CHINESE LAW IN THE COURTS OF THE US

Unlike the courts of the United Kingdom, the courts of the US treat proving foreign law as a question of law, not as a question of fact. Under the applicable federal rule enacted in 1966—rule 44.1 of the Federal Rules of Civil Procedure (FRCP)—a court may take anything into account in making a determination of foreign law:

> In determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence. The court's determination must be treated as a ruling on a question of law (FRCP rule 44.1).

This principle in a China context was recently affirmed by the 9:0 decision in *Animal Science Products v Hebei Welcome Pharmaceutical Co* (2018). The issue before the Court in *Animal Science Products* was whether the view of the PRC Ministry of Commerce on the meaning of a particular ministry regulation must be viewed as conclusive.

Justice Ginsburg, writing for a unanimous court:

> [Rule 44.1] instructs that, in determining foreign law, 'the court may consider any relevant material or source ... whether or not submitted by a party.' As '[t]he court's determination must be treated as a ruling on a question of law,' ... the court 'may engage in its own research and consider any relevant material thus found' (quoting the Advisory Committee's 1966 Note on FRCP rule 44.1) (*Animal Science Products* (2018) at 1869-1870).

Thus, in determining Chinese law, a US judge may take any relevant material into account in making a determination as to what Chinese law may mean in a given case.

Early commentary, such as that provided by Miller (1967) on rule 44.1 surmised that proving foreign law would still be handled under the new rule through competing expert declarations and submitted extracts from foreign legal materials (Miller 1967: 658). But, while expert testimony is often submitted and can be valuable to a US court, the rule offers no standards by which these opinions are to be judged. And, in the China context, without specific guidance it can be challenging for a judge, unaccustomed to China or the Chinese legal system, to determine which version of the law to believe. On the one hand, there are Chinese law academics who submit opinions on Chinese law, but whose actual experience with Chinese law in practice might be quite limited. On the other, there are opinions from practising lawyers whose independence may be questionable or who, at least in part, may be concerned with how their opinion might be viewed by the Chinese state apparatus. Yet, given the design of FRCP rule 44.1, a US court may decide to ignore competing Chinese law opinions. Miller identified this issue early on in discussing the new rule:

> A foreign-law expert is not required to meet any special qualifications; indeed, he need not even be admitted to practice in the country whose law is in issue. It is not surprising, therefore, that federal courts have

> not felt bound by the testimony of experts and upon occasion have
> placed little or no credence in their opinions (1967: 658).

Given the text of FRCP rule 44.1 and competing party expert opinions (some of which may not be very useful), a US judge when faced with a Chinese law question is empowered to simply ask her or his law clerk to conduct Chinese law legal research on the internet—presumably from English language sources—review the clerk's findings, and then make a determination as to what the Chinese law provision means. Needless to say, such an approach, without more, can lead to interesting conclusions, some of which can be far-fetched. I turn now to a brief discussion of sources of Chinese law in order to situate Article 277 of the PRC Civil Procedure Law within the larger context of the Chinese legal system.

## [C] CHINA'S LEGAL SYSTEM AND SOURCES OF LAW

In terms of legal taxonomy, the PRC legal system is a civil law jurisdiction, predominantly code-based. The PRC Legislation Law identifies laws (*falü*, in Chinese), promulgated by the National People's Congress, regulations (*xingzheng fagui*, in Chinese), promulgated by China's State Council, local regulations (*difangxing fagui*) issued by provincial governments, and ministry rules (*bumen guizhang*), issued by government ministries, as the primary sources of law in China. Judicial interpretations (*sifa jieshi*) issued by China's Supreme People's Court (hereafter SPC) are binding on the courts, but, in the Chinese legal system, case decisions do not, with very limited exceptions, provide primary law source authority in China. In other words, China is not a 'case law' jurisdiction. Case collections and compendiums in China are not complete, and there is no unified, authoritative, case collection database in China. Those cases that are available can be helpful in practice, however, even if they are not technically binding on the courts.

In addition to judicial interpretations, China's highest court, the SPC, from time to time issues guidance to deal with procedural issues or to respond to special situations affecting the courts and litigation. For example, guidance was issued by the SPC to facilitate online and remote hearings during the Covid-19 pandemic.

Moreover, given the nature of the Chinese legal system, statements made by PRC officials in specialized subject matters may be useful for

understanding in practice how certain authorities may view particular issues, such as those concerning judicial assistance in civil matters.

I now examine Article 277 and the meaning of the Chinese legal terminology used in that provision within the scope of Chinese civil procedure and evidence law.

## [D] ARTICLE 277 OF THE CIVIL PROCEDURE LAW OF THE PRC

China's current law on civil procedure is the PRC Civil Procedure Law of 1991. It was first promulgated on 9 April 1991 and has been amended four times, most recently in 2017. While the law has been revised and improved over the years, the text of the legal provision that is at issue here—the text of Article 277—has not changed since it was first promulgated in 1991 as Article 263. Moreover, unlike many other areas of civil procedure, including those concerning the law of evidence, there have been no implementing regulations or judicial interpretations that interpret the text contained in Article 277 or help guide an understanding of the meaning of the Article. With limited exceptions, we have only the text of the Article itself. There is also no provision of Chinese law that links a violation of Article 277 with an express penalty or sanction, a matter discussed in more detail below.

Since it was first promulgated in 1991, Article 277 has been contained in the chapter of the PRC Civil Procedure Law, entitled, in English translation: 'Judicial Assistance'. In terms of the organization of Chinese civil procedure, Article 277 predominantly concerns requests for judicial assistance in cross-border civil matters.

Article 277 provides in English translation:

> Any request for judicial assistance shall be made through channels prescribed by [relevant] international treaties concluded or acceded to by the People's Republic of China; or in the absence of such a treaty, any request for judicial assistance shall be made through diplomatic channels.

> A foreign embassy or consulate in the People's Republic of China may serve process on and investigate and collect evidence [*diaocha quzheng*] from its citizens but shall not violate the laws of the People's Republic of China and shall not take compulsory measures.

> Except for the circumstances in the preceding paragraph, no foreign authority or individual shall, without permission from the competent authorities of the People's Republic of China, within the territory

of the People's Republic of China, serve process or investigate and collect evidence [*diaocha quzheng*].

Let us unpack the meaning of each of these three paragraphs from the perspective of evidence collection—as opposed to service of process.

Article 277(1) states that any request for judicial assistance must be made through applicable treaties or, in the absence of a treaty, diplomatic channels. In the China–US context, there is one relevant treaty; namely, the Hague Evidence Convention of 1970. The PRC has made a reservation to four Articles of the Convention, but none of these Articles is particularly relevant to this analysis.

Article 277(1) provides that, if there is an occasion for a request for judicial assistance whereby a US court (or party) requires official involvement by the PRC authorities, then those requests must be made through the mechanisms outlined in the Hague Evidence Convention. The PRC organ of government responsible for processing Hague Evidence Convention requests is the PRC Ministry of Justice (hereafter MOJ) Judicial Assistance Exchange Centre. According to the official website of the PRC Ministry of Justice, the MOJ Judicial Assistance Exchange Centre divides its works in relation to judicial assistance in civil and commercial matters into three categories: (1) receiving and processing judicial assistance requests from foreign countries; (2) sending requests for judicial assistance abroad; and (3) fielding questions and providing legal consultation in relation to judicial assistance in civil and commercial matters.

Article 277(2) authorizes a foreign embassy or consulate 'to investigate and collect evidence' (the meaning of which in Chinese is discussed below) from its own citizens so long as such does not violate PRC law and the citizen agrees. Article 277(2) thus allows a party involved in US litigation to expressly avoid having to make a request for judicial assistance if the target of the evidence collection is a foreign citizen, that citizen's embassy or consulate is involved, and the citizen agrees to the investigation and collection efforts. In practice, it can vary from embassy to embassy as to what level of service and assistance a particular nation's embassy will provide. Put another way, while Article 277(2) authorizes an investigation and collection of evidence from an embassy's own citizens, it does not mean that the particular embassy or consulate will provide that assistance in practice. It is always best to check first.

Article 277(3) requires more discussion. Article 277(3) provides that, except for the situation involving foreign nationals as articulated in Article 277(2), no foreign authority or foreign individual may 'investigate and collect evidence' within the territory of the PRC without permission

from the PRC authorities. From the plain text of this provision, for it to be applicable, there needs to be 1) an 'investigation and collection of evidence' (the term in Chinese is *diaocha quzheng*, discussed below); 2) by a foreign organ or (foreign) individual; and 3) within the territory of the PRC.

The terms 'foreign organ' or 'individual' would appear to be fairly straightforward, although a Chinese national that has been delegated to investigate and collect evidence on behalf of a foreign court or foreign lawyer might be, depending on the situation, problematic as well. The expression 'within the territory of the PRC' would also seem to be clear, although that too could perhaps be subject to debate depending on the context, as discussed in the section below regarding video depositions. But what does the phrase 'to investigate and collect evidence' mean?

As I argue below, the expression *diaocha quzheng* is something like a term of art within Chinese evidence law and has a special meaning. In the US cases discussing Article 277, the term *diaocha quzheng* has simply been translated (in various iterations) and introduced in English. As such, its technical meaning has not been discussed or debated. I argue that, as a result, the meaning of Article 277 has often been obscured.

## Chinese Evidence Law—Self-collected versus Court-collected

In Chinese evidence law, *diaocha quzheng* is properly understood as an investigation and collection of evidence that is performed by a PRC court or authority or one which is conducted under the auspices of a PRC court or authority. Put another way, in Chinese civil procedure, *diaocha quzheng* ('to investigate and collect evidence') ordinarily does not come into play unless an adverse party petitions the court for the right to investigate and collect certain evidence from the other party or from a third party, or the PRC court on its own determines that it is necessary to investigate and collect evidence from a party or non-party so as to be able to adjudicate the case. Chinese civil procedure makes a distinction between *diaocha quzheng* and party-collected or self-collected evidence, in Chinese, *zixing shoujide zhengju*—literally, 'evidence which is self-collected'. I discuss these two concepts in more detail below.

### *Contrasting 'Self-collected' Evidence with 'to Investigate and Collect Evidence' within Chinese Civil Procedure*

Within Chinese civil procedure, each party is responsible for producing evidence to support its respective claims or defences. Article 64 of the

PRC Civil Procedure Law (as revised, 2017) outlines this basic principle as follows, in English translation: 'A party has the obligation to provide evidence for the claims or allegations that he/she/it asserts.' This 'self-collected' or voluntary evidence may take the form of party statements, documents, electronic communications, witness testimony, video and audio recordings and the like (Article 63).

In the PRC, in litigation before a people's court, if a party wishes to collect evidence from its adversary or from a third party in civil litigation, the party desiring the evidence may seek intervention from the court. PRC Civil Procedure Law, Article 64 provides that, if a party or its litigation representative is not able for objective reasons to collect certain evidence on its own, the court should investigate and collect the evidence. The language used in Article 64 is *diaocha shouji*, parallel to the language used in Article 277, *diaocha quzheng*. The request for an investigation and collection of evidence is ordinarily done by written petition to the court as set out in Article 94 of the SPC Interpretation Concerning the Application of the PRC Civil Procedure Law (2015).

In other words, the starting point is 'self-collected' evidence in a Chinese court. Only when for objective reasons a party is not able to self-collect may it seek intervention from the court. Within Chinese civil procedure, a party is permitted (indeed it is obligated) to voluntarily self-collect and introduce evidence, but if a party cannot do it on its own, it can petition the court to investigate and collect the evidence. Unlike US civil procedure, the Chinese legal system, similar to other civil law jurisdictions, takes a circumscribed approach towards evidence collection by adverse parties. There is not discovery as that term is understood in the US. In Chinese civil litigation, adverse party evidence collection cannot take place without the authorization of or under the auspices of the particular Chinese court hearing the case.

This approach to adverse party evidence collection in Chinese civil litigation also informs Chinese law in the context of cross-border litigation. From the perspective of Chinese law, in the context of cross-border foreign litigation, should a foreign party require the assistance of the PRC authorities to collect evidence from its adversary in China, it should consult and follow those judicial assistance provisions contained within the PRC Civil Procedure Law (Articles 276 *et seq*).

As such, Article 277 should not be read to prohibit a Chinese party to 'self-collect' and respond to routine discovery requests in US litigation— e.g. requests for production, responses to interrogatories, requests for admission and so on. This can be contrasted with the position under

*Amicus Curiae*

Article 4 of the 2018 Criminal Judicial Assistance Law, which concerns criminal, not civil, litigation. Article 4 of the Criminal Judicial Assistance Law provides, in relevant part, in translation: 'Institutions, organizations, and individuals within the PRC's borders must not provide evidentiary materials to foreign countries and the assistance provided for in this law.' In other words, Article 4 could be read to prohibit a Chinese party from providing evidentiary materials in response to a US government subpoena, for example. The language in Article 4 would appear more restrictive than that contained in Article 277.

By contrast, Article 277(3) of the PRC Civil Procedure Law does expressly prohibit a Chinese party from providing evidence voluntarily to meet its US litigation discovery obligations. Put another way, in the context of FRCP rule 26, Article 277 does not itself and on its own shield or limit US document discovery. Indeed, Article 277 has been the law in China since 1991, and PRC companies have been involved in US litigation for decades. There have been only a handful of cases in which Chinese parties have resisted FRCP rule 26 document discovery on the basis of Article 277, such as *Milliken* (2010) and the *Sun Group* (2019) case, discussed in detail below. I would argue that for Article 277 to be implicated in routine US document discovery there would need to be a 'plus factor', something else at issue in connection with the discovery requests—turning a situation of *zixing shoujide zhengju* (where a Chinese company could self-collect evidence) into one in which it was not permissible for it to self-collect, requiring a need for a *diaocha quzheng* (an investigation and collection of evidence with court involvement)—for example, situations involving bank secrecy laws where the Chinese party was a PRC bank as in *Milliken* (2010); or situations where a foreign party sought to forensically inspect computer systems in China that were used to process classified information, such as in *Hytera* (2019).

With that introduction, I now turn to the Article 277 cases. There are now quite a number of US cases available in online case databases referencing issues concerning Article 277 of the PRC Civil Procedure. A non-exclusive list includes the following: *Popular Imports v Wong's International* (1995 and 1996); *Milliken & Co v Bank of China* (2010); *Melaleuca, Inc v Kot Nam Shan* (2018); *Motorola Solutions, Inc v Hytera Communications Corp* (2019); *Junjiang Ji v Jling Inc* (2019); *Sun Group USA Harmony City, Inc v CRRC Corporation Ltd* (2019); *Campbell Sales Group, Inc v Niroflex by Juifeng Furniture, LLC* (2020); *Chen v Hunan Manor Enterprise* (2020); *Jacobs v Floorco Enterprises* (2020); *Excel Fortress Ltd v Wilhelm* (2020); *Zhizheng Wang v Hull* (18 June 2020) (hereafter *Hull 1*) and *Zhizheng Wang v Hull* (22 June 2020) (hereafter *Hull 2*).

# [E] US COURT CASES ANALYSING AND INTERPRETING ARTICLE 277

## The Deposition Cases

The first group of US cases that I should like to discuss are those that more generally concern the question of whether a deposition for a US proceeding may take place within PRC territory without violating Chinese law. Unlike in other situations relating to cross-border discovery, China's official position on the question of depositions is captured on the US Department of State's China information webpage for judicial assistance, providing as follows—an earlier version of which did not contain the first sentence:

> China does not permit attorneys to take depositions in China for use in foreign courts. Under its Declarations and Reservations to the Hague Evidence Convention and subsequent diplomatic communications, China has indicated that taking depositions, whether voluntary or compelled, and obtaining other evidence in China for use in foreign courts may, as a general matter, only be accomplished through requests to its Central Authority under the Hague Evidence Convention. Consular depositions would require permission from the Central Authority on a case by case basis and the Department of State will not authorize the involvement of consular personnel in a deposition without that permission. Participation in such activity could result in the arrest, detention or deportation of the American attorneys and other participants (US Department of State Travel Notice).

The Chinese law legal basis for the State Department warning would appear to be the third paragraph of Article 277. The deposition would be an 'investigation and collection of evidence' (*diaocha quzheng*) by an individual within Chinese territory and, thus, may not proceed without permission from the PRC authorities. While there may be some question as to whether information collected pre-trial in the US is 'evidence' as that term is used in Article 277, it would be difficult to conceive a deposition as being something other than an 'investigation and collection' exercise. The very purpose of a deposition is to investigate and collect information that you believe would be helpful to your case or which may be turn out to be harmful to your case later on.

The sanction for violating Article 277 is not expressed in Article 277 and, as discussed below, may be limited to potential immigration law violations in the ordinary situation. Nonetheless, on the basis of the State Department warning, US courts typically conclude that an envisioned deposition taking place in Mainland China would violate Chinese law

*Amicus Curiae*

and may not proceed in China. In practice, parties often compromise and take their China-related depositions in Hong Kong. Hong Kong, under the one country two systems principle, has not traditionally been viewed as Chinese territory for purposes of Article 277.

### *Video Depositions and the Covid-19 Pandemic*

The question of video depositions from China has posed some interesting questions, however, particularly in light of the Covid-19 pandemic. The PRC Supreme Court issued a series of guiding opinions on handling litigation during a Covid-19 outbreak and at least one of these encourages video hearings, for example Item 8 of the SPC Notice on Strengthening and Standardizing the Online Litigation Work during the Period of Prevention and Control of the Outbreak of Novel Coronavirus Pneumonia (2020). While such opinions do not specifically relate to cross-border or overseas litigation, they suggest that special times allow for special measures. Moreover, the author is aware of at least one instance in which a PRC court in a foreign-related litigation in China allowed for the use of video in handling aspects of the PRC court case—one party being encouraged to participate in the video conference from overseas.

Depositions by video arguably do not violate the plain text of Article 277. The individual referenced in Article 277(3) would not be 'investigating and collecting evidence' (*diaocha quzheng*) within the territory of the PRC. But the spirit of Article 277 would at least seem to be implicated in most situations. Yet, in special circumstances (such as the situation with the Covid-19 pandemic), I think it is at least arguable that a video deposition of a voluntary PRC witness (particularly where the PRC witness was also the plaintiff) should not be considered unlawful under Article 277. It is also hard to see what the sanction would be if a 'plus factor', such as those referenced above, was not involved.

That being said, the author knows of four cases at the time of writing in which the question of video depositions has come up, and in none of the cases did the US court allow the depositions to take place by video. In one case, the witness sought for deposition was located in China and opposed the deposition on the basis of Chinese law. In the other three cases, the China-based witnesses requested to be deposed from China, and the deposition-taking party resisted on the basis of Chinese law. A brief discussion of these cases follows.

#### Campbell (NC Superior Court January 2020)

In *Campbell*, the witness resisted having a video deposition from China claiming that 'being deposed in China could subject [the witness] to arrest'.

The North Carolina Superior Court does not appear to have sought expert testimony from the parties on the issue but, instead, performed its own 'brief internet research', concluding, on the basis of a blog post from 2009, that 'it appeared' the defendants 'may be correct in asserting that it is illegal, absent permission from the Chinese government, for a foreign attorney or consular official to take a deposition of a Chinese citizen while in China'. The court in *Campbell* does not appear to have made any examination of Article 277 or given any consideration to the fact that the proffered deposition would take place by video and that the interrogator (i.e. the individual seeking to investigate and collect the information from the witness) would not be physically present within Chinese territory. It would also appear that the witness may have been a US citizen. In which case, the US embassy could have been approached to house the deposition, possibly bypassing Article 277(3) in favour of Article 277(2), if such had been permitted.

### *Chen v Hunan Manor* (SD NY February 2020)

In *Chen v Hunan Manor Entertainment*, the plaintiffs sought to have the defendants take the depositions of certain of their witnesses in China by video. The defendants resisted claiming that a 'deposition for the purpose of a foreign litigation was simply illegal in China'. The defendants apparently did not provide the court with any authority to support this contention, and the court conducted its own research, concluding under the decision in *Junjiang Ji*, discussed below (which quoted the State Department warning in the context of a *forum non conveniens* analysis), and *Campbell*, discussed above, that the video deposition could not proceed.

### *Jacobs v Floorco* (WD Kentucky March 2020)

In *Jacobs*, the China-based witness wanted to voluntarily testify for his deposition from China. The witness was also the president of the defendant named in the suit. To support his contention that the voluntary deposition would not run afoul of PRC law, he submitted a two-paragraph opinion from a PRC law firm, Shanghai Hao Dong Law Office, one paragraph of which concerned the question of video depositions and simply asserted, without analysis, in the English translation provided to the court:

> Currently, there is no law requiring that a foreign court can obtain a witness' statements only when such witness testifies in the court, and the law does not preclude a witness from testifying through two-way audiovisual transmission technologies [*sic*] (Jacobs Docket, Document Number 86-12).

*Amicus Curiae*

Not surprisingly, the court did not place much weight on this opinion:

> The Court was provided no information regarding the reliability of the legal advice provided by the Chinese firm or the accuracy of the translation. Further the opinion did not purport to rely on any particular source of Chinese law that the court could use to verify its interpretation of the same (*Jacobs* at 50).

While the original Chinese version of the opinion is clearer than the English translation provided, it remains conclusory and without analysis.

It appears the court placed more weight on an email which had been sent from the US Embassy, which contained the State Department warning, and a court reporter's reluctance to participate in the deposition from Mainland China. The court also analysed certain practical aspects of the situation at hand, including the efficacy of having a deposition conducted through the auspices of the Hague Evidence Convention and whether the court could intervene if a discovery dispute arose during the deposition. Moreover, the court was 'unpersuaded' by the defendant's interpretation of the State Department warning and noted the court reporter's reluctance. The court concluded that 'it will neither direct nor encourage the Parties to engage in potentially illegal conduct'. The court also appears to have taken into account the fact that the China-based witness was the president of the named defendant and had previously refused to provide deposition dates.

However, I think the lesson from *Jacobs* is the importance of retaining folks on your team who are trained in both Chinese and US law and putting in the effort when you are seeking to break new ground in the US courts. The judge in *Jacobs* took a conscientious and diligent approach to the Article 277 issue presented, but, had the defendant's Chinese law expert been presented more thoroughly or competently, the result may have been different. Moreover, it is unclear whether the witness in question was even a PRC national who would be caught within the prescripts of Article 277(3) or just simply someone with long-term residence in the PRC. There are indications from the docket record in the case that Mr Tu was a national of Singapore, for example, not the PRC. Under Article 277(2), would it have been possible to approach the Singapore embassy to see if it would agree to shepherd a video deposition of a voluntary citizen of country? This issue does not look to have been raised and addressed in *Jacobs*. But the key issue not addressed appears to have been whether a video deposition conducted remotely, and outside PRC territory, would still violate Article 277(3). In other words, was there a violation of Article 277(3) if the deposition taker was located in the US,

not within PRC territory, and a global pandemic was underway? This issue was addressed by the court, albeit briefly, in *Hall (2)*.

ZHIZHENG WANG V HALL (2) (WD WASHINGTON 22 JUNE 2020)

*Hall (2)* concerned video depositions during the Covid-19 pandemic. While there had originally been agreement to take the deposition of the plaintiff by video from his home in Beijing, the defendants subsequently changed their position, claiming that to do so would expose them to sanctions under Chinese law. The plaintiff disagreed, claiming that the defendant's 'change of heart' was 'harassment designed to inconvenience' and that forcing 'a 69-year-old man to travel puts him at risk of COVID-19'. From a review of the docket in the case, the plaintiff submitted a Chinese law opinion from a PRC lawyer on the Article 277 issue. The defendants did not provide their own Chinese law opinion but simply submitted one that had already been submitted in the Eastern District of New York case of *Junjiang Ji v Jling, Inc.* While somewhat unusual, this approach does not look to violate FRCP rule 44.1 as, under the rule, the 'court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible', including, presumably, a legal opinion submitted in an earlier case in another district. And, in the end, the court agreed with the defendant's view of Chinese law based on the State Department warning and an earlier court's ruling in *Junjiang Ji*, opining:

> Defendant's interpretation of Chinese law is reasonable given the language of Article 277, the State Department's advisory, and US case law regarding Article 277. While there is certainly a possibility that the Chinese authorities would construe the law narrowly so that it does not apply to foreign individuals who do not set foot within the borders of the People's Republic of China and who have the cooperation of the Chinese citizen being deposed ... the Court will not require defendant to bet on that outcome.

The opinion in *Hall 2* did not provide any analysis of the text of Article 277, and the conclusion seems in large part to have been based on the reasoning from *Junjiang Ji v Jling, Inc,* a case which, as I discuss below, employed some interesting analyses of Chinese law, particularly the penalty provisions for potential violations of Article 277.

## Article 277 in a Non-deposition Context

There have been two recent cases of relative importance concerning Article 277 in a non-deposition context. In *Junjiang Ji*, the court was presented with the issue of trial testimony offered by the Chinese plaintiff via video from Tianjin. In *Sun Group*, the Chinese party resisted routine discovery

on the basis of Article 277. Both require a somewhat closer examination and raise interesting questions of proving Chinese law in US courts.

### Junjiang Ji v Jling, Inc *(ED NY 31 March 2019)*

This case was before Magistrate Judge Steven I Locke of the Eastern District of New York. Prior to becoming a judge, Judge Locke was in private practice and apparently had some experience with Article 277 or its predecessor during his law practice. Unlike in other cases involving Article 277, in *Junjiang Ji*, we have a trial transcript that preserves much of the debate concerning Article 277 and makes for interesting reading. I quote liberally from it below, available from the public docket.

In *Junjiang Ji*, the plaintiff, Mr Ji gave direct testimony from Tianjin, PRC, via video link because he could not obtain a visa to the US to testify. On cross-examination, counsel for the defendant sought to have the entire testimony stricken as being violative of Article 277. After the direct and cross-examination, the court heard argument on Article 277 the next morning. The argument on Article 277 began with one of the defendant's counsel, a Mr Hang, introducing an English translation of Article 277 in open court which, I argue below, took certain liberties. Mr Hang's English translation of Article 277(3) provided in relevant part:

> Except for what is described in the foregoing provisions, no foreign authority or individual is allowed to *serve process*, *conduct investigation*, or *obtain evidence within the borders of People's Republic of China* without permission from the authority of the People's Republic of China [Emphasis added].

After introducing his English translation of Article 277, Mr Hang then went on to explain to the court what he believed Article 277 meant. This was followed by questions from the court, set out below:

> MR. HANG: So basically the third paragraph says without getting the authority or permission from People's Republic of China, a foreign power, for example, or individual, like the court or attorneys, for attorneys, like US attorneys or foreign individuals and common people cannot conduct proceedings which is part of evidence within the border of the People's Republic of China. That means if the people or witness sitting in the border of the People's Republic of China, the foreign authority or foreign individual cannot take deposition from them or take testimony from them because they are in China, they are China nationals; the legal authority of China; you cannot violate that legal authority. If you violate that law, the penalties could be arrest or detention of attorneys or individuals or participants, including the witness sitting here. He could be arrested or penalty for violation because—

THE COURT: Mr. Hang, those same penalties could apply to attorneys, as well, involved in obtaining the evidence?

MR. HANG: Yes. By the attorney and also the witness.

(*Junjiang Ji* Docket, Document Number 86-4, Transcript of Hearing of 27 March 2018, pages 91-92).

Based on Mr Hang's English translation and explanation, Mr Hang is claiming that the prohibition contained in Article 277 is as follows: no foreign authority or individual is allowed to 1) serve process, 2) conduct investigations, or 3) obtain evidence from China without permission.

However, I respectfully submit that Mr Hang's translation is not an accurate translation of the original Chinese for this paragraph, Article 277(3). As discussed above, the Chinese term which in this translation is being translated as 'conduct investigation, or obtain evidence' is the four-character phrase *diaocha quzheng*—'to investigate and collect evidence'. Moreover, the prepositional phrase 'within the borders of the PRC' does not belong with 'obtain evidence' as this translation suggests. A literal English translation of Article 277(3) would be: 'Except for the circumstances in the preceding paragraph, without having received permission from the relevant PRC organ(s), any foreign organ or individual must not within the territory of the PRC, serve documents or investigate and collect evidence.' Mr Hang's version would seem to suggest that no evidence can be obtained from individuals or companies in China without permission, which is not the prohibition contained in Article 277. Article 277 prohibits a *foreigner from going to China and undertaking an investigation and collection of evidence from her or his adversary without permission.*

At issue in *Junjiang Ji* was whether direct trial testimony through video link from China fell within the scope Article 277(3). From a plain reading of the provision, such activity would not seem to technically fall within the scope of 277(3). The foreign organ or individual would arguably not be within Chinese territory; the voluntary witness would be. Moreover, I believe an argument could be made that the prohibition in Article 277 is not directed at a voluntary Chinese witness who is the plaintiff at trial— or, put another way, the evidence that has been provided, voluntarily.

Going back to the transcript, there is then a brief discussion of whether there are penalties for violating Article 277. And this would seem to be the more important issue for Judge Locke. Mr Hang seeks to introduce a discussion of penalties by referencing depositions, but Judge Locke indicates that he is quite familiar with the issue of depositions in China before inquiring about potential penalties with video trial testimony:

THE COURT: You have provided the Civil Procedure Law copy here. Do you have a copy of whatever expansion of the law that talks about penalties?

MR. HANG: I don't have time to. But I don't have copies, no.

THE COURT: Is that something you can obtain?

MR. HANG: Probably penalties I can obtain. However, I have two articles which is written by US attorney. One of the, I know it is not authority but the US attorney article. Another is by, it is called International Deposition Agency. They mention this. Both of them mention—

THE COURT: Do they mention penalties, in those articles?

MR. HANG: They might talk about it. I can read what it says. It says: '*Beyond being merely frowned upon, participation in unauthorized depositions*' [Emphasis in original]—

…

THE COURT: Mr. Hang, these two articles talk about a deposition being taken in China, don't they? This is not what we are doing here.

MR. HANG: Your Honor, I think it's related article that says no depositions in China. No.

THE COURT: But we are not taking a deposition. We are trying to obtain evidence for a trial. The rule speaks to this but I don't know whether the rule speaks only about depositions. You do not have to prove to me you cannot take a deposition in China. I tried it for years and was unable to do it, so I know you can't. We're talking about obtaining evidence for a trial here. Do these articles speak to that?

MR. HANG: Your Honor, the Chinese law, Article 277, is that obtains evidence within the border of China.

THE COURT: I know that. We have read that. That is what you already read to me.

MR. HANG: Yes.

THE COURT: I'm only interested in articles about obtaining evidence; not at depositions, evidence at trial. And I'm interested in the penalties that you discussed before. Is that something that you can have in court later today or tomorrow?

MR. HANG: I believe I can. Yes.

(*Junjiang Ji* Docket, Document Number 86-4, Transcript of Hearing of 27 March 2018, pages 92-93).

A review of the transcript suggests that counsel for the plaintiff was unfamiliar with Article 277 or with Chinese law more generally, or even with the difference between the PRC and Hong Kong legal systems, and

was unable to counter the arguments made by Mr Hang in open court. The court ruled to exclude the testimony, but required an affidavit from Mr Hang on the penalties for violating Article 277 and allowed post-trial briefs on the Chinese law issues, which became the subject of the subsequent reported case, Judge Locke ruling in open court during the trial hearing on 27 March 2018:

> Okay. Here is what we are going to do. First, I am ordering Mr. Hang to produce that section about penalties that relates to a violation of this. The only authority I have before me is 277 of the Civil Procedure Law of the People's Republic of China, the revision dated 2017, effective today and translated from the Chinese into English; as well as Mr. Hang is the only attorney or person in this courtroom who has practiced law in China, and I believe he practiced for 20 years. My reading of the statute is that conducting the proceedings in this present form is a violation of Chinese law, which exposes not only the plaintiff to legal sanctions—and I would submit that is up to him–but also defense counsel, who I am told conducts business in China regularly. Therefore, I am not going to permit Mr. Ji to testify in this matter. … We will have post hearing briefs on each issue, not just on this. But Mr. Ji is not going to be permitted to provide further testimony in this case in this manner. … That is the ruling. I will put it in writing later so that, at the end of this case if either of you wants to appeal, you will have something more reasoned and ready.

> (*Junjiang Ji* Docket, Document Number 86-4, Transcript of Hearing of 27 March 2018, pages 103-104).

In connection with the post-hearing trial briefs, Mr Hang submitted portions of three Chinese legal documents that he claimed set out the penalties for violating Article 277. The first two were provisions (Article 15 and Article 30) from the Regulations on the Administration of Foreign Law Firms' Representative Offices in China. However, these regulations, issued by China's State Council, are not specifically concerned with a situation in which a party witness is voluntarily testifying from China. Rather, they are simply regulations concerning the administration of foreign law firms which have representative offices in China, and are not particularly relevant to the situation in *Junjiang Ji* which, from the publicly available materials, did not concern the activities of a foreign law firm representative office in China.

The third provision was Article 81 of the Exit and Entry Administration Law of the PRC (2013). But that provision, on its face, would be inapplicable where none of the foreign lawyers were in the PRC. The plaintiff testified via video from Tianjin and the lawyers were all in Brooklyn.

The fourth provision cited was the provision from the PRC Criminal Code (Article 13) dealing with subversion and separatist activities. It would

take a very different fact pattern from that posed in *Junjiang Ji* to see how the trial testimony offered could amount to a violation of Article 13 of the PRC Criminal Code in my opinion. There was no evidence presented of subversion or separatist activities. *Junjiang Ji* concerned a labour claim by former cooks of a Hibachi restaurant in Wantagh, NY. As with *Jacobs*, *Junjiang Ji* may have been decided differently if the Chinese law issues had been more thoroughly addressed by the other side.

Indeed, while *Junjiang Ji* appears to have turned on the question of whether there were penalties for violating Article 277, the provisions submitted in support of such penalties do not appear to have been disputed by counsel for the plaintiff. Judges are placed in a difficult position when faced with litigants who do not defend their Chinese law positions. What are the consequences for violating Article 277? Cases involving a 'plus factor', such as bank secrecy, *Milliken* (2010), or state secrecy, *Hytera* (2019), have different provisions of PRC law potentially implicated in a violation of Article 277. But what about the ordinary case?

CONSEQUENCES FOR VIOLATING ARTICLE 277 UNDER CHINESE LAW

There is no mention in Article 277 of consequences for violation and the legal basis for the contention in the last sentence of the State Department warning that 'participants in such activity could result in arrest, detention or deportation of the American attorneys and other participants' is unclear. One could imagine a situation in which violating Article 277 might raise Chinese immigration law questions, activities that fall outside those permissible within a business visa, but even in those rules the situation is not clear cut.

One illustrative document on the question of sanctions for violating Article 277 in an ordinary situation is an article, written in Chinese, and available online, which was authored by one of the officials in China responsible for rendering judicial assistance and processing requests under the Hague Evidence Convention, the applicable treaty in Article 277 for US/China judicial assistance requests. I believe this article can, in some respects, be viewed as helpful guidance as it was written by a PRC government official and deals with her particular area of expertise and service as an official within the PRC MOJ's Judicial Assistance Exchange Centre. In discussing possible sanctions for violating Article 277, PRC Official Li Zhiying of the MOJ's Judicial Assistance Exchange Centre writes, in relevant part, in English translation:

> In summary, towards those activities of evidence collection within PRC territory, on the one hand Article 277 of the PRC Civil Procedure Law clearly prohibits them. But on the other hand, regardless of

> whether it is a lawyer or a party or witness freely going along with
> it, under current law, there are no punitive provisions. Moreover,
> from a practical operational perspective, relevant departments would
> have no way of knowing about evidence collection activities and freely
> giving testimony [in a deposition], and penalizing [these activities]
> would be even more out of the question. So, the prohibitions are
> really in name only. And considering that direct evidence collection
> methods are much quicker, would save on judicial resources, and
> would make cross border litigation more convenient, there would be
> no harm in directly legislating provisions that would allow for direct
> evidence collection [activities within Chinese territory] in accordance
> with certain conditions (Zhiying 2016).

As the article by Official Li corroborates, there would appear to be no
express provisions of Chinese law providing sanctions for violating Article
277. The text of Article 277 itself provides no explicit sanction, and there
would appear to be no provision of Chinese law providing an express
sanction for violating Article 277. Moreover, Article 277 appears in the
civil procedure law of China. While there are provisions contained in the
PRC Civil Procedure Law that expressly provide sanctions for violation,
even in the context of an express sanction for a civil procedure violation
these provisions are rarely enforced in practice.

In *Sun Group*, the Chinese party relied on a reply letter from the same
MOJ Judicial Assistance Exchange Centre, referenced above, in seeking
to push an Article 277 argument even farther—resisting routine US
document discovery on the basis of Article 277.

### Sun Group *(ND Cal November 2019)*

In *Sun Group*, the US company plaintiff brought suit against the Chinese
company defendant for alleged breaches of a series of contracts concerning
the development of high-speed railroads throughout the US. After initial
motion practice, the case moved into the discovery phase of the federal
proceeding and the Chinese party, CRRC, moved to require the parties
to pursue routine discovery, such as requests for the production of
documents, pursuant to the Hague Evidence Convention. CRRC argued
that to produce documents in the federal proceeding would violate Article
277 of PRC Civil Procedure Law. This was somewhat different from the
situation in *Richmark Corp v Timber Falling Consultants* (1992) where the
Chinese company relied on PRC state secrecy laws in a post-judgment
context to resist the production of certain documents. In any event, CRRC
submitted affidavits from its legal officer and a PRC lawyer to support its
contention that Article 277 was implicated. It also submitted a reply letter
that was issued by the MOJ's Judicial Assistance Exchange Centre in

response to a CRRC official query. This was a bold attempt by a Chinese company to block routine document discovery in US litigation.

In an interesting and unusual decision, the US magistrate agreed with CRRC, requiring the plaintiff to first attempt to obtain the documents it sought pursuant to the Hague Evidence Convention. Chinese companies have been involved in hundreds of US cases over the years, and this is the first case the author is aware of in which a US court required document discovery to be pursued in a China-related case pursuant to the Hague Evidence Convention mechanism. As such, it deserves some additional attention.

In its opening brief, CRRC took the position that not only did Article 277 prevent Chinese companies from responding to routine discovery requests, but that Article 277 (identified in at least one part of CRRC's opening brief as being part of 'the Chinese civil code', page 9) was designed so as to have PRC courts managing all discovery in litigation overseas in addition to domestic PRC litigation.

> The policy underlying Article 277 is the Chinese sovereign interest that its judiciary will supervise and direct discovery activities occurring within the PRC. ... Article 277 therefore promotes uniformity in the Chinese legal system by requiring PRC entities to seek court involvement in the collection and production of evidence for *both* domestic litigation *and* foreign proceedings [emphasis in original].
>
> (*Sun Group* Docket, Document Number 132, CRRC Opening Brief at page 9).

In support of these interesting assertions, CRRC cited a legal opinion (paragraphs 15 and 18) of a PRC lawyer, Jinhua Wei of the W&D Zhonglun Law Firm (*Sun Group* Docket, Document Number 132-13). But to be fair to Lawyer Wei, this was not claimed in the legal opinion. Reading the original Chinese of the opinion (and not the English translation, which, shall we say politely, takes certain liberties), it is clear that Lawyer Wei is referencing nothing more than the concept of *diaocha quzheng* (to investigate and collect evidence under the auspices of the court), which we have discussed at length in this article. In other words, the opinion employs a sort of circular reasoning, which at the end of the day, appears to suggest nothing more than what is already in Article 277; namely, *diaocha quzheng* may not be conducted in China by a foreign organ or individual in connection with a foreign proceeding without permission. Contrary to what is claimed in the passage excerpted above, Lawyer Wei said nothing in those paragraphs of his opinion about the policy underlying Article 277, let alone that China wishes to 'supervise and

direct' all 'discovery activities'. Chinese procedure does not even have discovery as that term is understood in US legal parlance.

CRRC also submitted an affidavit from the Director of the Legal Affairs Department of CRRC, executed in Beijing, in support of its position that no evidence may be provided outside the mechanisms of the Hague Evidence Convention (*Sun Group* Docket, Document Number 132-12). However, one is left with the question as to how it would be permissible for CRRC to have one of its directors submit an affidavit declared 'under penalty of perjury under the laws of the State of California', without violating Article 277, but yet would not be able to voluntarily provide documents outside of Hague mechanisms in connection with its US litigation obligations. Unfortunately, this would appear to be another instance of a litigant trying to have their cake and eat it too. If CRRC was subject to the jurisdiction of the US court, which clearly it was, why didn't it have to play by the rules of the US court?

It is hard to see how the sorts of statements from CRRC excerpted above are to be considered proper support for an interpretation of Chinese law. The notion that Chinese courts are, in a sense, designed and prepared to supervise and manage all litigation in the world that involves Chinese companies is nothing short of preposterous. Chinese judges already have a very busy docket.

The issue was heard before Magistrate Judge Sallie Kim. Judge Kim looks to have evaluated the briefing submissions, including the Chinese law expert opinions that were submitted by both parties, and the MOJ reply letter, balancing interests under the standards articulated by the Restatement of Foreign Affairs and *Société Nationale v District Court* (1987). Judge Kim appears to have placed great weight on the MOJ reply, concluding:

> In light of Wei's declaration and the letter by the Chinese Ministry of Justice on this specific issue, the Court finds that Defendant has demonstrated that producing documents located in the PRC in response to Plaintiff's discovery requests would violate Article 277.

But what in fact did the MOJ reply letter state?

The letter from the MOJ's Judicial Assistance Exchange Centre is available from the public docket, submitted in original Chinese and a translation prepared by CRRC. As with the opinion of Lawyer Wei, CRRC translated *diaoqu zhengju*, a term parallel to *diaocha quzheng* used in Article 277, as simply 'discovery'.

While the term and concept of discovery does not exist within the Chinese legal system, CRRC translated the relevant part of paragraph 3 of that MOJ reply as:

> When a foreign country intends to propound discovery in the PRC, it shall submit its request to the Ministry of Justice of the People's Republic of China through the channels in accordance to the rules set forth in the Evidence Convention.
>
> (MOJ Reply, paragraph 3, Sun Group Docket, Document Number 132-2).

However, I submit a more accurate translation of this section of the original Chinese of the MOJ reply (Document Number132-3) would have been:

> If there is a need for evidence collection [under the auspices of the court], then the foreign country shall go through [a] way [provided] in the provisions of the Hague Evidence Convention and make a request to China's Ministry of Justice.

In other words, the CRRC translation was reading more into the language used by the MOJ than the MOJ was intending, leading to a conclusion that Article 277 prohibited CRRC from providing documents in response to production requests. Quite to the contrary, in my reading, the MOJ was simply stating that, if there was a need for a *diaocha quzheng* under Article 277, then the foreign court needed to resort to the Hague Evidence Convention. Once again, a sort of safe circular logic, similar to that employed in the Lawyer Wei opinion, and consistent with how PRC ministries typically respond to these sorts of queries based on my practice experience in China.

In the end, Judge Kim may simply have concluded that it was better to first try the Hague Evidence Convention mechanism during a time of heightened tension between the US and China. And yet, such concerns, I respectfully submit, are misplaced, particularly in light of the gamesmanship CRRC employed in presenting its position on the meaning of Article 277. This phenomenon of gamesmanship in China-related US litigation is explored by Campbell and Campbell (2016: 166-169). Unfortunately, the decision in *Sun Group* has further emboldened resistance to US discovery on the basis of Chinese law, illustrated by *Hull 1* on the subject of affidavits. And, ultimately, this will make things worse for Chinese companies embroiled in US litigation in the long run. If the PRC state secrecy cases are to be taken as an example, US courts have become far more suspect of Chinese companies employing Chinese law to resist discovery. You have to pick your battles carefully in US court and work to preserve credibility. Crying wolf by some Chinese companies

in resisting the production of routine business records as 'state secrets' has made things very difficult for Chinese companies which are faced with actual issues and prohibitions under Chinese law, such as PRC banks in the context of Chinese bank secrecy laws, and PRC technology companies that are contractors to the PRC national security apparatus.

# [F] WHAT'S A JUDGE TO DO?

The extended discussions in *Junjiang Ji* and *Sun Group* illustrate the challenges US judges face in analysing questions of Chinese law. To get the Chinese law issues right takes time and a thorough examination. Not all issues require full treatment perhaps, but for those that have significance and cannot be worked out by the parties on their own— particularly Article 277 issues which go to the heart of US discovery and case management—a thorough evaluation is prudent.

In the context of Chinese law issues related to Article 277, I offer the following questions to help triage the issue and the approach:

◇ Does the activity in question present an occasion for judicial assistance with the PRC authorities? Have the elements of Article 277 been met? If not, Article 277 should not be implicated.

♦ Is the activity in question even a *diaocha quzheng* (an investigation and collection of evidence) as that term is understood within Chinese civil procedure? Or would this be more akin to 'self-collected' evidence as that term is understood within Chinese civil procedure? Are there other provisions of Chinese law implicated, outside of Article 277 that would prevent a party from self-collecting the evidence—e.g. Chinese bank secrecy laws?

● Assuming the court has jurisdiction over the Chinese party, and, as a party litigant, has US discovery obligations under the rules of the US court, would providing the evidence be considered voluntary or compelled?

♦ Is the evidence collection activity being handled by a foreign organ or foreign individual?

♦ Does the contemplated activity take place within the territory of the PRC? If not technically within the PRC, does it still raise issues of Chinese territorial sovereignty? Testimony by video, for example. Have these issues been addressed in the respective expert opinions?

◇ What are the sanctions for violating Article 277 in this context? Is this an ordinary situation involving Article 277 or are there other

provisions of Chinese law also implicated; for example, seeking documents from a PRC technology company that fall within the ambit of PRC national security laws?

♦ Who is bearing this risk? The party seeking to enforce an eventual judgment in China or both parties?

As to proving Chinese law more broadly, if the Chinese law issue is not only peripheral to the case, the standard approach for the US court should be to require a Chinese law expert opinion from each side, with submission of the relevant law in translation and supplemental materials, if necessary.

But how does a judge evaluate competing expert opinions submitted by party litigants? Consider the following:

◊ How substantial is the PRC law legal opinion submitted? Does the opinion dig into the nuances of the particular issue or does it merely cite the law and provide a conclusory opinion? Is it well-reasoned?

◊ Does the PRC law expert have expertise both on the theory of the provision at issue, as well as how that provision works in practice?

◊ Is the PRC law expert's experience current? Is it a specialized issue? Does the expert have experience with that specialized issue?

◊ Does the opinion ring of independence? Even if it is the opinion of a party litigant, does the opinion appear to be independent from the PRC state apparatus or from Western political ideology hostile to China? Does the opinion appear self-serving?

◊ Are sanctions for violating the law important to the analysis?

♦ Has the question of sanctions been addressed in the opinion?

◊ Does it make sense to cross-examine the experts on the issues raised or perhaps hold an expert conference where the judge can ask questions of both experts?

◊ Are there Chinese language issues that are implicated that require additional briefing? Do the parties offer different interpretations of the meaning of the language used in the provision at issue or do they just provide their translations? Do the words used in translation have the same meaning in Chinese procedure as they would in the US? Does the opinion help to explain and translate different legal concepts or just words? Does the translator have a background in cross-border disputes? For example, if there is no concept of discovery in China, how can the original Chinese of a law or official pronouncement be translated as discovery?

US judges are no doubt busy, and the permissiveness of FRCP rule 44.1 allows courts to cut corners in examining technical questions of Chinese law. But, as the extant Article 277 decisions in the online case databases suggest, a more thorough approach is warranted in many cases.

# [G] CONCLUSIONS

This article has explored the question of proving Chinese law in US courts by examining a number of US court decisions which have interpreted Article 277 of the PRC Civil Procedure Law. It has also offered some suggestions for judges in future cases where Chinese law may be implicated and, in particular, in those cases in which Article 277 has become an issue. Recent suggestions in the academy (Clarke 2020; and Jia 2019-2020) that China and the Chinese legal and court system raise special questions for US courts and, as such, questions concerning Chinese law require a different approach than that taken with the laws and legal systems of other nations should be resisted. Even though the Chinese legal system is quite different from the US legal system and getting the Chinese law issue right for a particular fact pattern in a particular US case can be challenging, if it is approached diligently and carefully, the right conclusion can be achieved—in the end, it is actually the flexibility of FRCP rule 44.1 that allows for this.

## References

Campbell, Ray Worthy & Ellen Claar Campbell (2016) 'Clash of Systems: Discovery in US Litigation Involving Chinese Defendants' 4(2) *Peking University School of Transnational Law* 129-175.

Clarke, Donald (2020) 'Anti Anti-orientalism, or is Chinese Law Different?' XX *American Society of Comparative Law* 1-40.

Jia, Mark (2019-2020) 'Illiberal Law in American Courts' 168 *University of Pennsylvania Law Review* 1685-1744.

Li, Zhiying (2016) '*Shewai Diaocha Quzheng Nan Zai Na'er? Haiya Gongyue Zhongfang Lianxiren Gaosu Ni* [Where Are the Difficulties in Foreign Evidence Collection? The Contact for the Hague Convention Central Authority Can Tell You]' *ITSLaw*, 18 November.

Miller, Arthur R (1967) 'Federal Rule 44.1 and the "Fact" Approach to Determining Foreign Law: Death Knell for a Die-hard Doctrine' 65(4) *Michigan Law Review* 613-750.

US Department of State Travel Notice.

*Amicus Curiae*

# Legislation and Other Normative Documents Cited

Civil Procedure Law of the People's Republic of China, promulgated by the National People's Congress on 9 April 1991, last amended on 27 June 2017

Criminal Code of the People's Republic of China, promulgated by the National People's Congress on 1 July 1979, last amended on 26 December 2020 and effective from 1 March 2021

Exit and Entry Administration Law of the People's Republic of China, promulgated by the Standing Committee of the Eleventh National People's Congress and effective from 1 July 2013

Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters

Law of the People's Republic of China on International Criminal Judicial Assistance, issued by the Standing Committee of the National People's Congress, promulgated on 26 October 2018

Legislation Law of the People's Republic of China, promulgated by the National People's Congress on 15 March 2000, last amended on 15 March 2015

Regulations on Administration of Foreign Law Firms' Representative Offices in China, promulgated by the State Council of the People's Republic of China on 22 December 2001, and effective as of 1 January 2002

Supreme People's Court Notice on Strengthening and Standardizing the Online Litigation Work during the Period of Prevention and Control of the Outbreak of Novel Coronavirus Pneumonia, *Fa* [2020] No 49

Supreme People's Court Interpretation Concerning the Application of the PRC Civil Procedure Law, *Fashi* [2015] No 5

# Cases Cited

*Animal Science Products v Hebei Welcome Pharmaceutical* Co, 138 S Ct 1865 (2018)

*Campbell Sales Group, Inc v Niroflex by Juifeng Furniture, LLC*, 2020 NCBC LEXIS 9 (NC Superior Court 2020)

*Chen v Hunan Manor Enterprise*, 2020 US Dist LEXIS 19452 (SD NY 2020)

*Excel Fortress Ltd v Wilhelm*, 2020 US Dist LEXIS 49706 (D Az 2020)

*Jacobs v Floorco Enterprise*, 2020 US Dist LEXIS 46921 (WD Kentucky 2020), Case Number: 3:17-cv-00090-RGJ-CHL

*Junjiang Ji v Jling, Inc*, 2019 US Dist LEXIS 55341 (ED NY 2019), Case Number: 2:15-cv-04194-SIL

*Milliken & Co v Bank of China*, 758 F Supp 2d 238 (SD NY 2010)

*Melaleuca, Inc v Kot Nam Shan*, 2018 US Dist LEXIS 71296 (D Ct Idaho 2018)

*Motorola Solutions, Inc v Hytera Communications Corp*, 365 F Supp 3d 916 (ND IL 2019)

*Popular Imports v Wong's International*, 1995 US Dist LEXIS 20799 (ED NY 1995)

*Popular Imports v Wong's International*, 166 FRD 276 (ED NY 1996)

*Société Nationale Industrielle Aerospatiale v United States District Court for the Southern District of Iowa*, 482 US 522 (1987)

*Sun Group USA Harmony City, Inc v CRRC Corporation Ltd*, 2019 US Dist LEXIS 200616 (ND Ca 2019), Case Number: 3:17-cv-02191-SK

*Richmark Corp v Timber Falling Consultants*, 959 F 2d 1468 (9th Cir 1992)

*Zhizheng Wang v Hull*, 2020 LEXIS Dist 107207 (WD Washington 18 June 2020), Case Number: 2:18-cv-1220-RSL

*Zhizheng Wang v Hull*, 2020 US Dist LEXIS 108944 (WD Washington 22 June 2020), Case Number 2:18-cv-1220-RSL